1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERIES SALEH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASTRAZENECA PLC, PASCAL SORIOT, and ARADHANA SARIN,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Jeries Saleh ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding AstraZeneca PLC ("AstraZeneca" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded AstraZeneca securities between February 23, 2022 and December 17, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged

1

misstatements entered and the subsequent damages took place in this judicial district.

5.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased AstraZeneca securities during the Class Period and was economically damaged thereby.

7.    The Company describes itself as follows:
AstraZeneca [. . .] is a global, science-led biopharmaceutical company that focuses on the discovery, development, and commercialisation of prescription medicines in Oncology, Rare Diseases, and BioPharmaceuticals, including Cardiovascular, Renal & Metabolism, and Respiratory & Immunology. Based in Cambridge, UK, AstraZeneca's innovative medicines are sold in more than 125 countries and used by millions of patients worldwide.

8.    The Company is incorporated in England and Wales and its principal place of business is located at 1 Francis Crick Avenue, Cambridge Biomedical Campus, Cambridge CB2 0AA, England. AstraZeneca maintains offices in Santa Monica, California.

9.    AstraZeneca's American Depositary Shares ("ADS" or "ADSs") trade on the NASDAQ exchange under the ticker symbol "AZN".

10.   Pertinent to this action are AstraZeneca's business activities in China. AstraZeneca entered the Chinese market in 1993, and its Chinese headquarters are in Shanghai.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

11. Defendant Pascal Soriot ("Soriot") served as the Company's Chief Executive Officer ("CEO") throughout the Class Period.

12. Defendant Aradhana Sarin ("Sarin") served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

13. Defendants Soriot and Sarin are collectively referred to herein as the "Individual Defendants."

14. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

15. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to AstraZeneca under *respondeat superior* and agency principles.

17.     Defendant AstraZeneca and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

18.     On February 22, 2022, after market hours, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Soriot and Sarin attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.     The 2021 Annual Report contained the following risk disclosure:

We may be subject to various legal proceedings and governmental investigations. Our many business operations are subject to a wide range of laws, rules and regulations from around the world. ***Any failure to comply with these applicable laws, rules and regulations may result in AstraZeneca being investigated by relevant governmental agencies and authorities and/or subject to legal proceedings brought by private citizens***. Relevant authorities have wide-ranging administrative powers to deal with any failure to comply with continuing regulatory oversight, and this could affect us, whether such failure is our own or that of our contractors or external partners. In particular, the manufacturing, marketing, exportation, promotional, clinical, pharmacovigilance, and pricing practices of pharmaceutical manufacturers, as well as the manner in which manufacturers interact with regulatory agencies, purchasers, prescribers and patients, are subject to extensive regulation, litigation and governmental investigation. Moreover, such laws, rules and regulations are subject to change.

*Impact*

Many companies, including AstraZeneca, have been subject to legal claims asserted by federal and state governmental authorities and private payers and consumers, which have resulted in substantial expense and other significant consequences. ***Governmental investigations or proceedings could result in us becoming subject to civil or criminal sanctions and/or being forced to pay fines or damages***. Civil litigation, particularly in the US, is inherently unpredictable and unexpectedly high awards for damages can result from an adverse result. In many cases, litigation adversaries may claim enhanced damages in extremely high amounts. Government investigations, litigations, and other legal proceedings, regardless of their outcome, could be costly, divert management attention, or damage our reputation and demand for our products. [. . .]

(Emphasis added).

20.    The statement in ¶ 19 was materially false and misleading at the time it was made because it understated the risk of an adverse outcome of a government investigation, given that the Company was committing unlawful activities such as insurance fraud in China.

21.    The 2021 Annual Report contained the following risk disclosure regarding "Failure in financial control or the occurrence of fraud":

Effective internal controls assist in the provision of reliable Financial Statements and the detection and prevention of fraud. Testing of internal controls provide only limited assurance over the accuracy of Financial Statements and may not prevent or detect misstatements or fraud.

*Impact*

Significant resources may be required to remediate any deficiency in internal controls. Any such deficiency may trigger related investigations and may result in fines being levied against individual directors or officers. Serious fraud may lead to prosecution of senior management.

22.    The statement in ¶ 21 was materially false and misleading at the time it was made because AstraZeneca was engaging in insurance fraud in China.

Accordingly, the risk of investigation, fines, and criminal prosecution was understated.

23.    On February 21, 2023, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were signed certifications pursuant SOX signed by Defendants Soriot and Sarin attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24.    The 2022 Annual Report contained the following risk disclosure:

Our business is subject to a wide range of laws and regulations around the world. We have been, and may continue to be, subject to various legal proceedings and governmental investigations.

***Actual or perceived failure to comply with laws or regulations has historically and may in the future result in AstraZeneca and/or its employees being investigated by government agencies and authorities and/or in civil legal proceedings***. Relevant authorities have wide-ranging administrative powers to deal with any failure to comply with laws, regulations or continuing regulatory oversight, and this could affect us, whether such failure is our own or that of our contractors or external partners. In particular, the manufacturing, marketing, exportation, promotional, clinical, pharmacovigilance, and pricing practices of pharmaceutical manufacturers, as well as the manner in which manufacturers interact with regulatory agencies, purchasers, prescribers and patients, are subject to extensive regulation, litigation and governmental investigation. Moreover, such laws, rules and regulations are subject to change. Details of material litigations and governmental investigations can be found in "Financial Statements—Notes to the Group Financial Statements—Note 30—Commitments, contingent liabilities and contingent assets" on pages 192 to 198 of AstraZeneca's "Annual Report and Form 20-F Information 2022", included as exhibit 15.1 to Form 20-F dated February 21, 2023.

[Impact:] Many companies, including AstraZeneca, have been subject to legal claims asserted by federal and state governmental authorities and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

private payers and consumers, which have resulted in substantial expense and other significant consequences. ***Governmental investigations or proceedings could result in us becoming subject to civil or criminal sanctions and/or being forced to pay fines or damages.*** Civil litigation, particularly in the US, is inherently unpredictable, and unexpectedly high awards for damages can result from an adverse result. In many cases, litigation adversaries may claim enhanced damages in extremely high amounts. Government investigations, litigations, and other legal proceedings, regardless of the outcome, could be costly, divert management attention, or damage our reputation and demand for our products.

Unfavourable resolutions to current and similar future proceedings against us that could subject us to criminal liability, fines, penalties or other monetary or non-monetary remedies, including enhanced damages, require us to make significant provisions in our accounts relating to legal proceedings and could materially adversely affect our business or results of operations.

(Emphasis added).

25.    The statement in ¶ 24 was materially false and misleading at the time it was made because it understated the risk of an adverse outcome of a government investigation, given that the Company was committing unlawful activities such as insurance fraud in China.

26.    The 2022 Annual Report contained the following risk disclosure regarding "Failure in financial control or the occurrence of fraud":

Effective internal controls assist in the provision of reliable Financial Statements and the detection and prevention of fraud. Testing of internal controls provides only limited assurance over the accuracy of Financial Statements and may not prevent or detect misstatements or fraud.

[Impact:] Significant resources may be required to remediate any deficiency in internal controls. Any such deficiency may trigger related investigations and may result in fines being levied against individual Directors or officers. Serious fraud may lead to prosecution of senior management.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

27.     The statement in ¶ 26 was materially false and misleading at the time it was made because AstraZeneca was committing insurance fraud in China. Accordingly, the risk of investigation, fines, and criminal prosecution was understated.

28.     On February 20, 2024, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were signed certifications pursuant SOX signed by Defendants Soriot and Sarin attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

29.     The 2023 Annual Report contained the following risk disclosure:

Our business is subject to a wide range of laws and regulations around the world. We have been, and may continue to be, subject to various legal proceedings and governmental investigations.

***Actual or perceived failure to comply with laws or regulations may result in AstraZeneca and/or its employees being investigated by government agencies and authorities and/ or in civil legal proceedings***. Relevant authorities have wide-ranging administrative powers to deal with any failure to comply with laws, regulations or continuing regulatory oversight, and this could affect us, whether such failure is our own or that of our contractors or external partners. In particular, the manufacturing, marketing, exportation, promotional, clinical, pharmacovigilance and pricing practices of pharmaceutical manufacturers, as well as manufacturer interaction with regulatory agencies, purchasers, prescribers and patients, are subject to extensive regulation, litigation and governmental investigation. Moreover, such laws, rules and regulations are subject to change. Details of material litigations and governmental investigations can be found in "Financial Statements—Notes to the Group Financial Statements—Note 30—Commitments, contingent liabilities and contingent assets" on pages 204 to 210 of AstraZeneca's "Annual Report and Form 20 F Information 2023" included as exhibit 15.1 to this Form 20 F dated February 20, 2024.

[Impact:] Many companies, including AstraZeneca, have been subject to legal claims asserted by federal and state governmental authorities and

8

private payers and consumers, which have resulted in substantial expense and other significant consequences. ***Governmental investigations or proceedings could result in civil or criminal sanctions and/or the payment of fines or damages***. Civil litigation, particularly in the US, is inherently unpredictable, and unexpectedly high awards for damages can result from an adverse result. In many cases, litigation adversaries may claim enhanced damages in extremely high amounts. Government investigations, litigations, and other legal proceedings, regardless of the outcome, could be costly, divert management attention, or damage our reputation and demand for our products.

Unfavourable resolutions to current and similar future proceedings against us that could subject us to criminal liability, fines, penalties or other monetary or non-monetary remedies, including enhanced damages, require us to make significant provisions in our accounts relating to legal proceedings and could materially adversely affect our business or results of operations.

(Emphasis added).

30.    The statement in ¶ 29 was materially false and misleading at the time it was made because it understated the risk of an adverse outcome of a government investigation, given the Company's unlawful activities in China.

31.    The 2023 Annual Report contained the following risk disclosure regarding "Failure in financial control or the occurrence of fraud":

Effective internal controls assist in the provision of reliable Financial Statements and the detection and prevention of fraud. Testing of internal controls provides only limited assurance over the accuracy of Financial Statements and may not prevent or detect misstatements or fraud.

[Impact:] Significant resources may be required to remediate any deficiency in internal controls. Any such deficiency may trigger related investigations and may result in fines being levied against individual directors or officers. Serious fraud may lead to prosecution of senior management. Any of the foregoing could adversely affect our financial results and lead to reputational damage.

9

32.     The statement in ¶ 31 was materially false and misleading at the time it was made because AstraZeneca was engaging in insurance fraud in China. Accordingly, the risk of investigation, fines, and criminal prosecution was understated.

33.     The statements contained in ¶¶ were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) AstraZeneca engaged in insurance fraud in China; (2) as a result, AstraZeneca faced heightened legal exposure in China, which eventually resulted in the AstraZeneca China President being detained by Chinese law enforcement authorities; (3) as a result, AstraZeneca understated its legal risks; (4) the foregoing, once revealed, could materially harm AstraZeneca's business activities in China; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH BEGINS TO EMERGE**

34.     On October 30, 2024, AstraZeneca posted an announcement on its website under the heading "AstraZeneca China President currently under investigation," which stated the following:

> Leon Wang, Executive Vice President International and AstraZeneca China President, is cooperating with an ongoing investigation by Chinese authorities.
>
> Our China operations continue under the leadership of the current General Manager of AstraZeneca China.

35.     On this news, the price of AstraZeneca ADSs fell $2.39 per ADS, or 3.1%, to close at $72.83 on October 30, 2024. The next day, AstraZeneca ADSs fell a further $1.68 per ADS, or 2.3%, to close at $71.15 on November 1, 2024.

36.     On November 5, 2024, Yicai Global published an article entitled "AstraZeneca Insurance Fraud Involves Dozens of Senior Executives in China, Source Says." The article stated the following:

> Dozens of senior executives at AstraZeneca China have been implicated in an ongoing insurance fraud case as of last week, according to a person familiar with the matter.
>
> ***Leon Wang, president of AstraZeneca China, is cooperating with the investigation by Chinese authorities, which has now expanded to include the public security bureau, supervisory commission, and other relevant bodies, the person said. The key figure who should have cooperated with the inquiry was another senior executive at AstraZeneca China, they added***.
>
> *     *     *
>
> In April 2021, an AstraZeneca medical representative in Yibin, Sichuan province was found to have faked prescriptions for the lung cancer drug Tagrisso so that patients could buy it through insurance. ***To boost sales of Tagrisso, staff forged positive genetic testing reports to defraud the health insurance fund, even colluding with genetic testing companies to funnel benefits.***
>
> ***Over the past three years, insurance fraud cases involving AstraZeneca have surfaced in Shenzhen as well as the provinces of Fujian and Jiangxi***. Employees implicated in these have pointed the finger at regional managers, district managers, and even senior executives.
>
> ***These cases amount to the largest insurance fraud in the nation's pharmaceutical sector for years, a person familiar with the matter pointed out***. So far, dozens of AstraZeneca staff have been convicted of fraud, with the main offenders receiving prison sentences of over 10 years.
>
> An insider at a drugmaker noted that AstraZeneca's high sales targets put extreme pressure on medical reps, which has been a major factor in the firm's compliance issues.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(Emphasis added).

37.    On November 5, 2024, during market hours, Reuters published an article entitled "AstraZeneca shares fall on report of potential China probe fallout." It discussed the Yicai Global article and stated the following:

> [AstraZeneca] shares on Tuesday recorded their worst day since March 2020 after a report that dozens of the drugmaker's senior executives in China could be implicated in the largest insurance fraud case in the country's pharma sector in years.
>
> The Anglo-Swedish company, which has invested heavily in the world's No. 2 pharmaceuticals market, said last week that its China president, Leon Wang, was under investigation and that the drugmaker would cooperate with authorities.
>
> AstraZeneca had not said what the investigation was about or whether Wang, who grew up in China and has been with the company for more than a decade, had been detained by authorities.
>
> The investigation by Chinese authorities has now expanded to include the public security bureau, supervisory commission and other relevant bodies, financial media company Yicai reported on Tuesday, citing a person familiar with the matter.
>
> ***The report added that medical representatives have been previously found to fake prescriptions for AstraZeneca's lung cancer drug, Tagrisso, to allow patients to buy it through the state's medical insurance program***.
>
> "As a matter of policy, we do not comment on speculative media reports including those related to ongoing investigations in China," AstraZeneca said.
>
> "If requested, we will fully cooperate with the Chinese authorities," the company added and said that its operations and delivery of medicines were ongoing in China.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*AstraZeneca is one of the biggest multinational drugmakers in China, which accounts for 13% of its overall revenue*. It said last year it would build a $450 million factory in the country and has also signed several licensing deals with Chinese firms.

However, AstraZeneca's more than 30-year presence in the country has not been without challenges over prescriptions and sales.

(Emphasis added).

38.    On this news, AstraZeneca ADSs fell a further $5.16 per ADS, or 7.2%, to close at $66.27 per ADS on November 5, 2024. The next day, they fell a further $2.42 per ADS, or 3.65%, to close at $63.85 on November 6, 2024.

39.    On December 18, 2024, before the American market opened, *Financial Times* published article entitled "AstraZeneca insiders expect sales dip in China after arrest of local boss". It stated, in pertinent part, the following:

AstraZeneca's sales in China have been hit by the arrest of its country head, say company insiders, as local hospitals shun purchasing drugs from the company.

*Executives at the British pharmaceutical company expect to see an "evident" revenue hit in China in the wake of the arrest of its country president Leon Wang and several other senior executives, according to two people familiar with the matter*. Sales of oncology products in particular — at the heart of Chinese authorities' investigations — have been affected, the insiders said.

The detention of China's most prominent pharmaceutical executive has sent shockwaves through the industry. Wang's arrest came after scores of senior hospital officials were detained as part of a wider anti-corruption campaign that Beijing says is targeting the egregious costs of medical care.

*Wang's arrest represents a dramatic reversal of fortunes for AstraZeneca in China, where it is the largest foreign drugmaker by sales*. Wang had been celebrated by state media for his contributions to bolstering the

13

domestic pharmaceutical and biotech sectors through start-up investments and building manufacturing capacity and research facilities.

It is unclear at this stage how big a sales hit AstraZeneca will take, with the numbers coming in the company's next financial report. But one executive told the Financial Times: "The sales impact is already very evident."

AstraZeneca made $5.9bn in sales in China in 2023, 13 per cent of its total. Last month, it increased its full-year guidance for worldwide revenue and earnings growth.

***"Doctors are unwilling to interact with our salespeople and prescribe our medicines. They say our company has had too many issues and will opt for other choices, particularly Chinese-made drugs," the AstraZeneca executive added.***

***There are early signs that cancer drugs Tagrisso and Imfinzi have been particularly severely affected, they said. The company hopes that Enhertu sales could weather the crisis, according to one of the people familiar with its position, as it is considered the best drug on the market for certain types of breast cancer.***

(Emphasis added).

40.    On this news, AstraZeneca ADSs fell $2.54 per ADS, or 3.78%, to close at $64.64 on December 18, 2024.

41.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company,

14

members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

44.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements

15

made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

48. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

49. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in

17

order to make the statements made, in light of the circumstances under which they were made, not misleading.

54.   Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

55.   Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

56.   Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

57.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

58.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

59.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

60.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## <u>COUNT II</u>

### **Violations of Section 20(a) of the Exchange Act**
### <u>**Against the Individual Defendants**</u>

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

19

62.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

63.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

64.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

65.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)    awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 23, 2024                **THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

21