# EXHIBIT 1

18vegrec

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   ELLIOT GREENBERG, individually
3  and on behalf of all others
   similarly situated, et al.,
4
              Plaintiffs,
5
          v.                        11 CV 3616(RJS)
6
   YONGYE INTERNATIONAL, INC.,
7  et al.,
8
              Defendants.
   ------------------------------x
9  TIMOTHY BUTLER, individually and
   on behalf of all others similarly
10 situated,
11            Plaintiffs,
          v.                        11 CV 3799(RJS)
12
   YONGYE INTERNATIONAL, INC.,
13 et al.,
              Defendants,
14 ------------------------------x
15                                  August 31, 2011
                                    11:12 a.m.
16
   Before:
17
                   HON. RICHARD J. SULLIVAN,
18
                                    District Judge
19
20                      APPEARANCES
21
   ROBBINS GELLER RUDMAN & DOWD, LLP
22      Attorneys for Movants Patricia and Merton Horne, Scott
        Whitehead and Plaintiff Elliot Greenberg
23 BY:  DAVID AVI ROSENFELD
24 LAW OFFICES OF CURTIS V. TRINKO, LLP
        Attorneys for Plaintiff Greenberg
25 BY:  CURTIS V. TRINKO

                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

Exhibit 1
001

18vegrec

1                    A P P E A R A N C E S (Continued)

2    THE ROSEN LAW FIRM
          Attorneys for Plaintiff Butler and Movant Universal
3         Invest Quality Growth
     BY:  PHILLIP C. KIM
4
     SIMPSON THACHER & BARTLETT, LLP
5         Attorneys for Defendants
     BY:  BRUCE ANGIOLILLO
6         CRAIG WALDMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 1
002

18vegrec

| 1 | (In open court) |
| 2 | THE DEPUTY CLERK: Greenberg, et al. versus Yongye |

International, 11 Civ. 3616, and Butler, et al v. Yongye

International, 11 Civ. 3799.

        Appearing for the plaintiffs?

        MR. ROSENFELD: Good morning, your honor --

        THE COURT: I guess it's only plaintiffs. Do I have

any defendants today? Oh, we do. But this is really more of

an intramural dispute.

        Okay. Go ahead.

        MR. ROSENFELD: Correct, your Honor.

        Good morning, your honor. David Rosenfeld from

Robbins Geller on behalf of Merton and Patricia Horne and Scott

Whitehead and plaintiff Elliot Greenberg.

        THE COURT: Okay. Great. Good morning.

        MR. TRINKO: Curtis Trinko on behalf of plaintiff

Elliot Greenberg.

        THE COURT: Okay, Mr. Trinko. Good morning.

        MR. KIM: Good morning, your honor. Philip Kim of The

Rosen Law Firm for movant Universal Invest Quality Growth and

also plaintiff Butler.

        THE COURT: Good morning to you.

        And I guess for the defendants?

        MR. ANGIOLILLO: Good morning, your honor. Bruce

Angiolillo and my colleague Craig Waldman with Simpson Thacher

Exhibit 1
003

18vegrec

1    for the corporate defendant Yongye.

2                THE COURT:  But you don't expect to do a lot of heavy

3    lifting today?

4                MR. ANGIOLILLO:  No, your Honor.

5                THE COURT:  You should bill half your usual.

6                All right.  We're really here with respect to the

7    plaintiffs' motions to be appointed lead counsel.  I've got

8    motions by two plaintiffs, or sets of plaintiffs, the Horne

9    group and Universal Invest -- well, what I'll just call

10   Universal.  And I guess the issue is whether or not Universal,

11   which has the greater economic loss, ought to be, nevertheless,

12   bypassed because somebody else would be a more appropriate lead

13   counsel.

14               So I've looked at this.  It seems to me that there's

15   certainly a stark difference between the economic losses

16   associated with each group, right?  We have the Horne group,

17   which is economic losses of about 12 grand, and Universal

18   group, which is economic losses of about 350,000, right?

19               MR. ROSENFELD:  That's correct.

20               MR. KIM:  That's correct, your Honor.

21               THE COURT:  So there's no dispute about that.

22               So the issue is whether or not -- well, I guess

23   there's a couple points that the Horne group makes here, one of

24   which is that Universal has failed to submit a proper

25   certification in connection with the motion, right?  Universal

Exhibit 1
004

1  failed to note in its certification that only one month prior

2  to seeking appointment as lead plaintiff in the case, it sought

3  to be appointed as lead plaintiff in another securities class

4  action, Gross v. Deer Consumer Products, filed in California.

5  So I'm not sure I'm following the significance to that.

6  MR. ROSENFELD:  Your Honor, I can address each issue

7  one at a time or I can address each issue --

8  THE COURT:  Let's do them one at a time.

9  So that's the first argument you make, right?

10  MR. ROSENFELD:  That's correct, your Honor.  And as

11  your Honor recognizes, this case is governed by the Private

12  Securities Litigation Reform Act that provides that any

13  plaintiff seeking to act in a representative capacity file a

14  certification or attach it to the complaint.  But courts have

15  interpreted that to mean they be included in the lead plaintiff

16  motion so that other members of the class can see what their

17  financial interest is and whether or not they're otherwise

18  adequate and typical.

19  So with regard to the certification, what they have

20  done is one of the requirements of the certification is that a

21  movant set forth all cases within the prior three years that

22  they sought to be appointed as a lead plaintiff.  And the

23  purpose of that, your Honor, is to avoid, number one,

24  professional plaintiffs, and number two is that any investor

25  seeking to be appointed lead plaintiff is able to establish

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
005

1   that he's able to manage his current caseload.  In other words,

2   if he's serving as a lead plaintiff in another case, that's not

3   burdensome enough that he can certainly acknowledge that in his

4   certification and represent that to the Court.

5         So what they've done here is they failed to note that

6   in that certification.  And in that reply, what they said is,

7   well, the reason they didn't note it in the certification is

8   because the certification they signed in this case and the

9   certification they signed in the other case were signed on the

10  same date, on May 27, 2011.  And, therefore, they chose not to

11  note either one in each certification, since they didn't file

12  the motions at that time, they only filed them later.

13        But, your Honor, the PSLRA explicitly says you need to

14  note what those cases are.  And essentially what they're doing

15  is an end run around the PSLRA.

16        THE COURT:  For what purpose, some ulterior motive

17  here?

18        MR. ROSENFELD:  Sloppiness.

19        THE COURT:  Your point is they haven't lived up to the

20  letter of the PSLRA so, I should then punish them for it, even

21  though there's no prejudice that would flow from that?

22        MR. ROSENFELD:  There's no prejudice other than the

23  fact that it shows that either they're not aware they're

24  serving as a lead plaintiff in the other case, that they don't

25  understand what that means.  They're a foreign entity here.

Exhibit 1
006

18vegrec

1          THE COURT:  This firm does this, does these kinds of

2   cases, right?

3          MR. ROSENFELD:  Which firm, Universal Invest -- or The

4   Rosen Law Firm?

5          THE COURT:  No, the Rosen law firm.

6          MR. ROSENFELD:  Correct.  They practice in this area,

7   that is true, but they're not the client.

8          THE COURT:  I know they're not the client, but is the

9   suggestion that they were oblivious to what their client was

10  doing?

11         MR. ROSENFELD:  Well --

12         THE COURT:  I'll let them speak for themselves.

13         MR. ROSENFELD:  With all due respect to The Rosen Law

14  Firm, they are a small law firm, filed lots of cases, issued

15  numerous press releases in cases they're not involved in,

16  trying to get Rosen cases.  We think they may be overextended,

17  and that can contribute to --

18         THE COURT:  All right.  But they've got the bigger dog

19  in this case, right?  I've seen your dogs in other cases,

20  Mr. Rosenfeld.  You've got some big dogs in other cases, but

21  this one, these are little yappy dogs.  These are not big dogs.

22         MR. ROSENFELD:  I don't dispute that our numbers are

23  not great as Universal Invest's, but I'll get to whether the --

24         THE COURT:  The first point is that the certifications

25  leave something to be desired, and, in fact, they're

Exhibit 1
007

18vegrec

1  technically deficient.

2          MR. ROSENFELD:  And one other thing worth noting is

3  that our complaint was filed on May 26th, 2011.  And in that

4  complaint we allege a class period starting in August 2010.

5          Universal Invest signs a certification the next day,

6  and that's the one they submitted in connection with their

7  motion.  And they list trades going back to April of 2010

8  saying they reviewed the complaint, and here are our trades

9  during the class period.

10          Now, there was a later complaint filed extending the

11  class period, but at the time they filed the certification --

12  and, again, I'm not saying that you should disqualify them on

13  this basis alone, but this just adds color to what their motion

14  is and their understanding of what they're reviewing here and

15  what they're seeking to be in this case, which is a lead

16  plaintiff to represent the interests of the class, which

17  requires them to review pleadings and ensure accuracy if things

18  are being filed with the Court.

19          So here you have a certification which lists trades

20  that are beyond the scope of the complaint on file at that

21  point in time.  So, again, they're signing documents, making

22  representations to the Court that are not necessarily accurate.

23  Yes, they did file it that day, but at that point in time it

24  was not an accurate document, neither on the trades that were

25  listed because of the class period and nor because of the fact

Exhibit 1
008

1    that they did not list that they were seeking to be appointed

2    lead plaintiff in another case.

3         THE COURT:  Okay.  All right.  Let me hear -- I'm not

4    sure who's carrying the ball.

5         MR. KIM:  Your Honor, Phillip Kim here.

6         In response to these arguments, it's not proof of any

7    inadequacy with respect to our client.  The certifications are

8    dated the same day, in this case and in Deer, because Universal

9    Invest is a client of ours.  We filed the case in Deer.  We are

10   appointed lead counsel in a number of these Chinese cases.  In

11   fact, we have a Chinese attorney on staff who's been trained

12   and educated in China.  And Universal Invest purchased these

13   stocks, learned of the lawsuit and signed up with us.

14        The fact that in Deer and in this case the

15   certifications are both dated May 27th, as we noted in our

16   papers, we were not sure whether Universal Invest would have

17   the largest loss.  Certainly if other clients had reached out

18   to us that had a larger loss, we would have advised that to our

19   client and said, hey, look, there's another client here with a

20   larger loss.  So the fact that the certification doesn't list

21   each case at that point in time, there were no lead plaintiff

22   deadlines, and we addressed that in the footnote in our reply

23   brief.

24        THE COURT:  All right.  I mean, do you think the

25   better practice, though, is to amend your certification, or

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
009

18vegrec

1    would that be too onerous?

2            MR. KIM:  We could amend the certification.  We don't

3    have a problem with that.  It's not a secret that our client

4    moved for lead plaintiff in Deer and is lead plaintiff.  We set

5    that forth in our reply.

6            As to the purpose of disclosing involvement in other

7    cases, professional plaintiff restriction, courts in this

8    district had said it doesn't even apply to institutions.  This

9    is a sophisticated institution that manages many millions of

10   dollars.  And to suggest that it did not know what it was

11   getting into or didn't know that what it was -- didn't know

12   what the certification was signing, especially in light of the

13   fact that we submitted the declaration of Mr. De Sejournet

14   establishing his authority or the fund's authority and

15   establishing his awareness of what he's doing, there's no proof

16   of it.

17           If we want to talk about certifications we could look

18   at the certification of one of the Hornes.  As we noted in our

19   opposition, it's inaccurate.  They never corrected it.  They

20   have a certification of a member of their group, it's an

21   electronic certification, and there's no information other than

22   the person's name.  So, you know, we could do this back and

23   forth.

24           But the bottom line, your Honor, is that there's no

25   proof, and that's the standard.  There's no proof establishing

Exhibit 1
010

18vegrec

```
 1   that in any way our client is inadequate or atypical.  These
 2   are just aspersions that are cast to create a distraction.
 3          THE COURT:  I'm not persuaded that's a basis to
 4   overlook the fact that the Universal plaintiff has a much
 5   higher stake in this thing.
 6          So the next argument made is that Universal
 7   certification was executed by an individual associate with its
 8   investment advisor who lacks standing to bring a securities
 9   fraud action.  So, Mr. Rosenfeld, let me make sure I understand
10   what you're saying here.  Are you still suggesting that, or are
11   you --
12          MR. ROSENFELD:  Absolutely, your Honor.  And not only
13   that, but what they've now submitted in reply only further
14   supports our argument.  Your Honor, it requires a careful
15   reading of the declaration as well as a careful reading of the
16   case, *Hufnagel v. Rino International Corporation*, which was
17   cited in the briefs.  If your Honor has a copy of that handy, I
18   could just reference it.
19          THE COURT:  I was going to go to first the
20   declaration.
21          MR. ROSENFELD:  Sure.  It's helpful to have them side
22   by side.
23          THE COURT:  The certification you're talking about?
24          MR. ROSENFELD:  No.  I'm talking about the
25   De Sejournet declaration filed on August 24th.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
011

18vegrec

| | |
|---|---|
| 1 | THE COURT: Sorry. Lot of tabs. |
| 2 | MR. ROSENFELD: Sorry, your Honor. It's a WestLaw |
| 3 | case, if that helps. |
| 4 | THE COURT: All right. You're talking about the |
| 5 | declaration, or are you talking about the -- |
| 6 | MR. ROSENFELD: I'm sorry. Both. I'm sorry. The |
| 7 | declaration is a document filed on August 24, 2011. It's |
| 8 | document 22-1 on the docket. I don't know how your Honor has |
| 9 | it organized. |
| 10 | THE COURT: Yes. |
| 11 | MR. ROSENFELD: It was attached to a reply brief. |
| 12 | THE COURT: Attachment to Mr. Kim's declaration. Yes, |
| 13 | all right. That's where I'm looking. |
| 14 | MR. ROSENFELD: That's one. And the other document |
| 15 | I'd like to reference is the *Hufnagel v. Rino International* |
| 16 | case. |
| 17 | THE COURT: So let's start with the declaration |
| 18 | because I've got it in front of me. |
| 19 | MR. ROSENFELD: So, your Honor, actually, one more |
| 20 | document I'd like to reference, your Honor. I apologize. And |
| 21 | that is the certification that was filed in connection with the |
| 22 | motion which was attached to Mr. Kim's declaration on July 25. |
| 23 | THE COURT: Okay. Well, let's start with the 22-1. |
| 24 | MR. ROSENFELD: Okay. So in 22-1, if we can -- first |
| 25 | off, just to note for the record, this is a motion being filed |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
012

18vegrec

1    on behalf of Universal Invest Quality Growth seeking to be

2    appointed as lead plaintiff.  And who signs that certification,

3    which is document 5-3?  It's a gentleman by the name of Antoine

4    De Sejournet.  He signs it in capacity --

5            THE COURT:  Does the court reporter have the spelling

6    of that name?  Usual spelling.

7            MR. ROSENFELD:  A-N-T-O-I-N-E, D-E, S-E-J-O-U-R-N-E-T.

8            THE COURT:  Okay.  Go ahead.  I got it.

9            MR. ROSENFELD:  Initially he lists himself as being a

10   manager of Universal Invest Quality Growth, but it turns out

11   he's not.  And that's what he says in his declaration.

12           And if you look at the declaration, which is 22-1, he

13   says in paragraph two, I'm on the board of directors of Capfi

14   Delen Asset Management, which he defines as CaDelAM.  So he's

15   not the manager.

16           THE COURT:  He's the manager?

17           MR. ROSENFELD:  CaDelAM is the manager.  But even if

18   you want to say he was signing that in the capacity of CaDelAM,

19   the next paragraph is what's troubling, your Honor, where he

20   says, I am duly authorized by CaDelAM and its board -- emphasis

21   on the word "its" -- to bring this litigation and to bind the

22   fund in this litigation.

23           Now, as your Honor will note in paragraph five, he

24   makes it clear when he says, the fund is managed by me through

25   CaDelAM, along with the fund's board of directors.  So the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
013

18vegrec

1  fund, which is the entity seeking to be appointed as lead

2  plaintiff in this case, has its own board of directors.  That

3  is an issue in dispute.  It says it right there in paragraph

4  five.  It has its own board of directors which manages the

5  fund, and yet the authority that Mr. De Sejournet represents

6  that he has is not from the board of directors of the fund but

7  from CaDelAM and its board.  And again, I'm referencing

8  paragraph three.

9        THE COURT:  Yes.

10       MR. ROSENFELD:  So here you have an entity seeking to

11  be a lead plaintiff, appointed lead plaintiff by a guy who

12  signed the certification saying he has authority from a third

13  party.  It's no different than someone filing a motion to be

14  appointed lead plaintiff by me and signing the certification as

15  Jim Smith.  Your Honor would come and say, what's your

16  authority to bind David Rosenfeld if your name is Jim Smith?

17  And you would need evidence of your authority to show that you

18  have authorization to seek appointment as lead plaintiff on

19  behalf of David Rosenfeld or on behalf of Universal Invest.

20       I mean, to come sand say that you have authority to

21  bind me because Frank Smith told you that I'm authorized is of

22  no moment.  You cannot do that, your Honor.  You need to show

23  that you have authority from the entity that is seeking to be

24  appointed as lead plaintiff.  And here you have

25  Mr. De Sejournet, who's saying that CaDelAM is authorizing me

Exhibit 1
014

18vegrec

| | |
|---|---|
| 1 | to seek appointment as lead plaintiff for Universal Invest, |
| 2 | another entity that has its own board of directors. |
| 3 | THE COURT:  Right.  Okay.  I want to hear Mr. Kim |
| 4 | respond to this but is there another point you wanted to make? |
| 5 | MR. ROSENFELD:  There is, your Honor, and that is the |
| 6 | *Rino* case in which Mr. Kim is serving as lead counsel and which |
| 7 | he heavily relies on to show that an entity such as Universal |
| 8 | Invest should be appointed as lead plaintiff.  If your Honor |
| 9 | has a copy of that handy? |
| 10 | THE COURT:  I don't know that I do. |
| 11 | MR. ROSENFELD:  I can reference it.  It's at star six, |
| 12 | and it's 2011 WestLaw 710704.  I apologize I don't have an |
| 13 | extra copy with me. |
| 14 | THE COURT:  2011 WestLaw. |
| 15 | MR. ROSENFELD:  710704 at star six. |
| 16 | And this, your Honor, is a case in which an entity |
| 17 | similar to Universal Invest, it's called a SICAV -- one second, |
| 18 | your Honor.  Sorry, SICAV, S-I-C-A-V, that's a type of entity |
| 19 | that this is.  And this is another case in which Mr. Kim |
| 20 | represents a SICAV in which the Court appointed them as lead |
| 21 | plaintiff.  And in the opinion, the reason the Court appoints |
| 22 | them is there's explicit representation by the individual who |
| 23 | signed the certification there that says that he is, quote, |
| 24 | duly authorized by the fund's management and board of directors |
| 25 | to bring this litigation  -- |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
015

18vegrec

1          THE COURT:  All right, I understand.  What you're

2     saying is that this declaration should have had a paragraph

3     that says the fund has -- the fund and its board of directors

4     has authorized me to bring this suit on their behalf.  That's

5     what you're saying?

6          MR. ROSENFELD:  Well, not only should it have it.

7     They should have actually received that authority.

8              And another point, your Honor, is that this may

9     involve an extensive analysis of foreign law to determine

10    whether or not that authority was proper and whether or not

11    that authority was timely.

12         THE COURT:  Well, I think that's really the next point

13    that I have you taking up.

14         MR. ROSENFELD:  That's one of the issues --

15         THE COURT:  Res judica defenses that are unique to a

16    Luxembourg entity, right?

17         MR. ROSENFELD:  Right.  And, your Honor, that's one of

18    the issues that Judge Pauley was concerned about in the

19    Bagdel v. American Express case.  He says there's just too many

20    issues involved for this foreign entity, and he was reluctant

21    to appoint the investor in that case as a lead plaintiff.

22         THE COURT:  All right.  Let me have Mr. Kim respond to

23    the deficiencies or what you allege are the deficiencies in the

24    declaration of Mr. De Sejournet, whatever his name.

25         MR. KIM:  Well, your Honor, with respect, the argument

Exhibit 1
016

18vegrec

1   here, as I hear it, is not necessarily a Huff issue.  A Huff

2   issue would have been if the manager himself was trying to be

3   lead plaintiff for the losses of the fund, and that was the

4   issue in Huff, where an investment advisor didn't have standing

5   to be a lead plaintiff.  I think the argument I'm hearing today

6   is that Mr. De Sejournet did not have authority to bind the

7   fund.

8           THE COURT:  I think it's the same technical deficiency

9   in the declaration at least, because it doesn't -- there's no

10  link between the named plaintiff and the individual who is

11  filing the certification and the declaration.

12          MR. KIM:  Judge, we believe the declaration is

13  adequate and certainly -- could it have been drafted a little

14  bit better?  Certainly, yes.  And we can submit something

15  better, if that's what the Court wants, that says directly that

16  he's authorized by the fund.  But Mr. De Sejournet manages the

17  fund.  He's the one who made the investment decision.  I

18  understand officially it's CaDelAM that's managing the fund,

19  but he's the person behind the entity.

20          THE COURT:  That's paragraph five.

21          MR. TRINKO:  Yes, exactly.  He made the investment

22  decision, and the fund itself is controlled by the fund's board

23  of directors and the management.  So there's nothing from this

24  declaration, or even from assertion, that would suggest that

25  Mr. De Sejournet does not have the authority to bind the fund.

Exhibit 1
017

18vegrec

```
 1   There's got to be proof.  We can sit here and --

 2           THE COURT:  There's nothing to suggest he does have

 3   the authority either, right?  You want to read between the

 4   lines and indicate that because he's managing the fund, he must

 5   have the authority to bind them?  But certainly the declaration

 6   doesn't say that.

 7           MR. KIM:  It doesn't explicitly say that.  Certainly

 8   we could submit something to the Court very quickly to remedy

 9   that situation.  Certainly he had authority from the beginning.

10   We wouldn't have made the motion if he didn't have the

11   authority.

12           It could have been drafted better, your Honor.  I

13   apologize for that.

14           THE COURT:  My take on this is that it's easily fixed.

15   It's of a technical deficiency and could have been written

16   better, but why wouldn't the way to resolve this,

17   Mr. Rosenfeld, just be to have Mr. De Sejournet supplement his

18   declaration so it's clear?

19           MR. ROSENFELD:  Your Honor, I'm not sure why -- based

20   on representations made here, and based on the similar

21   representations yet different representations in the

22   declaration that they filed in the Hufnagel case, the same

23   counselor prepared the same declaration.  Clearly there must

24   have been a difference as to why they chose certain language in

25   one instance and other language in another instance.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
018

18vegrec

```
1              THE COURT:  Maybe.

2              MR. ROSENFELD:  The question goes to whether or not he

3    has authority.

4              THE COURT:  Well, if Mr. Kim submits what ends up

5    being a false declaration, then Mr. Kim will really regret it.

6    And so if it's impossible for Mr. De Sejournet to supplement

7    his declaration in a way that would cover the deficiency that

8    you've identified, then I guess there's a problem.  But Mr. Kim

9    is representing that it's just an oversight and it's easily

10   corrected.  And it seems to me I can let him easily correct it.

11   That seems to me to be more in keeping with the spirit of the

12   law than to say, technical deficiency, toss you and go with the

13   $12,000 plaintiff, it seems to me.

14             MR. ROSENFELD:  Your Honor, in all fairness, there are

15   numerous oversights in connection with this motion.  And that

16   goes to the argument in our brief that the firm is overextended

17   in its ability to handle these cases and whether or not the

18   client fully appreciates what's going on and can oversee

19   counsel, because that's what a lead plaintiff does.  A lead

20   plaintiff's role is simple:  Oversee your counsel.

21             THE COURT:  But I don't think there's great authority

22   for the proposition that an inartfully phrased declaration or

23   the deficiencies of the sort that you're identifying is enough

24   to bounce somebody who has unmistakably a much larger stake in

25   the case.
```

Exhibit 1
019

18vegrec

```
 1              So anyway, I'm not prepared to do that based on what
 2    I've heard so far.  So I'll direct Mr. Kim to submit a revised
 3    declaration or supplemental declaration for Mr. De Sejournet
 4    by -- can you do it by Friday, by Monday?
 5              MR. KIM:  Your Honor, can I have ten days?
 6    Mr. De Sejournet is on vacation abroad, so it might be
 7    difficult reaching him if he's travelling.
 8              THE COURT:  All right.  But find him.  It's pretty
 9    simple.  I'll give you ten days.
10              MR. ROSENFELD:  Your Honor, can we just have two days
11    to respond, if necessary, if we think there's anything in
12    there?
13              THE COURT:  Sure.  I'll set a schedule when we're
14    done, but that's the way I'm inclined to go.
15              The next point is that Luxembourg -- my God, you can't
16    do business with anybody who's from Luxembourg.  It's a jungle
17    out there.  And I know you cite the Bagdel v. American Express.
18    That's the Judge Pauley case?
19              MR. ROSENFELD:  Correct, your Honor.
20              THE COURT:  And that case I think -- well, you guys
21    indicate that there's no evidence that Luxembourgian courts
22    would give res judicata effect to a judgment in this case.  I
23    mean, is that a burden that they have to do at this point?
24    They have to establish -- they have to sort of run down and
25    extinguish any possible arguments that could be made with
```

Exhibit 1
020

18vegrec

1   respect to foreign law and the application of foreign law?

2          MR. ROSENFELD:  Well, your Honor, this is not a unique

3   argument.  This is something that has been considered by a

4   number of judges and found to be sufficient reason to not

5   appoint them as lead plaintiff.

6          THE COURT:  But, I mean, there's plenty of foreign

7   plaintiffs who are, in fact, appointed as lead counsel.

8          MR. ROSENFELD:  Absolutely.  There are plenty of

9   foreign plaintiffs.  We represent foreign plaintiffs.

10          THE COURT:  Yes.

11          MR. ROSENFELD:  But that's not the issue.  The issue

12   is if you're in a country that is not -- certain countries have

13   relationships with the United States such that they give full

14   effect and credit to judgments in the United States.  And

15   there's no concern about any ability to obtain a res judicata

16   of any judgment entered against an entity here.

17          THE COURT:  Other than this case involving Judge

18   Pauley, are you familiar with other cases in which courts have

19   denied lead plaintiff status to such a Luxembourgian company or

20   sort of announced a broad rule that anybody who's from

21   Luxembourg can't be a lead plaintiff?

22          MR. ROSENFELD:  I'm not familiar with Luxembourg in

23   particular, but I am familiar with some German entities that

24   sought to be appointed lead plaintiff that have been denied

25   lead plaintiff in this courthouse.  I think it was Judge

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
021

18vegrec

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | Stanton, Kuriakose case.  I'll submit it to your Honor.                      |
| 2  | THE COURT:  I can find it.                                                   |
| 3  | MR. ROSENFELD:  I believe that's the case.                                  |
| 4  | THE COURT:  I mean, the response, and I'm going to                           |
| 5  | hear Mr. Kim in a moment, is that these are all shares that                  |
| 6  | purchased through a US stock exchange.  Is that irrelevant in                |
| 7  | your --                                                                       |
| 8  | MR. ROSENFELD:  You know, your Honor, I have to be                           |
| 9  | frank.  I see some courts have made that distinction, but I                  |
| 10 | don't see why that's a distinction with a difference.  Why                   |
| 11 | should that be relevant to whether or not a foreign entity, a               |
| 12 | foreign company -- a foreign country, sorry, is going to give               |
| 13 | res judicata effect to a judgment in the United States?  We are              |
| 14 | a company -- where an entity purchased its share should have no             |
| 15 | consideration in that analysis.                                             |
| 16 | THE COURT:  All right.  Well, I mean, you've got Judge                       |
| 17 | Pauley who voiced his concerns, and I guess they have their own              |
| 18 | judges in this district which sort of cancel each other out.                |
| 19 | Nobody gets to tell me what to do.  If the circuit weighed in,               |
| 20 | then that would be the end of it, but there's no circuit                     |
| 21 | authority that you've cited, right?                                          |
| 22 | MR. ROSENFELD:  Not that I'm aware of, correct.                             |
| 23 | THE COURT:  Mr. Kim?                                                         |
| 24 | MR. KIM:  Your Honor, we --                                                 |
| 25 | THE COURT:  I'd be interested to know in these                              |

Exhibit 1
022

18vegrec

1  difficult economic times, shouldn't we just be reserving these

2  coveted positions to American corporations in American

3  entities?  Isn't that the patriotic thing to do?

4         MR. KIM:  They had a larger loss than our client.  But

5  you know, we cite cases from Judge Buchwald, recent case,

6  Transocean case of 2011, case that's at issue, Judge

7  Scheindlin.  So there are cases on both sides of the issue.  We

8  don't think it's an issue in Hufnagel.  Again, Luxembourg

9  entity was appointed lead counsel and lead plaintiff.

10        In Deer, this client, Universal investors appointed

11  lead plaintiff.  That was a contested motion at the opposition

12  stage.  The competing movant withdrew their papers after the

13  head ceded the financial loss of our client.  And the issue

14  of -- and there's a broader issue of res judicata is at this

15  lead plaintiff stage, the competing movant has to show proof.

16  So courts that have considered this issue have only really

17  considered it when there was direct evidence by the competing

18  movant showing that the proposed lead plaintiff, you know, has

19  some unique issue, meaning through an expert declaration or

20  something like that.

21        There's none of that here.  Their citation is to a

22  German case, you know, cases dealing with German entities.  So,

23  you know, the competing movant hasn't come forward with the

24  proof that's required under the PSLRA to knock our client out.

25        THE COURT:  Okay.  I mean, I guess I think I'm

Exhibit 1
023

18vegrec

| 1 | inclined to agree with Mr. Kim.  He's having a good day so far. |

1    inclined to agree with Mr. Kim.  He's having a good day so far.

2    But it seems to me that I haven't seen anything to suggest that

3    there really is a problem here.  There's a little bit of

4    language from another case involving different parties and

5    different facts and, you know, it might be an issue, but I

6    certainly don't think it's been demonstrated that it really is

7    an issue that's going to knock the Universal folks out of the

8    box or create real unique problems in this case.  I don't think

9    that's been established sufficiently for me to prevent them

10   from being lead plaintiff.

11           So I'm going to deny this, subject to the submissions

12   that we've talked about.  And I'm going to -- I think

13   Universal, seems to me, to be able to pull this off.  And I

14   think the arguments raised by Mr. Rosenfeld, for whom I have

15   great respect because I see him all the time, I think I'm not

16   ultimately persuaded by them, that they're enough to overcome

17   the presumption under law.

18           But, Mr. Angiolillo, maybe you'd like to weigh in.

19   Who would you rather fight against?

20           MR. ANGIOLILLO:  Your Honor, I don't pick my

21   adversaries.  I'm just happy to be in front of your Honor

22   again.  Good to see you.

23           THE COURT:  It's a pleasure, I'm sure, for you and

24   pleasure for me, too.  Anyway, so not a surprising response.  I

25   didn't think that you'd really have a dog in this fight.

Exhibit 1
024

18vegrec

```
 1          So that's what we'll do.  But I do want to see the

 2   declaration, the supplemental declaration for

 3   Mr. De Sejournet -- is that the right pronunciation?

 4          MR. KIM:  Yes, your Honor.

 5          THE COURT:  So I'll just give you firm dates, then.

 6   Ten days from today puts us at September 10th, which is what

 7   day?  That's a Saturday.  What do you think, can you get it to

 8   me by the 9th, which is Friday?

 9          MR. KIM:  We'll get it to the Court as soon as

10   possible.  I think it's safe to just make it the 12th.  If I

11   can get it tomorrow --

12          THE COURT:  Are you okay with that, Mr. Rosenfeld?

13          MR. ROSENFELD:  That's fine.

14          THE COURT:  12th.  I'll give you three days and set it

15   to the 15th.  September 12th and September 15th.  Depending on

16   what I see, I will either just issue a short order consistent

17   with what I've said today making the appointment, or if there

18   really is a problem, then maybe I'll get you back or I'll give

19   you further instructions.  Okay?

20          MR. ROSENFELD:  Thank you very much, your Honor.

21          THE COURT:  Anything else today?

22          MR. ANGIOLILLO:  No, your Honor.

23          THE COURT:  Well, thanks.

24          (Adjourned)

25
```

Exhibit 1
025