# Exhibit 2

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10               WESTERN DIVISION
11

12   JERIES SALEH, Individually and on          Case No. 2:24-cv-11021
     Behalf of All Others Similarly Situated, )
13                                           )   SUPPLEMENTAL DECLARATION
                             Plaintiff,      )   OF JOHAN VERBIST
14                                           )
             vs.                             )
15                                           )
     ASTRAZENECA PLC, PASCAL                  )
16   SORIOT, and ARADHANA SARIN,             )
                                             )
17                           Defendants.     )
                                             x
18   ────────────────────────────────
19
20
21
22
23
24
25
26
27
28

     ────────────────────────────────────────────
              SUPPLEMENTAL DECLARATION OF JOHAN VERBIST

1    I, Johan Verbist, declare that the following is true and correct:

2    1.    I am a partner at Verbist & Vanlerberghe Omega Law in Antwerpen,
3    Belgium.

4    2.    I have been asked by C+F (C+F World Equities and C+F Very Low)
5    ("C+F") to provide an opinion regarding the joint signatory authority of Mr. Michel
6    Buysschaert and Mr. Paul De Winter to legally bind and represent C+F under
7    Belgian law, and to further opine on the legal status and structure of C+F under
8    Belgian law.

9    3.    I was admitted to the Brussels Bar in 1974, and in December 1988 was
10   appointed by the King of Belgium as one of only 20 attorneys admitted to the Bar of
11   the Belgian Court of Cassation (Avocat à la Cour de cassation/Advocaat bij het Hof
12   van Cassatie), also known as the Supreme Court, the highest Court in Belgium. Only
13   attorneys admitted to the bar of the Belgian Court of Cassation are qualified to
14   represent parties before the Belgian Court of Cassation in both civil and commercial
15   cases. They are appointed by the King from a list of three candidates, drawn up by
16   an advisory panel consisting of lawyers, magistrates of the Belgian Court of
17   Cassation, and university professors. Candidates must have been admitted to the
18   Bar for at least ten years, successfully followed a four-year special education and
19   training course organized by the Bar of the Supreme Court, and passed an exam. I
20   have been practicing Belgian law for over 48 years, focusing on commercial law and
21   litigation, including Supreme Court litigation, and have significant experience
22   practicing Belgian law on the topics of procedural and corporate law. I have written
23   numerous publications on Belgian procedural and corporate law. A copy of my
24   curriculum vitae is attached hereto as Exhibit A. As such, I am qualified to make
25   such opinion.

26   4.    C+F is a Belgian public limited company, qualifying as an investment
27   company with variable capital ("SICAV") organized as an undertaking for collective
28   investment in transferable securities ("UCITS") subject to Belgian law, registered

1

SUPPLEMENTAL DECLARATION OF JOHAN VERBIST

with the Belgian trade register ("Crossroads Bank for Enterprises" or "CBE") under number 0463.755.911.  Attached as Exhibit B is the official registry extract for C+F.

5.     Under Belgian law, more specifically article 110 of the Belgian Code of International Private Law, legal persons are governed by the laws of the state in which their registered office is located.  Article 2:146 of the Belgian Companies and Associations Code ("BCAC") provides that the BCAC is applicable to legal persons which have their registered office in Belgium.  C+F, with its registered office in Belgium (Jan Van Rijswijcklaan 184, 2020 Antwerpen), is thus governed by Belgian law.

6.     Under Belgian law, Article 7:93, §2, first paragraph BCAC, the articles of association of Belgian public limited companies with a one-tier governance structure such as C+F, may grant one or more directors the authority to represent the company, acting alone or jointly (Article 7:93, §2, first paragraph BCAC).

7.     I have received and reviewed C+F' articles of association, of which an extract is attached hereto as Exhibit C and a certified translation is attached hereto as Exhibit D.  Under Article 16 thereof, C+F shall be validly bound by the joint signature of two directors.

8.     I have received and reviewed the minutes of C+F's general meeting of 19 March 2024, of which an extract is attached hereto as Exhibit E and a certified translation is attached hereto as Exhibit F.  Both Mr. Michel Buysschaert and Mr. Paul De Winter are appointed as C+F's directors, and as such, under Belgian law, the joint signature of Mr. Michel Buysschaert and Mr. Paul De Winter legally binds C+F.

9.     As stated in paragraph 8 of my declaration dated February 20, 2025, "The main feature of a UCITS SICAV is the segregation of assets between the compartments or sub-funds.  Assets of each compartment or sub-funds are indeed segregated by law so that the rights of investors and creditors concerning a compartment or sub-fund, or in connection with the creation, the operation, or the

2

1  liquidation of that compartment or sub-fund, are limited to the assets of that
2  compartment or sub-fund pursuant to the protected cell concept."

3      10.    As stated in paragraph 9 of my declaration dated February 20, 2025,
4  "Within a UCITS SICAV, each compartment or sub-fund is treated as separate entity
5  having its own name, funding, capital gains, losses, and expenses, although
6  compartments or sub-funds do not have a legal personality distinct from the UCITS
7  SICAV."

8      11.    Each compartment or sub-fund of a SICAV is independent and operates
9  as a distinct entity with respect to investors, assets, liabilities, and legal claims.
10  Consequently, if a compartment or sub-fund incurs a loss on an investment, the
11  corresponding legal claim belongs solely to that specific compartment or sub-fund.
12  Each compartment's financial position remains independent of the results of other
13  compartments – meaning that gains or losses in one compartment do not, and, in
14  fact, cannot offset gains or losses in another.  This also means that the gains and/or
15  losses of the compartments are not and cannot be consolidated at the SICAV level.
16  The compartments are the beneficial owners of their own assets, but the
17  compartments act legally through the SICAV, which, in this instance, is C+F.

18      12.    Compartments or sub-funds of a SICAV do not have legal personality.
19  This means that while each compartment is treated as independent and separate in
20  terms of investors, assets, liabilities, and legal claims, any legal action must be taken
21  in the name of the SICAV itself for and on behalf of the specific compartment or
22  sub-fund that is the beneficial owner of the legal claim.

23      13.    I have reviewed the Certification executed on 19/2/2025 by Mr. Michel
24  Buysschaert and on 20/2/2025 by Mr. Paul De Winter, attached hereto as Exhibit G,
25  and, while I express no opinion on U.S. law, under Belgian law the Certification is
26  properly and legally executed by Directors who are authorized to do so.

27

28

1        Pursuant to the laws of the United States of America (28 U.S.C. §1746), I

2    declare under penalty of perjury that the foregoing statements are true and correct to

3    the best of my knowledge.  Executed this day in Antwerpen, Belgium.

4                                            VERBIST & VANLERGERGHE OMEGA LAW

5    Dated:                      Signed:

6                                          Johan Verbist. Partner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DECLARATION OF JOHAN VERBIST

# Exhibit A

OMEGA LAW

## RESUME JOHAN VERBIST

### Personal Data



Last name:              VERBIST
First names:            Johan Frans Julia
Birthdate:              December 12, 1950
Place birth:            Halle (Bt), Belgium
Citizenship:            Belgium
Private address:        Hooimanstraat 147
                        B-9112 Sinaai
                        Belgium
Professional address:   Verbist & Vanlerberghe Omega Law
                        Amerikalei 187
                        B – 2000 Antwerp
                        Belgium
Telephone:              +32 3 2592921
E-mail :                johan.verbist@omegalaw.be

### Education

1969-1974 :   University of Louvain (Lic. Juris – magna cum laude -  KU Leuven 1974)
1975-1976:    LL.M. in International Legal Studies – (NYU 1976 ) with  CRB -BAEF fellowship
1976 :        Certificate of the Academy of American and International Law - Southwestern Legal
              Foundation – Texas 1976

### Bar

Admitted to the Brussels bar (1974)
Followed supreme court bar training course (1982-1987) and obtained certificate (1987)
Appointed to the Supreme Court bar of Belgium (1988) by Royal Decree
Served as head of the Supreme Court bar (2006-2008) and member of the bar council (2003-2014).
Teaches training courses supreme court bar and member of the exam committee

### Professional career

Joined the law firm DE BANDT, VAN GERVEN & LAGAE as an associate (1974)
Internship in the law firm CHADBOURNE, PARKE, WHITESIDE & WOLFF, 30 Rockefeller Plaza, New York
(1976-1977)
Partner in the law firm DE BANDT, VAN HECKE & LAGAE (January 1, 1983)
Managing partner (1997-2000)
After the merger with LINKLATERS, partner at LINKLATERS (2003)
Headed for many years the Litigation Practice Group of LINKLATERS Belgium and the White-Collar
Crime Team of LINKLATERS worldwide
Co-founder of the law firm  VERBIST & VANLERBERGHE OMEGA LAW (September 2013)

*Areas of specialization & rankings*

Combining Supreme Court work with general civil and commercial litigation and arbitration. Significant experience in arbitration, banking litigation, corporate and commercial litigation, construction disputes and white-collar crime cases.
Obtained continuously top rankings in all major international publications. Ranked in CHAMBERS GLOBAL  2013 as a Star Individual for Dispute Resolution.

*Publications*

Author, co-author or co-editor of numerous books and articles in legal periodicals on various topics, such as:

- **J. Verbist**, *Comparative Report on Force Majeure in Western Europe – Chapter on Belgium,* book edited by Matti Kurkela, The Union of Finnish Lawyers' Publishing Company, Finland (1982), 18-25;
- **J. Verbist**, Government Procurement Law and Procedure of Belgium*, George Washington Journal of International Law and Economics* (1987), Vol. 21, 5-25;
- J.M. Nelissen Grade & **J. Verbist**, *World Litigation Law & Practice ,Belgium,* Ronald E. Myrick – General Editor, Transnational Juris Publications, Inc., Dobbs Ferry New York (1989);
- **J. Verbist**, note under Cass. 11 June 1982 in *Tijdschrift voor Belgisch Handelsrecht,* 1983, 339, 343-347, on Rangregeling tussen voorrecht verhuurder en pandhoudende schuldeiser op handelszaak;
- **J. Verbist**, note under Cass. 25 mei 1984, in *Tijdschrift voor Belgisch Handelsrecht*, 1984, 680, 682-683, on Rangregeling tussen voorrecht van de commissionair-expediteur en van de pandhoudende schuldeiser;
- **J. Verbist**, Einde van de symbiose tussen de leasingovereenkomst en de daardoor gefinancierde koopovereenkomst?, note under Brussel, 19 november 1986, *Tijdschrift voor Belgisch Handelsrecht*, 1987, 504, 507-513;
- P. Van Ommeslaghe & **J. Verbist**, Overheidsaansprakelijkheid voor het optreden van de wetgevende macht, *Tijdschrift voor Bestuurswetenschappen en Publiekrecht,* 2009, 3-24, on the liability of the legislator;
- **J. Verbist** & S. Loosveld, De rechtsbescherming voor de financiële toezichthouder (CBFA), *Le droit pénal financier en marche – Het financieel strafrecht in opmars, Cahiers AEDBF/EVBFR,* Belgium (2009), 341-376;
- **J. Verbist** & B. Vanlerberghe, Het beschikkingsbeginsel, het recht van verdediging, de onsplitsbaarheid: cassatiekwadratuur van de procedurecirkel, *Liber amicorum Ludovic De Gryse,* Larcier (2010), 431-444;
- **J. Verbist** & B. Vanlerberghe, De nieuwe Witwaspreventiewet : wordt de bedrijfsrevisor nu advocaat?, *Liber amicorum Hugo Van Geet,* VGD (2011), 575-588;
- **J. Verbist** & B. Vanlerberghe, Artikel 1080 van het Gerechtelijk Wetboek en de verplichte vermelding van de geschonden wettelijke bepalingen in het middel tot cassatie: een excessief formalisme?, *Liber spei et amicitiae Ivan Verougstraete,* Larcier (2011), 117-132;
- **J. Verbist** & B. Vanlerberghe, Het zwijgrecht van de advocaat, *Liber amicorum Jo Stevens*, Die Keure (2011),651-666;
- **J. Verbist** & B. Vanlerberghe, Le droit de l'avocat de se taire en matière disciplinaire enfin reconnu par la Cour de cassation, *Revue de jurisprudence de Liège, Mons et Bruxelles,* (2012), 342-350 ;

- **J. Verbist** & S. Loosveld, De onderzoeksbevoegdheden van de financiële toezichthouders en de rechten van verdediging, *Financiële regulering in de kering, (14),* Instituut Financieel Recht (ed.), Intersentia (2012), 491-514;
- **J. Verbist** & S. Loosveld, Name and shame : Legal Limits to the Publication of Regulatory Decisions in the Financial Sector, *Droit bancaire et financier – Bank- en Financieel Recht,* (2012)/III-IV, 158-163;
- M. De Busschere, J. M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafprocesrecht,* Edition 2010, 556 p.;
- M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafrecht,* Edition 2012, 578 p.;
- M. De Busschere, J. M. De Busschere, J. Meese , D. Van Der Kelen & **J. Verbist,** *Larcier Wet & Duiding Strafprocesrecht,* Edition 2013, 730 p.;
- F. Lefèvre & **J. Verbist,** *The International Investigations Review,* Chapter on  Belgium, First Edition, 19-32;
- F. Lefèvre & **J. Verbist,** *The International Investigations Review,* Chapter on  Belgium, Third Edition, 37-51;
- **J. Verbist,** Enkele remedies om de toevloed van cassatieberoepen in strafzaken in te dijken, *Amicus Curiae – Liber amicorum Marc De Swaef,* Intersentia (2013), 497-508;
- J. Stevens, I. Vandevelde & **J. Verbist,**   *Artikelen & Commentaar Balie – Commentaar Boek III Ger. W.,* Kluwer (2013), 689 p.;
- **J. Verbist,** Op til zijnde hervormingen van de cassatieprocedure in strafzaken, *Cassatie in strafzaken,* W. Van Eeckhoutte & J. Ghijssels (eds.), Intersentia (2014), 277-294;
- **J. Verbist** & Ph. Traest, Cassatiemiddelen in Strafzaken,  *Cassatie in strafzaken,* W. Van Eeckhoutte & J. Ghijssels (eds.), Intersentia (2014), 69-121;
- **J. Verbist,** De hervorming van de cassatieprocedure in strafzaken, *Rechtskundig* Weekblad (2013-14), 1604-1614;
- **J. Verbist,** Belgium : the possibility to settle cases under Belgian criminal law, *EXPERT GUIDES White Collar Crime,* Euromoney Trading Limited (2014), 8-10;
- **J. Verbist,** J. Van Caeyzeele & S. Vercauteren, Belgium Law & Practice, *CHAMBERS Legal Practice Guides – Litigation,* Edited by Evan R. Chesler,  Chambers & Partners, (2014), 98-116;


*Lectures*

Have given numerous lectures on various topics, such as e.g.:

- Bankguarantees on first demand, December 7, 1981, Studiecentrum voor het Financiewezen, Leuven;
- Juridische Aspecten m.b.t. de computer, June 14, 1982, R.U. Gent – Vlerick School of Management;
- Title retention clauses – Bankguarantrees in International Trade, September 28, 1983 and November 20, 1984, Legal Aspects of Export, Instituut voor Postuniversitair Onderwijs, Antwerpen;
-  Conflict of Laws with respect to new Types of Sureties in International Transactions, June 26, 1984, New Currents in a Changing World – U.S. and E.E.C. Law and International Disputes, organized by the New York University, Brussels;
- Bescherming tegen Oneerlijke Handelspraktijken in verband met Softwareproducten, June 20, 1983, May 28, 1984, June 10, 1985, June 9, 1986 and April 20, 1988, Computer Management, R.U. Gent – Vlerick School of Management;
- The Cassation procedure, lectures given each year 2002-2014 at the University of Leuven – Law faculty;

- Lecturing on Admissibility of the cassation appeal in civil matters and on Cassation grounds in penal matter, Training courses organized by the Supreme Court Bar of Belgium.

# Exhibit B

Registered entity data | CBE Public Search                                    3/15/24, 1:36 PM

| New search by number | New search by name | New search by activity | New search by authorisation | New search by address | |
|---|---|---|---|---|---|

The English version of the Public Search application constitutes an unofficial English translation and is provided for information purposes only.
No legal rights can therefore be derived from this translation. For the official application, please consult the Dutch, French or German versions of the Public Search application.

---

## Registered entity data

### In general

| | |
|---|---|
| Enterprise number: | 0463.755.911 |
| Status: | **Active** |
| Legal situation: | **Normal situation**<br>Since July 7, 1998 |
| Start date: | July 7, 1998 |
| Name: | C + F<br>Name in Dutch, since June 23, 1998 |
| Registered seat's address: | Jan Van Rijswijcklaan 184<br>2020 Antwerpen<br>Since November 8, 2007 |
| Phone number: | No data included in CBE. |
| Fax: | No data included in CBE. |
| Email address: | No data included in CBE. |
| Web Address: | No data included in CBE. |
| Entity type: | Legal person |
| Legal form: | Public limited company<br>Since June 23, 1998 |
| Number of establishment units (EU): | 1   Information and activities for each establishment unit |

### Functions

There are 7 legal functions for this entity. Hide the legal functions.

| | | |
|---|---|---|
| Director | Buysschaert , Michel | Since March 16, 2021 |
| Director | De Winter , Paul | Since March 19, 2013 |
| Director | Duchâteau , Anne | Since March 18, 2014 |
| Director | Van Nieuwenborgh , Jens | Since August 29, 2018 |
| Director | Woronoff , Bernard | Since August 29, 2018 |
| Managing Director | Van Nieuwenborgh , Jens | Since August 29, 2018 |
| Managing Director | Woronoff , Bernard | Since August 29, 2018 |

### Entrepreneurial skill - Travelling- Fairground operator

No data included in CBE.

### Characteristics

Subject to VAT
Since February 1, 2014

Enterprise subject to registration
Since November 1, 2018

**Authorisations**

No data included in CBE.

**Version of the Nacebel codes for the VAT activities 2008**(1)

VAT 2008  64.300  -  Trusts, funds and similar financial entities
Since April 18, 2013

**Financial information**

| | |
|---|---|
| Capital | 50.000.000,00 BEF |
| Annual assembly | March |
| End date financial year | 31 December |

**Links between entities**

0443.743.425  (HERMES)   has been absorbed by this entity  since April 18, 2013
0456.171.402  (ATHENA)   has been absorbed by this entity  since April 18, 2013

**External links**

Publications in National Gazette
Publication of the annual accounts in the Central Balance Sheet Office
Database of statutes and powers of representation (notarial deeds)

(1)The EC-classification of the Nacebel codes has changed on 1/1/2008. Both the Nacebel codification of 2003 and 2008 are available in Public Search. The 2003 codes were valid until 31/12/2007. On 1/1/2008, the new codification became valid. This was a mere administrative conversion : no activities of the entity or establishment unit have thus been changed.

Back



FPS Economy, SMEs, Self-Employed and
Energy.

Situation in the CBE database on 14/08/2024
Version: 14.0.0-f7557051-on-07_06_2024-at-13_59_16-07/06/2024

# Exhibit C

Digitally signed by FEDNOT
Date: 2025.03.06 08:24:52 CET



Kopie uit het dossier van de rechtspersoon van de op datum van aflevering geldende tekst van de statuten, voor eensluidend gewaarmerkt door de Koninklijke Federatie van het Belgisch Notariaat.

Datum van aflevering kopie: 06/03/2025

Datum van neerlegging in het dossier van de rechtspersoon: 30/08/2022

Datum van de authentieke akte aan de oorsprong van deze versie van de tekst van de statuten: 23/08/2022

---

"C+F"
beleggingsvennootschap met veranderlijk kapitaal
Instelling voor collectieve belegging die voldoet aan de voorwaarden
van richtlijn 2009/65/EG
naamloze vennootschap
te 2020 Antwerpen, Jan Van Rijswijcklaan 184
Ondernemingsnummer 0463.755.911 - RPR Antwerpen (afdeling Antwerpen)

---

GECOÖRDINEERDE STATUTEN

Historiek
Oprichting
Opgericht blijkens akte verleden door notaris Guy SORGELOOS te Brussel op 23 juni 1998, gepubliceerd in de bijlagen tot het Belgisch Staatsblad van 17 juli daarna, onder nummer 980717-708.
Statutenwijzigingen
[…]
* Bij akte verleden voor notaris Marc SLEDSENS te Antwerpen op 29 april 2015, bekendgemaakt in de Bijlagen bij het Belgisch Staatsblad van 19 mei daarna, onder het nummer 15071324.
*  Bij akte verleden voor zelfde notaris SLEDSENS op 8 december 2017, bekendgemaakt in de Bijlagen bij het Belgisch Staatsblad van 25 januari 2018, onder het nummer 18018695.
* Bij akte verleden voor zelfde notaris SLEDSENS op 10 januari 2018, bekendgemaakt in de Bijlagen bij het Belgisch Staatsblad van 7 februari daarna, onder het nummer 18027224.
* Bij akte verleden voor zelfde notaris SLEDSENS op 13 maart 2020, bekendgemaakt in de Bijlagen bij het Belgisch Staatsblad van 19 maart daarna, onder het nummer 20315574.
* Bij akte verleden voor zelfde notaris SLEDSENS op 5 augustus 2020, bekendgemaakt in de Bijlagen bij het Belgisch Staatsblad van 14 augustus daarna, onder het nummer 20337559.
* Bij akte verleden voor zelfde notaris SLEDSENS op 13 april 2021, bekendgemaakt in de Bijlagen bij het Belgisch Staatsblad van 16 april daarna, onder het nummer 21324349.
* Bij akte verleden voor zelfde notaris SLEDSENS op 13 juni 2022, bekendgemaakt in de bijlagen tot het Belgisch Staatsblad van 4 juli daarna onder nummer 220793018 werd het compartiment Global Opportunities ontbonden ingevolge grensoverschrijdende fusie.
* Bij akte verleden voor zelfde notaris SLEDSENS op 23 augustus 2022, tengevolge waarvan deze coördinatie werd opgesteld.

---

"C+F"
beleggingsvennootschap met veranderlijk kapitaal
Instelling voor collectieve belegging die voldoet aan de voorwaarden
van richtlijn 2009/65/EG
naamloze vennootschap
te 2020 Antwerpen, Jan Van Rijswijcklaan 184
Ondernemingsnummer 0463.755.911 - RPR Antwerpen (afdeling Antwerpen)

---

## VORM – BENAMING – ZETEL – DUUR – DOEL

### Artikel 1 : Vorm – Benaming - Hoedanigheid

Onderhavige vennootschap is een naamloze vennootschap onder het stelsel van een openbare beleggingsvennootschap met veranderlijk kapitaal (BEVEK) naar Belgisch recht, hierna "de Vennootschap" genoemd.

De Vennootschap heet "C + F".

Zij heeft gekozen voor de categorie "Beleggingen die voldoen aan de voorwaarden van Richtlijn 2009/65/EG" zoals bepaald in artikel 7 van de wet van 3 augustus 2012 betreffende instellingen voor collectieve belegging die voldoen aan de voorwaarden van Richtlijn 2009/65/EG en de instellingen voor belegging in schuldvorderingen.

### Artikel 2 : Maatschappelijke zetel

De zetel van de vennootschap is gevestigd in het Vlaams Gewest.

De Vennootschap kan op eenvoudige beslissing van de Raad van Bestuur dochteron-dernemingen of kantoren oprichten, zowel in België als in het buitenland.

Wanneer zich uitzonderlijke gebeurtenissen van politieke, economische of sociale aard voordoen of zich dreigen voor te doen, die de normale activiteit van de maatschappe-lijke zetel of de vlotte communicatie van deze zetel met het buitenland kunnen versto-ren, kan de zetel tijdelijk binnen België of naar het buitenland worden overgebracht tot deze uitzonderlijke omstandigheden volledig verdwenen zijn. Deze voorlopige maatre-gel heeft echter geen invloed op de nationaliteit van de Vennootschap, die, niettegen-staande de voorlopige overdracht van de zetel, Belgisch blijft.

De zetel van de vennootschap kan worden overgebracht naar elke locatie in België bij eenvoudig besluit van de raad van bestuur, die over alle bevoegdheden beschikt om de daaruit voortvloeiende wijziging van de statuten rechtsgeldig te laten opmaken, be-halve wanneer de verplaatsing van de zetel een wijziging van de taal van de statuten met zich meebrengt. In dat geval moet de verplaatsing van de zetel het voorwerp uit-maken van een buitengewone algemene vergadering.

### Artikel 3 : Duur

De Vennootschap is op 23 juni 1998 opgericht voor onbepaalde duur. Onverminderd de oorzaken voor ontbinding die door de wet zijn vastgelegd kan zij worden ontbonden bij besluit van de algemene vergadering van aandeelhouders die beraadslaagt als over een wijziging van de statuten.

### Artikel 4 : Voorwerp

De Vennootschap heeft als voorwerp : de collectieve belegging van kapitaal, ingezameld bij het publiek, in de categorie gedefinieerd in artikel 1 hiervoor, met inachtneming van de spreiding van de beleggingsrisico's.

In het algemeen kan zij alle maatregelen treffen en alle transacties verrichten die zij nuttig acht voor de verwezenlijking en voor de ontwikkeling van haar voorwerp, met inachtneming van de wettelijke bepalingen die voor de Vennootschap van kracht zijn.

## MAATSCHAPPELIJK KAPITAAL – AANDELEN – UITGIFTE – TERUGKOOP – OMZETTING – INVENTARISWAARDE

Artikel 5 : Maatschappelijk kapitaal

Het maatschappelijk kapitaal is op elk moment gelijk aan de waarde van het netto vermogen van de Vennootschap. Het mag nooit minder bedragen dan het wettelijk minimum.

Wijzigingen van het kapitaal vinden plaats zonder wijziging van de statuten. De formaliteiten voor de openbaarmaking van kapitaalverhogingen en kapitaalverminderingen van naamloze vennootschappen zijn niet van toepassing.

Het maatschappelijk kapitaal wordt vertegenwoordigd door verschillende aandelenklassen, die elk overeenstemmen met een afzonderlijk deel van "compartiment" van het vermogen van de Vennootschap.

Elk compartiment kan twee types aandelen omvatten (kapitalisatieaandelen en uitkeringsaandelen), zoals beschreven in artikel 6 hierna.

Elk compartiment kan verschillende aandelenklassen omvatten, conform de bepalingen van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG.

Binnen elk compartiment kan de raad van bestuur de volgende aandelenklassen creëren:

'C'-klasse of 'Classic'-klasse

De 'C' aandelen worden aangeboden aan fysieke en rechtspersonen. Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('C-Capitalisation') of distributieaandelen ('C-Distribution'), zoals bepaald in artikel 6 hieronder.

'K'-klasse

De 'K' aandelen worden aangeboden aan fysieke en rechtspersonen. Deze klasse verschilt van de 'C'-klasse door haar minimuminvesteringsbedrag, meer bepaald voor de gecumuleerde investeringen per deelnemer in alle compartimenten van C+F boven 1.000.000 euro. Ook de kostenstructuur kan afwijken van de 'C'-klasse. Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('K-Capitalisation') of distributieaandelen ('K-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten of indien er wijzigingen optreden in het minimuminvesteringsbedrag, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'D'-klasse

De 'D' aandelen zijn voorbehouden voor de beleggers aangebracht door Bank J. Van Breda & C°. Deze klasse verschilt van de 'C'-klasse door haar kostenstructuur, meer bepaald door toevoeging van een vergoeding Commercieel Beheer én door een verhandelingprovisie bij intrede van maximum 3 % (onderhandelbaar). Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('D-Capitalisation') of distributieaandelen ('D-Distribution'), zoals bepaald in artikel 6 hieronder. Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'I'-klasse

De 'I' aandelen zijn voorbehouden voor de institutionele of professionele beleggers, zoals bepaald in artikel 5 § 3 van de wet van 3 augustus 2012 betreffende instellingen voor collectieve belegging die voldoen aan de voorwaarden van Richtlijn 2009/65/EG en de instellingen voor belegging in schuldvorderingen, die voor eigen rekening handelen.

Deze klasse verschilt van de 'C'-klasse door haar kostenstructuur en, gezien de hoedanigheid van de belegger voor wie ze voorbehouden is, door een verminderde abonnementsbelasting.

Om te kunnen instappen in deze klasse moeten de inschrijvingen minstens vijfhonderdduizend euro (€ 500.000,00) per compartiment bedragen.

Het zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('I- Capitalisation') of distributieaandelen ('I-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van de 'C'-klasse.

'E'-klasse

De 'E' aandelen worden aangeboden aan fysieke en rechtspersonen. Deze klasse verschilt van de 'C'-klasse door haar minimuminvesteringsbedrag, meer bepaald voor de gecumuleerde investeringen per deelnemer in alle compartimenten van C+F boven 30.000.000 euro. Ook de kostenstructuur kan afwijken van de 'C'-klasse. Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('E-Capitalisation') of distributieaandelen ('E-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten of indien er wijzigingen optreden in het minimuminvesteringsbedrag, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'F'-klasse

De 'F' aandelen worden aangeboden aan fysieke en rechtspersonen. Deze klasse verschilt van de 'C'-klasse door haar minimuminvesteringsbedrag, meer bepaald voor investeringen boven 10.000.000 euro. Ook de kostenstructuur kan afwijken van de 'C'-klasse. Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('F-Capitalisation') of distributieaandelen ('F-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten of indien er wijzigingen optreden in het minimuminvesteringsbedrag, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'G'-klasse

De 'G' aandelen worden aangeboden aan fysieke en rechtspersonen. Deze klasse verschilt van de 'C'-klasse door haar minimuminvesteringsbedrag, meer bepaald voor investeringen boven 5.000.000 euro. Ook de kostenstructuur kan afwijken van de 'C'-klasse. Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('G-Capitalisation') of distributieaandelen ('G-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'H'-klasse

De 'H' aandelen zijn voorbehouden voor instellingen voor collectieve beleggingen beheerd door Capfi Delen Asset Management nv of beheerd door een andere onderneming die verbonden is met Capfi Delen Asset Management nv.

Deze klasse verschilt van de 'C'-klasse door haar kostenstructuur, meer bepaald door een verminderde abonnementsbelasting, én door een 0%-tarief van de vergoeding voor het financieel beheer van de beleggingsportefeuille.

Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('H-Capitalisation') of distributieaandelen ('H-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'P'-klasse

De 'P' aandelen zijn voorbehouden voor personeelsleden van de Management Company en de promotor(s).

Deze klasse verschilt van de 'C'-klasse door haar kostenstructuur, meer bepaald door een lagere vergoeding voor het financieel beheer van de beleggingsportefeuille.

Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('P-Capitalisation') of distributieaandelen ('P-Distribution'), zoals bepaald in artikel 6 hieronder.

Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

'J'-klasse

De 'J' aandelen zijn voorbehouden voor de beleggers aangebracht door verzekerings-maatschappijen. Deze klasse verschilt van de 'C'-klasse door haar kostenstructuur, meer bepaald door toevoeging van een vergoeding Commercieel Beheer, een ver-schillende vergoeding Financieel Beheer én een verhandelingprovisie bij intrede van maximum 3 % (onderhandelbaar). Dit zijn, tenzij het prospectus dit tegenspreekt en naargelang de wens van de belegger, kapitalisatieaandelen ('J-Capitalisation') of dis-tributieaandelen ('J-Distribution'), zoals bepaald in artikel 6 hieronder. Indien blijkt dat aandelen van deze klasse in het bezit zijn van andere personen dan toegelaten, zal de raad van bestuur overgaan tot een conversie, zonder kosten, van deze aandelen naar aandelen van een andere klasse.

Artikel 6 : Aandelen

De aandelen zijn op naam of in gedematerialiseerde vorm. Alle aandelen zijn volledig volgestort en zonder vermelding van nominale waarde. De raad van bestuur besluit per compartiment over de vorm van de aandelen van de Vennootschap.

Aandelen in gedematerialiseerde vorm

De aandelen in gedematerialiseerde vorm worden vertegenwoordigd door een inschrij-ving op een effectenrekening op naam van hun eigenaar of van hun houder bij een erkende rekeninghouder of een vereffeningsorganisme.

Aandelen op naam

De aandelen op naam die zijn uitgegeven door de Vennootschap zullen worden inge-schreven in het aandeelhoudersregister dat wordt bijgehouden door de Vennootschap of door één of meer personen die daartoe door de Vennootschap zijn benoemd.

Er worden op verzoek certificaten voor de inschrijving op naam afgeleverd aan de aandeelhouders.

De raad van bestuur kan besluiten om de aandelen te splitsen of te hergroeperen.

Een eventuele fractie van een aandeel verleent geen stemrecht, maar geeft recht op een overeenstemmende fractie van het netto vermogen dat is toe te rekenen aan de betrokken aandelenklasse.

De Vennootschap kan op elk moment en onbeperkt volledig volgestorte aanvullende aandelen uitgeven tegen een prijs die wordt bepaald in overeenstemming met artikel 7 hierna, zonder het voorkeurrecht aan de oude aandeelhouders voor te behouden.

De raad van bestuur kan twee types aandelen creëren: kapitalisatieaandelen en uitke-ringsaandelen. De uitkeringsaandelen geven recht op dividenden of op voorschotten op dividenden volgens de voorwaarden vastgelegd in artikel 25 hierna.

De kapitalisatieaandelen verlenen de houder ervan niet het recht om een dividend te innen. Het deel van het resultaat dat hem toekomt wordt gekapitaliseerd ten gunste van deze aandelen binnen het compartiment waarin ze zijn uitgegeven.

Elke betaalbaarstelling van een dividend of van een voorschot op dividend vertaalt zich in een automatische verhoging van de verhouding van de waarde van de kapitalisatie-aandelen tot die van de uitkeringsaandelen van het desbetreffende compartiment. Deze verhouding wordt in deze statuten "pariteit" genoemd. De initiële pariteit van elk van de compartimenten wordt vastgesteld door de raad van bestuur.

De raad van bestuur kan besluiten om aandelen van een bepaald type van één of meerdere compartimenten niet uit te geven in gedematerialiseerde vorm of op naam of de uitgifte ervan stop te zetten. Met inachtneming van de bepalingen van artikel 189 van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG zal hij na de initiële inschrijvingsperiode tevens nieuwe inschrijvingen in een gegeven compartiment kunnen weigeren.

Artikel 7 : Uitgifte

Onder voorbehoud van artikel 11 hierna zal op elke beursdag kunnen worden inge-schreven op de aandelen van elk compartiment bij de instellingen die zijn aangesteld door de raad van bestuur van de Vennootschap conform artikel 191van de wet van 3 augustus 2012 betreffende instellingen voor collectieve belegging die voldoen aan de voorwaarden van Richtlijn 2009/65/EG en de instellingen voor belegging in schuldvor-deringen.

De uitgifteprijs van de aandelen van elk compartiment is gebaseerd op hun netto-in-ventariswaarde, die bepaald is conform artikel 10 hierna en die in voorkomend geval verhoogd kan worden met:

1) een bedrag van maximum twee procent, bestemd om de kosten van de verwerving van de activa te dekken, dat wordt geïnd ten gunste van de bevek. Dit bedrag kan door de Vennootschap met maximum vijf procent verhoogd worden indien het passief, als gevolg van de toe- en uittredingen van de betrokken dag, naar boven varieert én een bepaalde drempel overschrijdt;

2) een verkoopprovisie van maximum vijf procent, geïnd ten gunste van de bedrijven die de verkoop van de aandelen verzorgen;

3) een vast bedrag (maximum honderd euro) dat bestemd is om de administratieve kosten te dekken, geïnd ten gunste van de bedrijven die de verkoop van de aandelen verzorgen.

Deze prijs wordt vermeerderd met de taksen, belastingen en zegelrechten die eventu-eel opeisbaar zijn uit hoofde van de inschrijving en de uitgifte.

De uitgifteprijs is verschuldigd binnen de termijn die is vastgelegd in het prospectus.

Artikel 8 : Terugkoop

Onder voorbehoud van artikel 11 hierna kunnen de aandeelhouders van elk comparti-ment op elke beursdag de terugkoop van hun aandelen aanvragen door zich te richten tot de instellingen die door de Vennootschap zijn aangesteld conform artikel 191 van de bovengenoemde wet betreffende instellingen voor collectieve belegging die vol-doen aan de voorwaarden van Richtlijn 2009/65/EG en de instellingen voor belegging in schuldvorderingen. De aanvraag moet vergezeld zijn van een door de erkende re-

keninghouder of door de vereffeningsinstelling opgesteld attest van de gedematerialiseerde aandelen of, in voorkomend geval, van de certificaten voor de inschrijving op naam die overeenstemmen met de aandelen waarvan de terugkoop wordt aangevraagd.

De terugkoopprijs stemt overeen met de netto-inventariswaarde van de aandelen van het betrokken compartiment, die in overeenstemming met artikel 10 hierna is vastgesteld en die in voorkomend geval kan worden verminderd met:

1) een bedrag van maximum vier procent, bestemd om de kosten van de liquidering van de activa te dekken, dat wordt geïnd ten gunste van de bevek. Dit bedrag kan door de Vennootschap met maximum vijf procent verhoogd worden indien het passief, als gevolg van de toe- en uittredingen van de betrokken dag, naar beneden varieert én een bepaalde drempel overschrijdt;

2) een vast bedrag (maximum honderd euro) dat bestemd is om de administratieve kosten te dekken, geïnd ten gunste van de bedrijven die de verkoop van de aandelen verzorgen;

3) een bedrag dat bestemd is om een uitstap binnen de maand na de instap te ontmoedigen. Dit bedrag zal ingehouden worden ten gunste van de bevek.

De raad van bestuur kan beslissen om dit bedrag niet in te houden of de hoger vermelde periode van een maand te wijzigen, op voorwaarde dat deze beslissing met concrete motieven omkleed wordt in het volgende jaarverslag.

Deze prijs zal verlaagd worden met de eventuele verschuldigde belastingen, heffingen en zegelrechten.

Deze prijs is verschuldigd binnen een maximale termijn van tien bankwerkdagen na de bepaling van de netto-inventariswaarde die van toepassing is op de terugkoop, op voorwaarde dat de effecten zijn ontvangen.

Noch de raad van bestuur noch de Bewaarder zullen aansprakelijk gesteld kunnen worden voor een wanbetaling die voortvloeit uit de toepassing van een eventuele deviezencontrole of andere omstandigheden die buiten hun wil plaatsvinden en die de overmaking in het buitenland van de opbrengst van de aandelenterugkoop zouden beperken of onmogelijk maken.

Artikel 9 : Omzetting

Voor zover de raad van bestuur niet besloten heeft na de initiële inschrijvingsperiode nieuwe inschrijvingen in één van de betrokken compartimenten te weigeren kunnen de aandeelhouders op elk moment de omzetting vragen van hun aandelen in andere aandelen van het betrokken compartiment of in aandelen van een andere klasse, indien die bestaat, op basis van hun respectieve netto-inventariswaarden die worden vastgesteld in overeenstemming met artikel 10 hierna.

In dat geval kan het volgende aangerekend worden:

1) een bedrag dat bestemd is om de kosten van de verwerving en de liquidering van de activa te dekken en dat wordt geïnd ten gunste van de bevek. Dit bedrag kan door de Vennootschap verhoogd worden indien het passief, als gevolg van de toe- en uittredingen van de betrokken dag, naar boven of naar beneden dan wel omgekeerd varieert, naar het geval, én een bepaalde drempel overschrijdt;

2) een verkoopprovisie, geïnd ten gunste van de bedrijven die de verkoop van de aandelen verzorgen, die het verschil dekt tussen de verkoopprovisie van het nieuwe compartiment en die van het vorige compartiment;

3) een vast bedrag dat bestemd is om de administratieve kosten te dekken, geïnd ten gunste van de bedrijven die de verkoop van de aandelen verzorgen.

Indien er door de omzetting aandelenfracties ontstaan, kunnen deze door de Vennootschap worden teruggekocht.

Artikel 10 : Netto-inventariswaarde

Voor de berekening van de uitgifte-, terugkoop- en omzettingsprijs wordt de netto-inventariswaarde van de aandelen van de Vennootschap voor elk van de compartimenten tenminste tweemaal per maand bepaald in de valuta die is vastgesteld door de raad van bestuur.

De frequentie van de berekening van de netto-inventariswaarde is vastgelegd in het prospectus. Een daling van de frequentie van deze berekening moet altijd ter goedkeuring voorgelegd worden aan de algemene vergadering van aandeelhouders.

De aanvragen tot inschrijving, omzetting en terugkoop die door de instelling belast met de financiële dienstverlening of door de distributeur worden ontvangen zullen worden verwerkt op basis van de eerste inventariswaarde die volgt op de datum van ontvangst van de aanvraag. Deze inventariswaarde zal worden berekend op basis van de laatstgekende slotkoersen.

De referentievaluta van de bevek is de euro. De referentievaluta's van de compartimenten worden vermeld in de documenten voor de verkoop.

De raad van bestuur kan besluiten om de netto-inventariswaarde uit te drukken in een andere valuta, op voorwaarde dat vooraf de toestemming van de Autoriteit voor Financiële Diensten en Markten wordt verkregen.

De waardering van de activa, passiva en resultatenrekening van de vennootschap, opgedeeld per compartiment, gebeurt volgens het Koninklijk Besluit van 10 november 2006 op de boekhouding, de jaarrekening en de periodieke verslagen van bepaalde openbare instellingen voor collectieve belegging met een veranderlijk aantal rechten van deelneming.

Netto-inventariswaarde

Elk aandeel van de Vennootschap dat wordt teruggekocht volgens artikel 8 hiervoor zal worden beschouwd als een uitgegeven en bestaand aandeel tot na de afsluiting van de waarderingsdag die van toepassing is op de terugkoop van dit aandeel en zal vervolgens, tot de prijs ervan is betaald, worden beschouwd als een verplichting van het betrokken compartiment van de Vennootschap.

De aandelen die door de Vennootschap moeten worden uitgegeven in overeenstemming met de ontvangen inschrijvingsaanvragen worden behandeld als zijnde uitgegeven vanaf de afsluiting van de waarderingsdag waarop hun uitgifteprijs is vastgesteld en deze prijs zal worden behandeld als een bedrag dat aan het betrokken compartiment van de Vennootschap is verschuldigd tot op het moment waarop het door het compartiment is ontvangen.

De netto-inventariswaarde van de aandelen van een compartiment wordt vastgesteld door op de waarderingsdag het netto vermogen van dit compartiment, samengesteld uit zijn activa minus zijn verplichtingen, te delen door het aantal aandelen in omloop van dit compartiment.

Indien er in een compartiment zowel uitkeringsaandelen als kapitalisatieaandelen bestaan, wordt de netto-inventariswaarde van de uitkeringsaandelen bepaald door het netto vermogen te delen door het aantal uitkeringsaandelen in omloop van dit compartiment, vermeerderd met de pariteit vermenigvuldigd met het aantal kapitalisatieaandelen in omloop. De netto-inventariswaarde van de kapitalisatieaandelen stemt overeen met de netto-inventariswaarde van de uitkeringsaandelen vermenigvuldigd met deze pariteit. Het netto vermogen van de Vennootschap is gelijk aan de som van de activa van alle compartimenten, omgerekend in euro op basis van de laatste bekende wisselkoersen.

De Vennootschap kan in haar prospectus een maximale factor vermelden om de netto-inventariswaarde naar boven bij te stellen als de positieve schommeling van het passief als gevolg van de toe- en uittredingen een bepaalde in het prospectus vermelde drempel overschrijdt, en om de netto-inventariswaarde naar onder bij te stellen als de negatieve schommeling van het passief als gevolg van de toe- en uittredingen een bepaalde drempel overschrijdt.

Artikel 11 : Opschorting van de berekening van de netto-inventariswaarde

De Vennootschap zal de berekening van de netto-inventariswaarde van de aandelen opschorten, evenals de uitgifte, de terugkoop en de omzetting van de aandelen vermeld in de artikelen 7 tot 9 hiervoor, in de gevallen die worden opgesomd in artikel 196 van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG.

De Vennootschap kan de terugkoop van de aandelen vermeld in artikel 8 hiervoor gedeeltelijk opschorten in de gevallen die worden opgesomd in artikel 198/1 van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG.

Bovendien kan de Vennootschap, conform artikel 195 van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG, op elk moment in uitzonderlijke omstandigheden de uitgifte van aandelen tijdelijk opschorten indien een dergelijke maatregel noodzakelijk is om de belangen van alle aandeelhouders of van de Vennootschap te beschermen. De inschrijvingen, terugkopen en omzettingen zullen uitgevoerd worden op basis van de eerste netto-inventariswaarde na de opschorting.

De Vennootschap kan één of meer inschrijvingen of een of meer terugkopen die het evenwicht van de Vennootschap zouden kunnen verstoren, weigeren of uitstellen.

De maatregelen die in dit artikel worden vermeld kunnen zich beperken tot één of meer compartimenten.

**RAAD VAN BESTUUR - CONTROLE**

Artikel 12 : Raad van bestuur

De Vennootschap wordt bestuurd door een raad van bestuur die is samengesteld uit minstens drie leden, al dan niet aandeelhouders.

De bestuurders worden door de algemene vergadering verkozen of herkozen voor een periode van ten hoogste zes jaar. De algemene vergadering van aandeelhouders kan bestuurders op elk moment, met of zonder reden, uit hun functie ontzetten.

Ingeval een mandaat van bestuurder vacant wordt als gevolg van overlijden, ontslag, afzetting of om een andere reden, kunnen de overige bestuurders bijeenkomen om bij meerderheid van stemmen een bestuurder te verkiezen die tijdelijk de vacante functie waarneemt tot de volgende vergadering van aandeelhouders.

Artikel 13 : Vergadering

De raad van bestuur kiest een Voorzitter onder zijn leden en kan onder zijn leden één of meerdere ondervoorzitters kiezen. Hij kan bovendien een secretaris aanstellen, die geen bestuurder hoeft te zijn. Deze stelt de notulen op van de vergaderingen van de raad van bestuur en van de algemene vergaderingen van aandeelhouders.

De raad van bestuur komt tenminste één keer per jaar samen na oproep door de Voorzitter of twee bestuurders, op de dag, het tijdstip en de plaats vermeld in het oproepingsbericht.

Een schriftelijke aankondiging van elke vergadering van de raad van bestuur wordt tenminste vierentwintig uur voor het voorziene uur van vergadering aan alle bestuurders gegeven, tenzij in geval van hoogdringendheid. In dat geval worden de aard en motieven van die hoogdringendheid in het oproepingsbericht vermeld.

De voorzitter van de raad van bestuur zit de algemene vergaderingen van en de vergaderingen van de raad van bestuur voor. In zijn afwezigheid duidt de algemene vergadering of de raad van bestuur bij meerderheid van stemmen een andere persoon aan om het voorzitterschap van deze vergaderingen waar te nemen.

Elke bestuurder kan zich laten vertegenwoordigen op de vergaderingen van de raad van bestuur door schriftelijk, per fax of via andere elektronische middelen een andere bestuurder als zijn volmachthebber aan te stellen.

De raad van bestuur kan slechts beraadslagen en handelen indien de helft van zijn leden aanwezig of vertegenwoordigd is. De beslissingen worden genomen bij meerderheid van stemmen van de aanwezige of vertegenwoordigde bestuurders. In geval van staking van stemmen is de stem van diegene die de vergadering voorzit doorslaggevend.

De besluiten van de raad van bestuur kunnen bij eenparig schriftelijk besluit van alle bestuurders worden genomen, met uitzondering van de besluiten waarvoor de statuten deze mogelijkheid uitsluiten. Deze besluiten vereisen de goedkeuring van alle bestuurders, die hun handtekening dienen aan te brengen op ofwel één enkel document ofwel meerdere exemplaren hiervan.

Een dergelijk besluit heeft dezelfde geldigheid en dezelfde uitwerking als was het genomen tijdens een vergadering van de raad van bestuur, op regelmatige wijze opgeroepen en gehouden op de datum van de recentste handtekening van de bestuurders op het hierbovenvermelde document.

Artikel 14 : Notulen

De notulen van de vergaderingen van de raad van bestuur worden getekend door de voorzitter of door de persoon die het voorzitterschap heeft waargenomen indien de voorzitter afwezig was.

De kopieën van de uittreksels uit de notulen die voor de rechtbank of elders bestemd zijn worden ondertekend door de Voorzitter of door de Secretaris of door twee bestuurders.

Artikel 15 : Bevoegdheden van de raad en beleggingsbeleid

De raad van bestuur heeft de bevoegdheid om alle noodzakelijke of nuttige handelingen te stellen voor de verwezenlijking van het maatschappelijk doel van de Vennootschap, met uitzondering van de bevoegdheden die door de wet of de statuten zijn voorbehouden aan de algemene vergadering.

De raad van bestuur heeft met name de bevoegdheid om het beleggingsbeleid van de nieuwe compartimenten te bepalen, met inachtneming van de beperkingen die worden voorgeschreven door de wetten en reglementen.

Om de operationele en administratieve kosten te verlagen en tegelijk een bredere spreiding van de beleggingen mogelijk te maken kan de raad van bestuur besluiten dat alle activa van de Vennootschap of een deel ervan gezamenlijk moeten worden beheerd met activa die toebehoren aan andere entiteiten of dat alle activa van de compartimenten of een deel ervan onderling gezamenlijk moeten worden beheerd.

In overeenstemming met artikel 52 en volgende van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG zullen de beleggingen van de vennootschap gebeuren in alle categorieën activa conform de beleggingsvoorwaarden en beleggingsbeperkingen voorzien in artikel 52 en volgende van dit KB.

Teneinde het bestuur verder te optimaliseren kan maximaal, binnen de normen uiteengezet in artikel 52 § 1, 8°, van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG, gebruik gemaakt worden van financiële derivaten (onder andere futures, opties en OTC-producten) en deviezen.

De vennootschap mag steeds alle roerende en onroerende goederen verwerven die rechtstreeks noodzakelijk zijn voor haar bedrijfsuitoefening. Wanneer de beleggingsvennootschap een vastgoed bezit of verwerft, moet het overeenstemmende gedeelte van het kapitaal steeds worden gehouden door haar oprichters of de door hen aangewezen personen.

De vennootschap kan, onder de door de wet gestelde voorwaarden, aan securities lending doen, zoals bepaald in artikel 143 van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG.

De beheermaatschappij is bevoegd om de stemrechten uit te oefenen die gekoppeld zijn aan de financiële instrumenten die in handen zijn van de Vennootschap. Zij zal dit in het uitsluitende belang van de aandeelhouders doen.

Artikel 16 : Vertegenwoordiging van de Vennootschap

==De Vennootschap gaat een rechtsgeldige verbintenis aan door de handtekening van twee bestuurders of van personen aan wie de raad van bestuur gepaste bevoegdheden heeft gedelegeerd.==

Artikel 17 : Dagelijks bestuur

De raad van bestuur kan het dagelijks bestuur van de Vennootschap en de vertegenwoordiging van de Vennootschap voor wat betreft dit bestuur delegeren aan één of meerdere gedelegeerd bestuurders, directeurs of gevolmachtigden, met bevoegdheid tot subdelegering.

De feitelijke leiding wordt toevertrouwd aan minimaal twee natuurlijke personen, behoudens indien en inzoverre de wet hierop een afwijking zou toestaan.

De raad zal de in de voorgaande alinea's vermelde personen te allen tijde kunnen afzetten.

De raad bepaalt de bevoegdheden en de vaste en/of variabele vergoedingen over de werkingskosten van de personen aan wie bepaalde taken zijn gedelegeerd.

Artikel 18 : Bewaarder

De Vennootschap zal een overeenkomst afsluiten met een kredietinstelling naar Belgisch recht voor het toevertrouwen voor onbepaalde duur van de functies van Bewaarder, conform de toepasselijke wetten en reglementen.

De vergoedingen die toekomen aan de Bewaarder zullen in het prospectus worden vastgelegd.

De Vennootschap kan de Bewaarder uit zijn functie ontzetten, op voorwaarde dat hij door een andere Bewaarder wordt vervangen.

Indien deze maatregel wordt genomen, moet er een kennisgeving worden gepubliceerd in twee Belgische kranten.

Artikel 19 : Financiële dienstverlening

De Vennootschap zal een kredietinstelling naar Belgisch recht, het Belgische filiaal van een kredietinstelling die erkend is in een andere lidstaat van de Europese Economische Ruimte of een beursvennootschap naar Belgisch recht benoemen voor de financiële dienstverlening, conform de toepasselijke wetten en reglementen.

De vergoedingen voor deze instelling zullen in het prospectus worden vastgelegd.

De Vennootschap zal deze instelling kunnen afzetten op voorwaarde dat zij vervangen wordt door een andere instelling. Indien deze maatregel wordt genomen, moet er een kennisgeving worden gepubliceerd in twee Belgische kranten.

Artikel 20.- Beheervennootschap

De vennootschap stelt, in overeenstemming met de wet en de van kracht zijnde reglementering, een beheervennootschap voor Instellingen voor Collectieve Belegging aan. Deze beheervennootschap voert de taken van administratief, financieel en commercieel beheer van de compartimenten van de vennootschap uit. De beheervennootschap zal voor zijn functies de kosten kunnen aanrekenen die contractueel tussen de vennootschap en de beheervennootschap bepaald zijn.

Voor het uitvoeren van haar taken ontvangt de Beheervennootschap maximaal een jaarlijkse vergoeding per compartiment van 2% voor het commercieel beheer, maxi-

mum 2% voor het financieel beheer en maximum 0,50% voor het administratief beheer.

De vennootschap kan de beheervennootschap herroepen op voorwaarde dat een andere beheervennootschap hen vervangt.

De naamloze vennootschap "Capfi Delen Asset Management", met maatschappelijke zetel te Jan Van Rijswijcklaan 178 - 2020 Antwerpen, is aangesteld als Beheervennootschap van Instellingen voor Collectieve Belegging van de vennootschap.

## ALGEMENE VERGADERING

### Artikel 21 : Oproeping voor de algemene vergadering

De gewone jaarlijkse algemene vergadering van aandeelhouders wordt gehouden op de maatschappelijke zetel van de Vennootschap of op elke andere plaats in België die in het oproepingsbericht wordt vermeld, op de derde dinsdag van de maand maart, om zestien uur. Indien deze dag geen bankwerkdag is, wordt de gewone algemene vergadering gehouden op de eerstvolgende bankwerkdag. De gewone algemene vergadering kan plaatsvinden in het buitenland indien de raad van bestuur soeverein beslist dat uitzonderlijke omstandigheden dit vereisen. Deze omstandigheden worden nader toegelicht in het oproepingsbericht.

Er kunnen ook vergaderingen plaatsvinden van de aandeelhouders van een bepaald compartiment.

Er kan een bijzondere algemene vergadering van de aandeelhouders van de Vennootschap of van een compartiment worden bijeengeroepen wanneer de belangen van de Vennootschap of van dit compartiment dit vereisen. Zij moet bijeengeroepen worden indien aandeelhouders, die samen een tiende vertegenwoordigen van het maatschappelijk kapitaal van de vennootschap of van het betrokken compartiment, dit vragen.

De aandeelhouders vergaderen na oproep door de raad van bestuur, na een oproepingsbericht waarin de agenda wordt vermeld.

De aandeelhouders worden opgeroepen op de door de wet voorgeschreven wijze.

Tenzij de wet anderszins bepaalt, moeten de aandeelhouders van gedematerialiseerde aandelen, om aan de algemene vergadering te kunnen deelnemen, een attest indienen dat is opgesteld door de erkende rekeninghouder of door het vereffeningsorganisme dat de onbeschikbaarheid tot de datum van de algemene vergadering vaststelt, van de gedematerialiseerde aandelen op de plaats die is vermeld in het oproepingsbericht, uiterlijk vijf volledige dagen voor de datum die voor de vergadering is vastgesteld. De houders van aandelen op naam moeten binnen dezelfde termijn de raad van bestuur schriftelijk (brief of volmacht) op de hoogte brengen van hun voornemen om de vergadering bij te wonen en het aantal effecten vermelden waarvoor zij aan de stemming wensen deel te nemen. Iedere aandeelhouder kan zich door een gevolmachtigde laten vertegenwoordigen op de algemene vergadering.

Telkens wanneer alle aandeelhouders aanwezig of vertegenwoordigd zijn en zij verklaren op de hoogte te zijn van de agenda waarover zij moeten beraadslagen, kan de algemene vergadering zonder voorafgaande oproeping plaatsvinden.

### Artikel 22 : Besluiten van de algemene vergadering

De algemene vergadering stemt en beraadslaagt volgens de voorschriften van het Wetboek van vennootschappen en verenigingen.

Behalve in de door de wet bepaalde gevallen worden de besluiten genomen bij meerderheid van stemmen, ongeacht het aantal effecten dat op de vergadering vertegenwoordigd is.

Alle aandeelhouders kunnen aan de vergaderingen deelnemen door schriftelijk of via andere telecommunicatiemiddelen een andere persoon als volmachthebber aan te stellen.

Onverminderd de bepalingen van artikel 27 hierna zullen de besluiten over een bepaald compartiment, tenzij de wet of deze statuten anders bepalen, worden genomen bij gewone meerderheid van stemmen van de aanwezige en stemmende aandeelhouders van dit compartiment.

## JAARREKENING – UITKERING – RESERVE

### Artikel 23 : Boekjaar

Het maatschappelijk boekjaar van de Vennootschap begint op één januari en eindigt op eenendertig december.

### Artikel 24 : Verslagen

Voor de gewone algemene vergadering kunnen de aandeelhouders op de maatschappelijke zetel van de Vennootschap het jaarverslag verkrijgen met de financiële informatie over elk van de compartimenten van de Vennootschap, de samenstelling en de evolutie van de activa en de geconsolideerde situatie van alle compartimenten, het beheerverslag dat bestemd is ter informatie van de aandeelhouders en het verslag van de commissaris.

In overeenstemming met artikel 101 van de wet van 3 augustus 2012 betreffende instellingen voor collectieve belegging die voldoen aan de voorwaarden van Richtlijn 2009/65/EG en de instellingen voor belegging in schuldvorderingen worden alle elementen van de vermogenstoestand van de Vennootschap onderworpen aan de controle door een erkende commissaris, benoemd en vervangen door de algemene vergadering van aandeelhouders, die tevens ook diens vergoeding vaststelt.

De goedkeuring van de jaarrekening en het verlenen van kwijting aan de bestuurders en de commissaris vinden voor elk compartiment afzonderlijk plaats, door de betrokken aandeelhouders.

### Artikel 25 : Uitkering

De gewone algemene vergadering van elk van de compartimenten bepaalt elk jaar, op voorstel van de raad van bestuur, het deel van het resultaat dat kan worden toegekend aan zijn compartiment in overeenstemming met de geldende wetgeving.

Het gedeelte van het resultaat dat toekomt aan de kapitalisatie-aandelen blijft altijd belegd in de vennootschap en wordt opgenomen in het gedeelte van de netto activa vertegenwoordigd door kapitalisatie-aandelen.

Behoudens wanneer de algemene vergadering hiervan afwijkt en behoudens wanneer dit in strijd is met de geldende boekhoudregels, zal de vennootschap aan de dividendgerechtigde aandelen jaarlijks een dividend uitkeren. Dat dividend kan hun aandeel in de netto-opbrengst uit de beleggingen, de gerealiseerde en/of niet-gerealiseerde

meerwaarden, verminderd met de gerealiseerde en/of niet-gerealiseerde minderwaarden omvatten.

De raad van bestuur kan beslissen een interimdividend uit te keren onder voorbehoud van de bepalingen van de wet.

De compartimenten die, in voorkomend geval, hun uitkeringen in overeenstemming brengen met artikel 203 W.I.B. 92 en alle latere bepalingen die daarmee verband houden, keren aan de uitkeringsaandelen jaarlijks tenminste 90 % van de door het compartiment geïnde inkomsten uit, na aftrek van de vergoedingen, provisies en kosten.

De raad van bestuur stelt de instellingen aan die belast zijn met de uitkeringen aan de aandeelhouders.

Artikel 26 : Kosten

De Vennootschap draagt de kosten in verband met haar oprichting, haar werking en haar vereffening. Deze kosten omvatten:

- de kosten van officiële akten;
- de kosten voor de algemene vergaderingen en raden van bestuur;
- de eventuele vergoedingen en bezoldigingen van de bestuurders conform de praktijken van de markt, die echter niet meer zullen bedragen dan een maximum van 0,05 procent;
- de eventuele vergoedingen van de effectieve leiders;
- de vergoeding voor de beheervennootschap van Instellingen voor Collectieve Beleggingen;
- de vergoeding voor de depothoudende bank;
- de kosten voor advies, het gebruik van een kwaliteitsmerk of een merk in het kader van het maatschappelijk doel en voor het beroep doen op een of meer bedrijven die een dergelijk kwaliteitsmerk afleveren;
- de bezoldigingen van de commissarissen conform de praktijken van de markt;
- de gerechtskosten en de kosten voor juridisch advies voor de Vennootschap;
- de bijdragen aan de toezichthoudende instanties van de landen waar de aandelen worden aangeboden;
- de kosten voor het drukken en het verdelen van de uitgifteprospectussen en de periodieke verslagen;
- de kosten voor het opstellen en vertalen van teksten;
- de kosten van de financiële dienst van haar aandelen en coupons (daarin begrepen de kosten van een eventuele omruiling of afstempeling van de deelbewijzen van ontbonden beleggingsinstellingen wier activa in de vennootschap werden ingebracht), de eventuele kosten van notering aan een beurs of de kosten voor de publicatie van de koers van haar aandelen;
- het beheer- en adviesloon;
- de honoraria van de commissarissen;
- de gerechtelijke kosten en de kosten voor juridisch advies;
- de bijdragen aan de controleautoriteiten van de landen waar haar aandelen worden aangeboden;
- de intresten en overige kosten in verband met leningen;

- de belastingen en kosten in verband met de bewegingen van activa van de Vennootschap;
- de overige eventuele heffingen en belastingen in verband met haar activiteit;
- de eventuele personeelskosten;
- alle andere uitgaven die in het belang van de aandeelhouders van de Vennootschap worden gedaan.

Elk compartiment draagt alle kosten en uitgaven die aan dat compartiment kunnen worden toegerekend. De kosten en uitgaven die niet aan een bepaald compartiment kunnen worden toegerekend worden gespreid over alle compartimenten. De raad van bestuur stelt de toewijzing vast van de kosten voor de oprichting, de beëindiging, de ontbinding, de fusie of de splitsing van één of meerdere compartimenten.

De raad van bestuur heeft de bevoegdheid om, mits goedkeuring door de Autoriteit voor Financiële Diensten en Markten, overeenkomstig artikel 58 § 3 van het Koninklijk Besluit van 12 november 2012 met betrekking tot de instellingen voor collectieve belegging die voldoen aan de voorwaarden van richtlijn 2009/65/EG, de in de artikelen 115 § 1, § 4 en de in de artikelen 117, 118 en 119 van voormeld Koninklijk Besluit genoemde vergoedingen, provisies en kosten te verhogen. De raad van bestuur zal instaan voor de publicatie van de kostenverhoging en voor de mededeling van het tijdstip van de inwerkingtreding ervan.

## HERSTRUCTURERING – ONTBINDING – VEREFFENING

### Artikel 27 : Herstructurering, ontbinding

De besluiten inzake de fusie, de splitsing of betrokken operaties en de besluiten inzake universele inbreng of inbreng van activiteitensector die de Vennootschap of een compartiment betreffen worden genomen door de algemene vergadering van aandeelhouders.

Als deze besluiten slechts een bepaald compartiment betreffen, is de algemene vergadering van aandeelhouders van het betrokken compartiment bevoegd.

Het besluit inzake de ontbinding van de Vennootschap of van een compartiment wordt genomen door de algemene vergadering van aandeelhouders. In geval van ontbinding van een compartiment is de algemene vergadering van aandeelhouders van het betrokken compartiment bevoegd.

In geval van ontbinding zullen één of meer vereffenaars tot de vereffening overgaan. Dat kunnen rechtspersonen of natuurlijke personen zijn. Zij zullen door de algemene vergadering van aandeelhouders worden aangesteld. Deze laatste bepaalt ook hun bevoegdheden en hun vergoeding.

Indien er een vervaldatum is vastgesteld in de statuten, zal het compartiment van rechtswege ontbonden worden op die datum en in overeenstemming met de bepalingen van artikel 5 van de statuten.

In dat geval zal de raad van bestuur een of meer vereffenaars benoemen.

Voor elk van de compartimenten wordt de opbrengst van de vereffening uitgekeerd aan de aandeelhouders evenredig met hun rechten, rekeninghoudend met de pariteit.

### Artikel 28 : Wijziging van de statuten

Deze statuten kunnen worden gewijzigd door een algemene vergadering van aandeel-houders onderworpen aan de voorwaarden voor quorum en meerderheid die door de wet zijn vereist. Elke wijziging van de statuten die betrekking heeft op een bepaald compartiment zal bovendien worden onderworpen aan dezelfde vereisten voor quo-rum en meerderheid in dit compartiment.

## ALGEMENE BEPALINGEN

### Artikel 29 : Algemene bepalingen

Voor alle punten die niet in deze statuten worden vermeld verwijzen de partijen naar en onderwerpen zij zich aan de bepalingen van het Wetboek van vennootschappen en verenigingen en aan de wet van 3 augustus 2012 betreffende instellingen voor collec-tieve belegging die voldoen aan de voorwaarden van Richtlijn 2009/65/EG en de in-stellingen voor belegging in schuldvorderingen, en de toepasselijke Koninklijke Beslui-ten. In geval van geschil zijn alleen de rechtbanken van het arrondissement Antwerpen bevoegd.

# Exhibit D

Digitally signed by FEDNOT
Date: March 6, 2025 08:24:52 CET

# [logo]
# FEDNOT

Copy from the legal entity's file of the text of the articles of association, applicable on the date of delivery, certified as true by the Royal Federation of Belgian Notaries.

Copy delivery date: 03/06/2025

Date of filing in the legal entity's file: 08/30/2022

Date of the authentic deed of origin for this version of the articles of association: 08/23/2022

<div style="border:1px solid black; padding:10px;">

"C+F"
investment company with variable capital
Collective investment institution that meets the conditions
of Directive 2009/65/EC
public limited company
at Jan Van Rijswijcklaan 184, 2020 Antwerp
Company number 0463.755.911 - RPR Antwerp (Antwerp division)

</div>

## COORDINATED ARTICLES OF ASSOCIATION

History
Establishment
Established according to deed executed by civil-law notary Guy SORGELOOS in Brussels on June 23,
1998, published in the annexes to the Belgian Official Gazette of July 17 thereafter, under
number 980717-708.
Amendments to the Articles of Association
[...]
*By deed executed before notary Marc SLEDSENS in Antwerp on April 29, 2015, published in the Annexes to the Belgian Official Gazette of May 19 thereafter, under number 15071324.
*By deed executed before the same notary SLEDSENS on December 8, 2017, published in the Annexes to the Belgian Official Gazette of January 25, 2018, under number 18018695.
*By deed executed before the same notary SLEDSENS on January 10, 2018, published in the Annexes to the Belgian Official Gazette of February 7 thereafter, under number 18027224.
*By deed executed before the same notary SLEDSENS on March 13, 2020, published in the Annexes to the Belgian Official Gazette of March 19 thereafter, under number 20315574.
*By deed executed before the same notary SLEDSENS on August 5, 2020, published in the Annexes to the Belgian Official Journal of August 14 thereafter, under number 20337559.
*By deed executed before the same notary SLEDSENS on April 13, 2021, published in the Annexes to the Belgian Official Journal of April 16 thereafter, under number 21324349.
*By deed executed before the same notary SLEDSENS on June 13, 2022, published in the Annexes to the Belgian Official Journal of July 4 thereafter under number 220793018, the Global Opportunities compartment was dissolved as a result of a cross-border merger.
*By deed executed before the same notary SLEDSENS on August 23, 2022, as a result of which this coordination was drawn up.

"C+F"
investment company with variable capital
Collective investment institution that meets the conditions
of Directive 2009/65/EC
public limited company
at Jan Van Rijswijcklaan 184, 2020 Antwerp
Company number 0463.755.911 - RPR Antwerp (Antwerp division)

## FORM - NAME - REGISTERED OFFICE - DURATION - PURPOSE

Article 1: Form - Name - Capacity
This company is a public limited company under the system of a public investment company with variable capital (BEVEK) under Belgian law, hereinafter referred to as "the Company".
The Company is called "C + F".
It has chosen the category "Investments that meet the conditions of Directive 2009/65/EC" as defined in Article 7 of the Act of August 3, 2012 concerning collective investment institutions that meet the conditions of Directive 2009/65/EC and the institutions for investment in debt claims.
Article 2: Registered office
The registered office of the Company is located in Flanders Region.
The Company may establish subsidiaries or offices, both in Belgium and abroad, by a simple decision of the Board of Directors.
When exceptional events of a political, economic, or social nature occur or threaten to occur, which may disrupt the normal activity of the registered office or its smooth communication with foreign countries, the registered office may be temporarily transferred within Belgium or abroad until these exceptional circumstances have completely disappeared. However, this provisional measure does not affect the nationality of the Company, which remains Belgian, notwithstanding the provisional transfer of the registered office.
The registered office of the company can be transferred to any location in Belgium by mere decision of the Board of Directors, which has all powers to have the resulting amendment of the articles of association legally drawn up, except when the relocation of the registered office entails a change in the language of the articles of association. In that case, the relocation of the registered office must be the subject of an extraordinary general meeting.
Article 3: Duration
The Company was established on June 23, 1998, for an indefinite term. Without prejudice to the causes for dissolution set forth by law, it may be dissolved by decision of the General Meeting of Shareholders that deliberates in the same manner as on an amendment to the Articles of Association.
Article 4: Object

The object of the Company is: the collective investment of capital, collected from the public, in the category defined in Article 1 above, with due observance of the spread of the investment risks.

In general, it can take all measures and perform all transactions it deems useful for the realization and for the development of its object, with due observance of the legal provisions that are in force for the Company.

## COMPANY CAPITAL - SHARES - ISSUE - REPURCHASE - CONVERSION - INVENTORY VALUE

Article 5: Social capital

The authorized capital is at all times equal to the value of the net assets of the Company. It should never be less than the legal minimum.

Changes to the capital take place without amendment of the articles of association. The formalities for the disclosure of capital increases and capital reductions of public limited liability companies shall not apply.

The authorized capital is represented by different share classes, each corresponding to a separate part or "sub-fund" of the Company's assets.

Each sub-fund may include two types of shares (capitalization shares and distribution shares), as described in Article 6 below.

Each sub-fund may include different share classes, in accordance with the provisions of the Royal Decree of November 12, 2012, regarding collective investment institutions that meet the conditions of Directive 2009/65/EC.

Within each sub-fund, the Board of Directors may create the following share classes:

'C' class or 'Classic' class

The 'C' shares are offered to natural persons and legal entities. Unless contradicted by the prospectus and according to the investor's preference, these are capitalization shares ('C-Capitalization') or distribution shares ('C-Distribution'), as defined in Article 6 below.

'K' class

The 'K' shares are offered to natural persons and legal entities. This class differs from the 'C' class due to its minimum investment amount, specifically for accumulated investments per participant in all C+F compartments above €1,000,000. The cost structure may also differ from the 'C' class. These are capitalization shares ("K-Capitalization") or distribution shares ("K-Distribution"), as defined in Article 6 below, unless the prospectus states otherwise and according to the investor's preference.

If it appears that shares of this class are held by unauthorized persons or if there are changes in the minimum investment amount, the Board of Directors will convert these shares to shares of another class, free of charge.

'D' class

The 'D' shares are reserved for investors introduced by Bank J. Van Breda & C°. This class differs from the 'C' class due to its cost structure, specifically by adding a Commercial Management fee and an entry fee of maximum 3% (negotiable). These are capitalization shares ("D-Capitalization") or distribution shares ("D-Distribution"), as defined in Article 6 below, unless the prospectus states otherwise and according to the investor's preference. If it appears that shares of this class are held by unauthorized persons, the Board of Directors will convert these shares to shares of another class, free of charge.

'I' class

'I' shares are reserved for institutional or professional investors, as stipulated in Article 5 § 3 of the Act of 3 August 2012 on institutions for collective investment meeting the conditions of Directive 2009/65/EC and institutions for investment in debt securities, acting on their own account.

This class differs from the 'C' class due to its cost structure and, given the capacity of the investor for whom it is reserved, due to a reduced subscription tax.

In order to be able to enter this class, the tenders must amount to at least five hundred thousand euros (€500,000.00) per compartment.

Unless the prospectus contradicts this and as the investor desires, it is capitalization shares ("I- Capitalization") or distribution shares ("I-Distribution"), as provided in Article 6 below.

If it appears that shares of this class are in the possession of persons other than permitted, the Executive Board shall proceed with a conversion, free of charge, of these shares into shares of the 'C' class.

'E' class

The 'E' shares are offered to physical and legal persons. This class differs from the 'C' class due to its minimum investment amount, more specifically for the accumulated investments per participant in all C+F compartments above EUR 30,000,000. The cost structure may also differ from the 'C' class. These are capitalization shares ("E-Capitalization") or distribution shares ("E-Distribution"), as provided in Article 6 below, unless the prospectus contradicts this and according to the investor's wish.

If it appears that shares of this class are in the possession of persons other than those authorized or if changes occur in the minimum investment amount, the Board of Directors will proceed with a conversion, free of charge, of these shares to shares of another class.

'F' Class

The 'F' shares are offered to natural and legal persons. This class differs from the 'C' class due to its minimum investment amount, specifically for investments above €10,000,000. The cost structure may also differ from the 'C' class. Unless the prospectus states otherwise and according to the investor's preference, these are capitalization shares ('F-Capitalization') or distribution shares ('F-Distribution'), as defined in Article 6 below.

If it appears that shares of this class are in the possession of persons other than those authorized or if changes occur in the minimum investment amount, the Board of Directors will proceed with a conversion, free of charge, of these shares to shares of another class.

'G' Class

The 'G' shares are offered to natural and legal persons. This class differs from the 'C' class due to its minimum investment amount, specifically for investments above €5,000,000. The cost structure may also differ from the 'C' class. These are capitalization shares ("G-Capitalization") or distribution shares ("G-Distribution"), as defined in Article 6 below, unless the prospectus states otherwise and according to the investor's preference.

If it appears that shares of this class are held by persons other than those permitted, the Board of Directors will proceed with a conversion, at no cost, of these shares to shares of another class.

'H' class

The 'H' shares are reserved for collective investment institutions managed by Capfi Delen Asset Management NV or managed by another company affiliated with Capfi Delen Asset Management NV.

This class differs from the 'C' class due to its cost structure, specifically due to a reduced subscription tax, and a 0% rate for the financial management fee of the investment portfolio.

These are capitalization shares ("H-Capitalization") or distribution shares ("H-Distribution"), as defined in Article 6 below, unless the prospectus states otherwise and according to the investor's preference.

If it appears that shares of this class are held by persons other than those permitted, the Board of Directors will proceed with a conversion, at no cost, of these shares to shares of another class.

'P' class

The 'P' shares are reserved for staff members of the Management Company and the promoter(s).

This class differs from the 'C' class due to its cost structure, specifically by a lower fee for the financial management of the investment portfolio.

These are capitalization shares ("P-Capitalization") or distribution shares ("P-Distribution"), as provided in Section 6 below, unless the prospectus states otherwise and according to the investor's preference.

If it appears that shares of this class are held by persons other than those permitted, the Board of Directors will proceed with a conversion, at no cost, of these shares to shares of another class.

'J' class

The 'J' shares are reserved for investors introduced by insurance companies. This class differs from the 'C' class due to its cost structure, specifically by adding a Commercial Management fee, a different Financial Management fee, and an entry fee of up to 3% (negotiable). These are capitalization shares ('J-Capitalization') or distribution shares ('J-Distribution') as defined in Article 6 below, unless the prospectus states otherwise and according to the investor's preference. If it appears that shares of this class are held by persons other than those permitted, the Board of Directors will proceed with a conversion, at no cost, of these shares to shares of another class.

Article 6: Shares

The shares are registered or in dematerialized form. All shares are fully paid-up and without indication of nominal value. The Board of Directors decides on the form of the Company's shares for each sub-fund.

Shares in dematerialized form

The shares in dematerialized form are represented by an entry in a securities account in the name of their owner or holder with a recognized account holder or a clearing organization.

Registered shares

The registered shares issued by the Company will be recorded in the shareholders' register maintained by the Company or by one or more persons appointed by the Company for that purpose.

Upon request, certificates for the registered shares will be issued to the shareholders.

The Board of Directors may decide to split or regroup the shares. A possible fraction of a share does not grant voting rights but entitles the holder to a corresponding fraction of the net assets attributable to the respective share class.

The Company may issue fully paid-up additional shares at any time and without limit at a price determined in accordance with Article 7 below, without reserving the pre-emptive right for existing shareholders. The Board of Directors can create two types of shares: capitalization shares and distribution shares.

The distribution shares entitle the holder to dividends or advances on dividends in accordance with the conditions set forth in Article 25 below.

The capitalization shares do not grant their holders the right to collect a dividend. The portion of the result that accrues to them is capitalized in favor of these shares within the sub-fund in which they were issued.

Any payment of a dividend or an advance on dividend results in an automatic increase in the ratio of the value of the capitalization shares to that of the distribution shares of the relevant sub-fund. This relationship is referred to in these Articles of Association as "parity". The initial parity of each of the sub-funds is determined by the Board of Directors.

The Board of Directors may decide not to issue shares of a certain type of one or more sub-funds in dematerialized form or by name, or to cease their issuance. Subject to the provisions of Article 189 of the Royal Decree of November 12, 2012, regarding collective investment institutions that meet the conditions of Directive 2009/65/EC, the Board of Directors may also refuse new subscriptions in a given sub-fund after the initial subscription period.

. <u>Article 7: Issue</u>

Subject to Article 11 below, shares of each sub-fund may be subscribed to on each trading day at the institutions appointed by the Company's Board of Directors in accordance with Article 191 of the Act of August 3, 2012 on collective investment institutions that meet the conditions of Directive 2009/65/EC and the institutions for investment in debt claims.

The issue price of the shares of each sub-fund is based on their net asset value, which is determined in accordance with Article 10 below and which can be increased, if applicable, by:

1)a maximum amount of two percent, intended to cover the costs of acquiring the assets, which is collected in favor of the SICAV. This amount may be increased by the Company by a maximum of five percent if the liabilities, as a result of the entries and exits on the day concerned, vary upwards and exceed a certain threshold;

2)a sales commission of a maximum of five percent, collected for the benefit of the companies that handle the sale of the shares;

3)a fixed amount (maximum one hundred euros) intended to cover the administrative costs, collected for the benefit of the companies that handle the sale of the shares.

This price is increased by any taxes, duties, and stamp duties that may be due as a result of the subscription and issuance.

The issue price is due within the time limit set out in the prospectus.

<u>Article 8: Repurchase</u>

Subject to Article 11 below, the shareholders of each sub-fund may request the repurchase of their shares on each stock exchange day by contacting the institutions appointed by the Company in accordance with Article 191 of the aforementioned Act on Collective Investment institutions that meet the conditions of Directive 2009/65/EC and the institutions for investment in debt claims. The application must be accompanied by a certificate drawn up by the authorized account holder or by the liquidating institution of the dematerialized shares or, where applicable, of the registered registration certificates corresponding to the shares from which the redemption is requested.

The redemption price shall correspond to the net asset value of the shares of the sub-fund concerned, determined in accordance with Article 10 below and which may be reduced, where appropriate, by:

1) an amount of maximum four percent, intended to cover the costs of the liquidation of the assets, which is collected in favor of the cover. This amount may be increased by a maximum of five percent by the Company if the liability, as a result of the entry and exit of the day concerned, varies downwards and exceeds a certain threshold;

2) a fixed amount (maximum one hundred euros) intended to cover the administrative costs collected in favor of the companies that take care of the sale of the shares;

3) an amount intended to discourage a disembarkation within one month of boarding. This amount will be withheld in favor of the cover.

The Board of Directors may decide not to withhold this amount or to change the aforementioned period of one month, provided that this decision is substantiated with concrete reasons in the next annual report.

This price will be reduced by any applicable taxes, levies, and stamp duties.

This price is due within a maximum period of ten bank business days after the determination of the net asset value applicable to the redemption, provided that the securities have been received.

Neither the Board of Directors nor the Custodian shall be liable for any default arising from the application of any foreign exchange control or other circumstances beyond their control that would limit or make impossible the transfer abroad of the proceeds from the share repurchase.

<u>Article 9: Conversion</u>

Insofar as the Board of Directors has not decided to refuse new subscriptions in one of the relevant sub-funds after the initial subscription period, shareholders may at any time request the conversion of their shares into other shares of the relevant sub-fund or into shares of another class, if any, based on their respective net asset values determined in accordance with Article 10 below.

In that case, the following can be charged:

1) an amount intended to cover the costs of the acquisition and liquidation of assets, which is collected in favor of the SICAV. This amount can be increased by the Company if the liabilities, as a result of the entries and exits on the day concerned, vary upward or downward or vice versa, as the case may be, and exceed a certain threshold;

2)a sales commission, collected in favor of the companies that handle the sale of the shares, which covers the difference between the sales commission of the new sub-fund and that of the previous sub-fund;

3)a fixed amount intended to cover the administrative costs, collected in favor of the companies handling the sale of the shares.

If share fractions arise as a result of the conversion, they can be repurchased by the Company.

Article 10: Net asset value

For the purpose of calculating the issue, redemption, and conversion price, the net asset value of the Company's shares for each of the sub-funds shall be determined at least twice a month in the currency determined by the Board of Directors.

The frequency of the net asset value calculation is set out in the prospectus. A decrease in the frequency of this calculation must always be submitted to the General Meeting of Shareholders for approval.

The applications for subscription, conversion, and redemption received by the institution responsible for financial services or by the distributor will be processed based on the first net asset value following the date of receipt of the application. This net asset value will be calculated based on the last known closing prices.

The reference currency of the cover is the euro. The reference currencies of the sub-funds shall be indicated in the documents for sale.

The Management Board may decide to express the net asset value in another currency, provided that prior authorization is obtained from the Financial Services and Markets Authority.

The valuation of the assets, liabilities and income statement of the company, divided per compartment, takes place in accordance with the Royal Decree of 10 November 2006 on the accounting, the financial statements and the periodic reports of certain public institutions for collective investment with a changeable number of units.

 Net inventory value

Any share of the Company that is repurchased pursuant to Article 8 above shall be considered as an issued and existing share until after the closing of the valuation day that applies to the repurchase of this share and shall thereafter be considered, until its price is paid, as an obligation of the relevant sub-fund of the Company.

The shares to be issued by the Company in accordance with the subscription requests received will be treated as issued as of the close of the valuation day on which their issue price is determined and this price will be treated as an amount due to the relevant sub-fund of the Company until the moment it is received by the sub-fund.

The net asset value of a sub-fund's shares is determined by dividing the net assets of that sub-fund, composed of its assets less its liabilities, by the number of shares in circulation of that sub-fund on the measurement day.

Where both benefit shares and capitalization shares exist in a sub-fund, the net asset value of the benefit shares shall be determined by dividing the net assets by the number of benefit shares in circulation of this sub-fund plus the parity multiplied by the number of capitalization shares in circulation. The net asset value of the capitalization shares corresponds to the net asset value of the distribution shares multiplied by this parity. The net assets of the Company are equal to the sum of the assets of all sub-funds, converted into euros based on the latest known exchange rates.

The Company may disclose in its prospectus a maximum factor to adjust the net asset value upwards if the positive fluctuation of liabilities as a result of subscriptions and redemptions exceeds a certain threshold stated in the prospectus, and to adjust the net asset value downwards if the negative fluctuation of liabilities as a result of subscriptions and redemptions exceeds a certain threshold.

Article 11: Suspension of the calculation of the net asset value

The Company will suspend the calculation of the net asset value of the shares, as well as the issue, redemption, and conversion of the shares mentioned in Articles 7 to 9 above, in the cases listed in Article 196 of the Royal Decree of November 12, 2012, regarding collective investment institutions that meet the conditions of Directive 2009/65/EC.

The Company may partially suspend the redemption of the shares mentioned in Article 8 above in the cases listed in Article 198/1 of the Royal Decree of November 12, 2012, regarding collective investment institutions that meet the conditions of Directive 2009/65/EC.

In addition, in accordance with Article 195 of the Royal Decree of November 12, 2012, regarding collective investment institutions that meet the conditions of Directive 2009/65/EC, the Company may temporarily suspend the issue of shares at any time in exceptional circumstances if such a measure is necessary to protect the interests of all shareholders or of the Company. The subscriptions, redemptions, and conversions will be executed based on the first net asset value after the suspension.

The Company may refuse or postpone one or more subscriptions or one or more redemptions that could disrupt the Company's balance.

The measures mentioned in this Article may be limited to one or more sub-funds.

## **BOARD OF DIRECTORS - CONTROL**

Article 12: Board of Directors

The Company is managed by a board of directors composed of at least three members, who may or may not be shareholders.

The directors are elected or re-elected by the General Meeting for a term of no more than six years. The General Meeting of Shareholders may remove directors from their position at any time, with or without cause. In the event that a director's position becomes vacant due to death, resignation, removal, or any other reason, the remaining directors may meet to elect by majority vote a director who will temporarily fill the vacant position until the next shareholders' meeting.

Article 13: Meeting

The Board of Directors elects a Chairman from among its members and may elect one or more Vice-Chairmen from among its members. He can also appoint a secretary, who does not have to be a director. The secretary shall draw up the minutes of the meetings of the Board of Directors and of the general meetings of shareholders.

The Board of Directors shall meet at least once a year after being called by the Chairman or two directors, on the day, time, and place stated in the meeting notice.

A written announcement of each meeting of the Board of Directors is given to all directors at least twenty-four hours before the scheduled meeting time, except in cases of urgency. In that case, the nature and reasons for the urgency are stated in the meeting notice.

The Chairperson of the Board of Directors shall chair the general meetings and the meetings of the Board of Directors. In their absence, the general meeting or the Board of Directors shall appoint another person by majority vote to chair these meetings.

Each director may be represented at the meetings of the Board of Directors by appointing another director as their proxy in writing, by fax, or by other electronic means.

The Board of Directors can only deliberate and act if half of its members are present or represented. Decisions are made by majority vote of the present or represented directors. In the event of a tie vote, the vote of the person chairing the meeting is decisive.

The decisions of the Board of Directors may be made by unanimous written decision of all directors, with the exception of those for which the Articles of Association exclude this possibility. These decisions require the approval of all directors, who must sign either a single document or multiple copies thereof.

Such a decision has the same validity and effect as if it had been taken at a meeting of the Board of Directors, regularly convened and held on the date of the most recent signature of the directors on the above-mentioned document.

Article 14: Minutes

The minutes of the meetings of the Board of Directors are signed by the Chairperson or by the person who chaired the meeting if the Chairperson was absent.

The copies of or extracts from the minutes intended for the court or elsewhere are signed by the Chairperson or by the Secretary or by two directors.

Article 15: Board powers and investment policy

The Executive Board has the authority to perform all necessary or useful actions for the realization of the Company's corporate objective, with the exception of the authorities reserved by law or the articles of association to the General Meeting.

In particular, the Executive Board has the power to determine the investment policy of the new sub-funds, taking into account the restrictions prescribed by the laws and regulations.

In order to reduce operational and administrative costs while allowing for a broader spread of investments, the Board may decide that all or part of the Company's assets should be managed jointly with assets belonging to other entities or that all or part of the assets of the sub-funds should be managed jointly.

In accordance with Article 52 et seq. of the Royal Decree of 12 November 2012 with regard to the collective investment institutions that meet the conditions of Directive 2009/65/EC, the investments of the company will take place in all categories of assets in accordance with the investment conditions and investment restrictions provided for in Article 52 et seq. of this Royal Decree.

 In order to further optimize the board, a maximum of, within the standards set out in Article 52 § 1, 8°, of the Royal Decree of 12 November 2012 with regard to the collective investment institutions that meet the conditions of Directive 2009/65/EC, financial derivatives (including futures, options and OTC products) and foreign exchange can be used.

The company may at all times acquire all movable and immovable property that is directly necessary for its operations. When the investment company owns or acquires a property, the corresponding part of the capital must always be held by its founders or the persons they designate.

The company may, under the conditions set forth by law, lend securities, as determined in article 143 of the Royal Decree of 12 November 2012 with regard to the collective investment institutions that meet the conditions of Directive 2009/65/EC.

The management company is authorized to exercise the voting rights associated with the financial instruments held by the Company. It will do so in the exclusive interest of the shareholders.

Article 16: Representation of the Company

==The Company enters into a legally valid commitment by the signature of two directors or of persons to whom the Board of Directors has delegated appropriate authorities.==

## Article 17: Daily Management

The Board of Directors may delegate the day-to-day management of the Company and the representation of the Company with regard to this management to one or more managing directors, directors or proxies, with authority to sub-delegate.

The actual management is entrusted to at least two natural persons, except if and to the extent that the law would permit a deviation from this.

The Board may dismiss the persons referred to in the preceding paragraphs at any time.

The Board shall determine the powers and fixed and/or variable fees on the operating costs of the persons to whom certain tasks have been delegated.

## Article 18: Custodian

The Company shall conclude an agreement with a credit institution under Belgian law for the entrustment of the functions of Custodian for an indefinite period, in accordance with applicable laws and regulations.

The fees accruing to the Custodian shall be specified in the prospectus.

The Company may remove the Custodian from their position, provided that they are replaced by another Custodian.

If this measure is taken, a notification must be published in two Belgian newspapers.

## Article 19: Financial Services

The Company shall appoint a credit institution under Belgian law, the Belgian branch of a credit institution recognized in another Member State of the European Economic Area, or a brokerage firm under Belgian law for financial services, in accordance with applicable laws and regulations.

The fees for this institution shall be specified in the prospectus.

The Company may dismiss this institution provided that it is replaced by another institution. If this measure is taken, a notification must be published in two Belgian newspapers.

## Article 20.- Management Company

In accordance with the law and regulations in force, the company appoints a management company of Collective Investment Institutions. This management company performs the administrative, financial, and commercial management tasks of the company's sub-funds. The management company will be able to charge the costs for its functions that are contractually determined between the company and the management company.

For the performance of its tasks, the Management Company receives a maximum annual fee per sub-fund of 2% for commercial management, 2% for financial management, and 0.50% for administrative management.

The company may revoke the management company provided that another management company replaces it.

The public limited company "Capfi Delen Asset Management", with its registered office at Jan Van Rijswijcklaan 178 - 2020 Antwerp, has been appointed as the Management Company of Collective Investment Institutions of the company.

## GENERAL MEETING

Article 21: Notice of the General Meeting

The ordinary annual general meeting of shareholders will be held at the registered office of the Company or at any other location in Belgium specified in the notice of meeting, on the third Tuesday of March, at 4:00 PM. If this day is not a bank business day, the ordinary general meeting will be held on the next bank business day. The ordinary general meeting may take place abroad if the Board of Directors independently decides that exceptional circumstances require it. These circumstances are explained in more detail in the notice of meeting.

Meetings of shareholders of a particular sub-fund may also take place.

A special general meeting of the shareholders of the Company or of a sub-fund may be convened if the interests of the Company or of this sub-fund so require. It must be convened if shareholders who together represent one-tenth of the company's capital or of the sub-fund concerned request it. The shareholders meet after being called by the Board of Directors, following a notice of meeting that states the agenda.

The shareholders are summoned in the manner prescribed by law.

Unless otherwise provided by law, shareholders of dematerialized shares must submit a certificate to participate in the general meeting. This certificate, drafted by the accredited account holder or clearing body, confirms the unavailability of the dematerialized shares until the date of the general meeting. It must be submitted at the location specified in the meeting notice, no later than five full days before the scheduled meeting date. Within the same timeframe, holders of registered shares must inform the Board of Directors in writing (by letter or proxy) of their intention to attend the meeting. They must also state the number of securities for which they wish to participate in the vote. Each shareholder may be represented by a proxy at the General Meeting.

Whenever all shareholders are present or represented and they declare to be aware of the agenda on which they must deliberate, the General Meeting may take place without prior notice.

Article 22: Decisions of the General Meeting

The General Meeting votes and deliberates in accordance with the requirements of the Belgian Companies and Associations Code.

Except in cases determined by law, decisions are made by majority vote, regardless of the number of securities represented at the meeting.

All shareholders may participate in the meetings by appointing another person as proxy in writing or via other telecommunication means.

Without prejudice to the provisions of Article 27 below, decisions about a specific sub-fund shall be made by a simple majority of the votes of the shareholders present and voting in this sub-fund, unless the law or these articles of association provide otherwise.

## ANNUAL ACCOUNTS - DISTRIBUTION - RESERVE

Article 23: Financial Year

The Company's fiscal year begins on January 1 and ends on December 31.

Article 24: Reports

Before the ordinary general meeting, shareholders can obtain the annual report at the Company's registered office. This report includes financial information about each of the Company's sub-funds, the composition and evolution of assets, the consolidated situation of all sub-funds, the management report for shareholders' information, and the auditor's report.

In accordance with Article 101 of the Act of August 3, 2012, on collective investment institutions that meet the conditions of Directive 2009/65/EC and institutions for investment in debt claims, all elements of the Company's assets are subject to audit by a certified auditor. This auditor is appointed and replaced by the General Meeting of Shareholders, which also determines their remuneration.

The approval of the annual accounts and the discharge of the directors and the statutory auditor take place separately for each sub-fund by the concerned shareholders.

Article 25: Benefit

Each year, the ordinary general meeting of each sub-fund shall, on a proposal from the Board of Directors, determine the portion of the result that can be attributed to its sub-fund in accordance with the applicable legislation.

The portion of the result that accrues to the capitalization shares always remains invested in the company and is included in the part of the net assets represented by capitalization shares.

Unless the General Meeting deviates from this and unless it contradicts the applicable accounting rules, the company will pay an annual dividend to the dividend-eligible shares. That dividend may include their share in the net proceeds from the investments, the realized and/or unrealized capital gains, minus the realized and/or unrealized capital losses.

The Board of Directors may decide to pay an interim dividend subject to the provisions of the law.

The sub-funds that, where applicable, align their distributions with Article 203 of the W.I.B. 92 and all subsequent related provisions, shall pay to the distribution shares at least 90% of the income collected by the sub-fund each year, after deduction of fees, commissions, and costs. The Board of Directors appoints the institutions responsible for distributions to the shareholders.

Article 26: Costs

The Company bears the costs associated with its establishment, operation, and liquidation. These costs include:

-costs of official deeds;

-costs for general meetings and board of directors meetings;

-any fees and remuneration of directors in accordance with market practices, which will not exceed a maximum of 0.05 percent;

-any compensation for effective leaders;

-fees for the management company of Collective Investment Institutions;

-fees for the custodian bank;

-costs for advice, use of a quality mark or trademark within the scope of the company's purpose, and for engaging one or more companies that issue such quality marks;

-remuneration of auditors in accordance with market practices;

-the court costs and legal advice costs for the Company;

-contributions to the supervisory authorities of the countries where the shares are offered;

-the costs of printing and distributing the issue prospectuses and periodic reports;

- the costs of preparing and translating texts;

-the costs of financial services for its shares and coupons (including the costs of a possible exchange or stamping of shares of dissolved collective investment schemes whose assets were contributed to the company), the possible costs of stock exchange listing, or the costs for publishing the price of its shares;

- the management and consulting fee;

-the fees of the Supervisory Board members;

-the legal costs and legal advice costs;

-contributions to the regulatory authorities of the countries where its shares are offered;

- the interest and other costs associated with loans;

- the taxes and costs in connection with the movements of assets of the Company;
- the other possible levies and taxes in connection with its activity;
- any personnel costs;
- all other expenses incurred in the interest of the shareholders of the Company.

Each compartment shall bear all costs and expenses attributable to that compartment. The costs and expenditure that cannot be allocated to a given compartment shall be spread across all compartments. The Management Board shall determine the allocation of the costs for the establishment, termination, dissolution, merger or division of one or more sub-funds.

The Executive Board has the authority, subject to approval by the Financial Services and Markets Authority, to increase the fees, commissions and costs referred to in Articles 115 § 1, § 4 and the provisions of Articles 117, 118 and 119 of the aforementioned Royal Decree in accordance with Article 58 § 3 of the Royal Decree of 12 November 2012 with regard to the collective investment institutions that meet the conditions of Directive 2009/65/EC. The Executive Board will be responsible for the publication of the cost increase and for the communication of the time of its entry into force.

## RESTRUCTURING - DISSOLUTION – LIQUIDATION

Article 27: Restructuring, Dissolution

The decisions regarding merger, division, or related operations, and decisions regarding universal contribution or contribution of activity sector concerning the Company or a sub-fund shall be made by the General Meeting of Shareholders.

If these decisions concern only a specific sub-fund, the general meeting of shareholders of the concerned sub-fund is authorized.

The resolution regarding the dissolution of the Company or of a sub-fund is made by the General Meeting of Shareholders. In the event of dissolution of a sub-fund, the general meeting of shareholders of the concerned sub-fund is authorized.

In the event of dissolution, one or more liquidators shall proceed with the liquidation. These can be legal entities or natural persons. They will be appointed by the General Meeting of Shareholders. The latter also determines their powers and their remuneration.

If an expiration date is established in the articles of association, the sub-fund will be dissolved by operation of law on that date and in accordance with the provisions of Article 5 of the articles of association.

In that case, the Executive Board will appoint one or more liquidators.

For each of the sub-funds, the proceeds of the liquidation shall be distributed to the shareholders in proportion to their rights, taking into account parity.

Article 28: Amendment of the Articles of Association

These articles of association may be amended by a general meeting of shareholders subject to the conditions for quorum and majority required by law. In addition, any amendment to the articles of association relating to a particular compartment will be subject to the same quorum and majority requirements in this compartment.

## **GENERAL PROVISIONS**

<u>Article 29: General provisions</u>
For all points not mentioned in these Articles of Association, the parties refer to and submit to the provisions of the Companies and Associations Code and to the Act of August 3, 2012, on collective investment institutions that meet the conditions of Directive 2009/65/EC and the institutions for investment in debt claims, and the applicable Royal Decrees. In case of dispute, only the courts of the Antwerp district have jurisdiction.



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**Coordinated Articles of Association of C+F**" is, to the best of my knowledge and belief, a true and accurate translation from Dutch into English.

_____
Jacqueline Yorke

Sworn to before me this
March 10, 2025

_____
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

_____
Stamp, Notary Public

# Exhibit E

---

C+F n.v. Bevek
Jan Van Rijswijcklaan  184  te 2020 Antwerpen
N.N. 0 463.755.911

---

NOTULEN VAN DE VERGADERING GEHOUDEN OP DINSDAG 19 maart 2024 om 16u00.

Op heden 19 maart 2024 om 16.00 uur in de zetel van de vennootschap wordt gehouden de jaarvergadering van de aandeelhouders van de vennootschap onder leiding en toezicht van het BUREAU dat als volgt is samengesteld :

-     Voorzitter           _Bernard Woronoff_____

-     Secretaris           _Chris Bruynseels ___

-     Stemopnemers     _Jens Van Nieuwenborgh__

                             _Gregory Swolfs_____

LIJST VAN DEELNEMERS
De bijgevoegde aanwezigheidslijst bevat de identiteit van de aanwezige bestuurders, aandeelhouders, hun vertegenwoordigers, het aantal aandelen en het aantal aan deze aandelen verbonden stemmen waarmee zij aan de stemming zullen deelnemen. De leden van het bureau gaan over tot de ondertekening van de bijgevoegde aanwezigheidslijst en de volmachten.

INLEIDENDE UITEENZETTING
De Voorzitter leidt de vergadering in en betoogt dat de vergadering is bijeengeroepen met volgende AGENDA waarvan de tekst letterlijk is opgenomen in de oproepingen.

AGENDA
- Verslag van de Raad van Bestuur en van de commissaris betreffende de jaarrekening over het boekjaar 2023. Goedkeuring van de jaarrekening afgesloten op 31 december 2023.
  Voorstel van besluit: De vergadering besluit de jaarrekening per 31 december 2023 met inbegrip van de resultaatbestemming goed te keuren.
- Kwijting aan de bestuurders en aan de commissaris.
  Voorstel van besluit: De vergadering besluit over het door hen uitgeoefende mandaat tijdens het afgelopen boekjaar kwijting te verlenen aan de bestuurders en commissaris.
- Herbenoeming bestuurders.
  Voorstel van besluit: De vergadering besluit de bestuurders Paul De Winter, Michel Buysschaert, Bernard Woronoff, Jens Van Nieuwenborgh en Anne Duchateau te herbenoemen als bestuurders voor een periode van 3 jaar tot aan de gewone algemene vergadering van 2027. De heren Bernard Woronoff en Jens Van Nieuwenborgh worden voor dezelfde periode aangesteld als effectieve leiders. Mevrouw Anne Duchateau is onafhankelijk bestuurder en haar functie is bezoldigd en bedraagt 1.800,00 € per compartiment. Alle andere functies zijn onbezoldigd.
- Rondvraag.

OPROEPING
De aandeelhouders werden tot deze vergadering opgeroepen door publicatie op 1 maart 2024 van de bovenstaande agenda in het Belgisch Staatsblad en in De Tijd, alsook via publicatie op de website www.beama.be .

QUORUMVEREISTEN EN LEGITIMATIE VAN DE VERGADERING
De Voorzitter stelt vast dat het kapitaal van de vennootschap op heden vertegenwoordigd is door aandelen zonder nominale waarde, met name

1

| COMPARTIMENT | KLASSE | KAP/DIS | # AANDELEN |
|---|---|---|---|
| C+F EUROPEAN LARGE CAPS | C | KAP | 172.851,1672 |
| C+F EUROPEAN LARGE CAPS | C | DIS | 556.608,4291 |
| C+F EUROPEAN LARGE CAPS | D | KAP | 1.556,4838 |
| C+F EUROPEAN LARGE CAPS | D | DIS | 51.237,6559 |
| C+F EUROPEAN LARGE CAPS | I | KAP | 12.200,0000 |
| C+F EUROPEAN LARGE CAPS | I | DIS | 151.340,2152 |
| C+F EUROPEAN LARGE CAPS | J | KAP | 41.815,1662 |
| C+F EUROPEAN LARGE CAPS | P | DIS | 1.913,1248 |
| C+F BALANCED DYNAMIC | C | KAP | 1.838,9734 |
| C+F BALANCED DYNAMIC | C | DIS | 9,9113 |
| C+F GLOBAL LINE | I | KAP | 532.406,4847 |
| C+F GLOBAL ROUTE | I | KAP | 809.400,0500 |
| C+F IMMO RENTE | C | KAP | 117.960,0515 |
| C+F IMMO RENTE | C | DIS | 236.324,3775 |
| C+F IMMO RENTE | D | KAP | 98.302,9056 |
| C+F IMMO RENTE | D | DIS | 80.519,9154 |
| C+F IMMO RENTE | J | KAP | 210.323,7252 |
| C+F IMMO RENTE | H | KAP | 29.000,0000 |
| C+F IMMO RENTE | P | KAP | 620,7293 |
| C+F IMMO RENTE | P | DIS | 5.059,9028 |
| C+F WORLD EQUITY | C | KAP | 12.734,0000 |
| C+F WORLD EQUITY | C | DIS | 6.986.294,2205 |
| C+F WORLD EQUITY | I | KAP | 8.569,5961 |
| C+F WORLD EQUITY | I | DIS | 4.514.457,3300 |
| C+F WORLD EQUITY | D | KAP | 198.235,5113 |
| C+F WORLD EQUITY | D | DIS | 4.027.325,9568 |
| C+F WORLD EQUITY | H | KAP | 21.344.089,1800 |
| C+F WORLD EQUITY | P | KAP | 30.998,5756 |
| C+F WORLD EQUITY | P | DIS | 71.968,9268 |
| C+F WORLD EQUITY | K | DIS | 9.160.124,0637 |
| C+F VERY DEFENSIVE | C | KAP | 0,0000 |
| C+F VERY DEFENSIVE | C | DIS | 7.569.372,2040 |
| C+F VERY DEFENSIVE | I | DIS | 657.727,9051 |
| **TOTAAL C+F** | | | **57.697.245,0597** |

De Voorzitter stelt vervolgens vast dat uit de bijgevoegde aanwezigheidslijst blijkt dat er:



- voor BALANCED DYNAMIC          _1_ aandeelhouder met _1_ aandelen aanwezig is
- voor EUROPEAN LARGE CAPS       _1_ aandeelhouder met _1_ aandelen aanwezig is
- voor GLOBAL LINE               _0_ aandeelhouder met _0_ aandelen aanwezig is
- voor GLOBAL ROUTE              _0_ aandeelhouder met _0_ aandelen aanwezig is
- voor IMMO RENTE                _1_ aandeelhouder met _1_ aandelen aanwezig is
- voor WORLD EQUITIES            _1_ aandeelhouder met _1_ aandelen aanwezig is
- voor VERY LOW                  _0_ aandeelhouder met _0_ aandelen aanwezig is

Er zijn 5 bestuurders, waarvan er _1_ op huidige vergadering aanwezig zijn.

De Voorzitter herinnert eraan dat, voor wat de beraadslagingen en stemmingen per compartiment betreft, elk aandeel recht geeft op één stem. Voor wat daarentegen de beraadslagingen en stemmingen betreft die betrekking hebben op de vennootschap in zijn geheel, gelden de in de bijgevoegde aanwezigheidslijst vermelde stemrechten. Overeenkomstig de wettelijke voorschriften terzake, verschillen – enkel voor wat de stemmingen betreft die betrekking hebben op de vennootschap in zijn geheel – de per aandeel toegekende stemrechten in functie van de waarde van de aandelen, afgerond naar de eenheid (naargelang het compartiment waartoe een aandeel behoort, kan het aantal aan dit aandeel toegekende stemrechten dus verschillen).

Tenslotte wijst de Voorzitter erop dat de voorstellen op de agenda moeten worden aangenomen bij gewone meerderheid van de uitgebrachte stemmen.

De vergadering erkent zich na de voorgaande uiteenzetting, regelmatig samengesteld en verklaart zich bevoegd om met betrekking tot de hiervoor vastgestelde agendapunten besluiten te treffen.

2

RESOLUTIES VOOR ALLE COMPARTIMENTEN SAMEN:

1. De Voorzitter geeft lezing van het verslag van de raad van bestuur, van het verslag van de commissaris en van de jaarrekening over het boekjaar 2023. De bestuurders geven antwoord op de vragen die hun door de aandeelhouders gesteld worden. De vergadering formuleert geen opmerkingen over deze verslagen en de jaarrekening en keurt ze goed. De vergadering besluit met unanimiteit om de volgende dividenden uit te keren op 28 maart 2024:

| C+F | Klasse | bruto | netto | munt | ISIN | Record date | Ex date | Pay date |
|---|---|---|---|---|---|---|---|---|
| European Large Caps | C | 13,4000 | 9,3800 | EUR | BE0168477850 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| European Large Caps | I | 14,7000 | 10,2900 | EUR | BE0947176682 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| European Large Caps | D | 10,8000 | 7,5600 | EUR | BE0948324521 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| European Large Caps | P | 2,6500 | 1,8550 | EUR | BE6300508676 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| World Equities | C | 0,8500 | 0,5950 | EUR | BE6295856718 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| World Equities | I | 1,9500 | 1,3650 | EUR | BE6295862773 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| World Equities | D | 0,5500 | 0,3850 | EUR | BE6295858730 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| World Equities | P | 2,0000 | 1,4000 | EUR | BE6300519780 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| World Equities | K | 1,7000 | 1,1900 | EUR | BE6300522818 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| Immo Rente | C | 1,0000 | 0,7000 | EUR | BE6251905616 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| Immo Rente | D | 1,0000 | 0,7000 | EUR | BE6336037948 | 25/03/2024 | 26/03/2024 | 28/03/2024 |
| Immo Rente | P | 1,0000 | 0,7000 | EUR | BE6300512710 | 25/03/2024 | 26/03/2024 | 28/03/2024 |

De vergadering besluit daarnaast het saldo van het resultaat voor de distributieaandeelhouders en het resultaat voor de kapitalisatieaandeelhouders toe te voegen of te onttrekken aan het kapitaal (afhankelijk per compartiment of er een positief of negatief resultaat van het boekjaar is).

2. Bij afzonderlijke stemming en met unanimiteit, beslist de vergadering kwijting te verlenen aan alle bestuurders en de commissaris over het door hen uitgeoefende mandaat tijdens het afgesloten boekjaar.

3. De vergadering besluit de bestuurders Paul De Winter, Michel Buysschaert, Bernard Woronoff, Jens Van Nieuwenborgh en Anne Duchateau te herbenoemen als bestuurders voor een periode van 3 jaar tot aan de gewone algemene vergadering van 2027. De heren Bernard Woronoff en Jens Van Nieuwenborgh worden voor dezelfde periode aangesteld als effectieve leiders. Mevrouw Anne Duchateau is onafhankelijk bestuurder en haar functie is bezoldigd en bedraagt 1.800,00 € per compartiment. Alle andere functies zijn onbezoldigd.

4. De Voorzitter geeft een overzicht van de gang van zaken.

SLOT

Hierna wordt de vergadering geheven te _16u30_. Aldus opgemaakt op plaats en datum als gemeld en na goedkeuring door de vergadering, ondertekend door de leden van het bureau en door de aandeelhouders die erom verzocht hebben.

HET BUREAU

Bernard Woronoff
De Voorzitter

Digitaal ondertekend door Woronoff Bernard Marie M
Datum: 19/03/2024 16:29:48

Chris Bruynseels
De Secretaris

Digitaal ondertekend door Chris Bruynseels (+32495231903)
Datum: 19/03/2024 16:17:50
Ondertekend met eenmalig sms-mailwachtwoord: 239162

Jens Van Nieuwenborgh
Stemopnemer

Digitaal ondertekend door Jens Van Nieuwenborgh (+32470234798)
Datum: 19/03/2024 21:36:44
Ondertekend met eenmalig sms-mailwachtwoord: 175246

Gregory Swolfs
Stemopnemer

Digitaal ondertekend door Gregory Swolfs (+32495571650)
Datum: 19/03/2024 17:52:18
Ondertekend met eenmalig sms-mailwachtwoord: 904863

3

**C+F**

Naamloze Vennootschap onder het stelsel van een beleggingsvennootschap met veranderlijk kapitaal naar Belgisch recht
Jan Van Rijswijcklaan 184 te B-2020 Antwerpen
N.N. 0 463.755.911

**LIJST VAN DE AANWEZIGEN OP DE JAARVERGADERING DD. 19 MAART 2024 OM 16u00**

| Identiteit aandeelhouder | Compartiment | Aantal aandelen | Aantal stemmen | Vertegenwoordiging | Handtekening |
|---|---|---|---|---|---|
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerpen | BALANCED DYNAMIC | 1,0000 | 1 | Eric Lechien en Katrin Eyckmans | Digitaal ondertekend door Lechien Eric Guy M Datum: 19/03/2024 18:23:31 |
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerpen | EUROPEAN LARGE CAPS | 1,0000 | 1 | | |
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerpen | WORLD EQUITIES | 1,0000 | 1 | | Digitaal ondertekend door eyckmans katrin bertha a Datum: 21/03/2024 17:22:46 |
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerpen | IMMO RENTE | 1,0000 | 1 | | |
| | GLOBAL LINE | 1,0000 | 0 | | |
| | GLOBAL ROUTE | 1,0000 | 0 | | |
| | VERY LOW | 0,0000 | 0 | | |

| Identiteit bestuurder | Handtekening | Identiteit bestuurder | Handtekening |
|---|---|---|---|
| Paul De Winter | | Jens Van Nieuwenborgh | Digitaal ondertekend door Jens Van Nieuwenborgh (+32470234798) Datum: 19/03/2024 21:36:52 Ondertekend met eenmalig sms-mailwachtwoord: |
| Bernard Woronoff | Digitaal ondertekend door Woronoff Bernard Marie M Datum: 19/03/2024 16:30:50 | Michel Buysschaert | 175246 |
| Anne Duchateau | | | |

4

Exhibit F

| C+F n.v. Bevek |
| :---: |
| Jan Van Rijswijcklaan 184 in 2020 Antwerp |
| N.N. 0 463.755.911 |

MINUTES OF THE MEETING HELD ON TUESDAY, MARCH 19, 2024 AT 4:00 PM.

Today, March 19, 2024 at 4:00 p.m. at the registered office of the company, the annual meeting of the shareholders of the company was held under the direction and supervision of the BUREAU composed as follows:

- Chairman _Bernard Woronoff _____
- Secretary _Chris Bruynseels_____
- Vote Counters _Jens Van Nieuwenborgh_____
  _Gregory Swolfs_____

LIST OF PARTICIPANTS
The attached attendance list contains the identity of the directors, shareholders, and their representatives present, as well as the number of shares and the number of votes attached to these shares with which they will participate in the voting. The members of the bureau will sign the attached attendance list and the proxies.

INTRODUCTORY STATEMENT
The Chairman opened the meeting and stated that the meeting had been convened with the following AGENDA, the text of which is included verbatim in the convocations.

AGENDA
- Report of the Board of Directors and the auditor regarding the annual accounts for the fiscal year 2023. Approval of the annual accounts closed on December 31, 2023.
  Proposed resolution: The meeting resolved to approve the annual accounts as of December 31, 2023, including the appropriation of results.
- Discharge of the directors and the statutory auditor.
  Proposed resolution: The meeting resolved to grant discharge to the directors and statutory auditor for the mandate they exercised during the past financial year.
- Reappointment of directors.
  Proposed resolution: The meeting resolved to reappoint Paul De Winter, Michel Buysschaert, Bernard Woronoff, Jens Van Nieuwenborgh, and Anne Duchateau as directors for a period of 3 years until the ordinary general meeting of 2027. Mr. Bernard Woronoff and Mr. Jens Van Nieuwenborgh were appointed as effective leaders for the same period. Ms. Anne Duchateau is an independent director, and her position is remunerated at $1,800.00 per compartment. All other positions are not remunerated.
- Any other business.

NOTICE
The shareholders were convened to this meeting by publication of the above agenda on March 1, 2024, in the Belgian Official Journal and in De Tijd, as well as by publication on the website www.beama.be.

QUORUM REQUIREMENTS AND LEGITIMATION OF THE MEETING
The Chairman noted that the company's capital is currently represented by shares without nominal value, specifically

1

| COMPARTMENT | CLASS | CAP/DIS | # OF SHARES |
|---|---|---|---|
| C+F EUROPEAN LARGE CAPS | C | CAP | 172,851.1672 |
| C+F EUROPEAN LARGE CAPS | C | DIS | 556,608.4291 |
| C+F EUROPEAN LARGE CAPS | D | CAP | 1,556.4838 |
| C+F EUROPEAN LARGE CAPS | D | DIS | 51,237.6559 |
| C+F EUROPEAN LARGE CAPS | I | CAP | 12,200.0000 |
| C+F EUROPEAN LARGE CAPS | I | DIS | 151,340.2152 |
| C+F EUROPEAN LARGE CAPS | J | CAP | 41,815.1662 |
| C+F EUROPEAN LARGE CAPS | P | DIS | 1,913.1248 |
| C+F BALANCED DYNAMIC | C | CAP | 1,838.9734 |
| C+F BALANCED DYNAMIC | C | DIS | 9.9113 |
| C+F GLOBAL LINE | I | CAP | 532,406.4847 |
| C+F GLOBAL ROUTE | I | CAP | 809,400.0500 |
| C+F IMMO RENTE | C | CAP | 117,960.0515 |
| C+F IMMO RENTE | C | DIS | 236,324.3775 |
| C+F IMMO RENTE | D | CAP | 98,302.9056 |
| C+F IMMO RENTE | D | DIS | 80,519.9154 |
| C+F IMMO RENTE | J | CAP | 210,323.7252 |
| C+F IMMO RENTE | H | CAP | 29,000.0000 |
| C+F IMMO RENTE | P | CAP | 620.7293 |
| C+F IMMO RENTE | P | DIS | 5,059.9028 |
| C+F WORLD EQUITY | C | CAP | 12,734.0000 |
| C+F WORLD EQUITY | C | DIS | 6,986,294.2205 |
| C+F WORLD EQUITY | I | CAP | 8,569.5961 |
| C+F WORLD EQUITY | I | DIS | 4,514,457.3300 |
| C+F WORLD EQUITY | D | CAP | 198,235.5113 |
| C+F WORLD EQUITY | D | DIS | 4,027,325.9568 |
| C+F WORLD EQUITY | H | CAP | 21,344,089.1800 |
| C+F WORLD EQUITY | P | CAP | 30,998.5756 |
| C+F WORLD EQUITY | P | DIS | 71,968.9268 |
| C+F WORLD EQUITY | K | DIS | 9,160,124.0637 |
| C+F VERY DEFENSIVE | C | CAP | 0.0000 |
| C+F VERY DEFENSIVE | C | DIS | 7,569,372.2040 |
| C+F VERY DEFENSIVE | I | DIS | 657,727.9051 |
| TOTALC+F | | | 57,697,245.0597 |

The Chairman then noted that the attached attendance list showed that:

- for BALANCED DYNAMIC          _1_ shareholder with _1_ shares was present
- for EUROPEAN LARGE CAPS          _1_ shareholder with _1_ shares was present
- for GLOBAL LINE          _0_ shareholders with _0_ shares were present
- for GLOBAL ROUTE          _0_ shareholders with _0_ shares were present
- for IMMO RENTE          _1_ shareholder with _1_ shares was present
- for WORLD EQUITIES          _1_ shareholder with _1_ shares were present
- for VERY LOW          _0_ shareholders with _0_ shares were present

There are 5 directors, of which _1_ was present at the current meeting.

The Chairman reiterated that, regarding the deliberations and votes per sub-fund, each share is entitled to one vote. In contrast, for deliberations and votes relating to the company as a whole, the voting rights stated in the attached attendance list apply. In accordance with the relevant legal requirements, only for votes relating to the company as a whole, the voting rights granted per share vary based on the value of the shares, rounded to the nearest whole number (depending on the sub-fund to which a share belongs, the number of voting rights granted to this share may therefore differ).

Finally, the Chairman pointed out that the proposals on the agenda should be adopted by a simple majority of the votes cast.

After the previous explanation, the meeting acknowledged that it was properly constituted and declared itself authorized to make decisions regarding the aforementioned agenda items.

RESOLUTIONS FOR ALL SUB-FUNDS TOGETHER:

1. The Chairman read the report of the Board of Directors, the report of the auditor, and the annual accounts for the 2023 fiscal year. The directors answered the questions asked by the shareholders. The meeting did not make any comments about these reports and the annual accounts and approved them. The meeting unanimously decided to pay out the following dividends on March 28, 2024:

| C+F | Class | gross | net | Currency | ISIN | Record Date | Bc date | Pay date |
|---|---|---|---|---|---|---|---|---|
| European Large Caps | C | 13.4000 | 9.3800 | EUR | BE0168477850 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| European Large Caps | I | 14.7000 | 10.2900 | EUR | BE0947176682 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| European Large Caps | D | 10.8000 | 7.5600 | EUR | BE0948324521 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| European Large Caps | P | 2.6500 | 1.8550 | EUR | BE6300508676 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| World Equities | C | 0.8500 | 0.5950 | EUR | BE6295856718 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| World Equities | I | 1.9500 | 1.3650 | EUR | BE6295862773 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| World Equities | D | 0.5500 | 0.3850 | EUR | BE6295858730 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| World Equities | P | 2.0000 | 1.4000 | EUR | BE6300519780 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| World Equities | K | 1.7000 | 1.1900 | EUR | BE6300522818 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| Immo Rente | C | 1.0000 | 0.7000 | EUR | BE6251905616 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| Immo Rente | D | 1.0000 | 0.7000 | EUR | BE6336037948 | 03/25/2024 | 03/26/2024 | 03/28/2024 |
| Immo Rente | P | 1.0000 | 0.7000 | EUR | BE6300512710 | 03/25/2024 | 03/26/2024 | 03/28/2024 |

The meeting also decided to add or deduct the balance of the result for the distribution shareholders and the result for the capitalization shareholders from the capital (depending on whether there is a positive or negative result for the financial year per compartment).

2. In a separate and unanimous vote, the meeting decided to grant discharge to all directors and the auditor for the mandate they exercised during the closed financial year.

3. The meeting resolved to reappoint Paul De Winter, Michel Buysschaert, Bernard Woronoff, Jens Van Nieuwenborgh, and Anne Duchateau as directors for a period of 3 years until the ordinary general meeting of 2027. Mr. Bernard Woronoff and Mr. Jens Van Nieuwenborgh were appointed as effective leaders for the same period. Ms. Anne Duchateau is an independent director, and her position is remunerated at $1,800.00 per compartment. All other positions are not remunerated.

4. The Chairman provided an overview of the state of affairs.

LOCK

After this, the meeting was held at 4:30 p.m. Thus drafted at the place and on the date as reported and after approval by the meeting, signed by the members of the office and by the shareholders who have requested it.

THE OFFICE

Bernard Woronoff The Chairman

Digitally signed by Woronoff Bernard Marie M
Date: 03/19/2024 16:29:48

Chris Bruynseels The Secretary

Digitally signed by Chris Bruynseels (+32495231903)
Date: 03/19/2024 4:17:50 PM
Signed with one-time SMS email password: 239162

Jens Van Nieuwenborgh Counter of votes

Digitally signed by Jens Van Nieuwenborgh (+32470234798)
Date: 03/19/2024 9:36:44 PM
Signed with one-time SMS email password: 175246

Gregory Swolfs Counter of votes

Digitally signed by Gregory Swolfs (+32495571650)
Date: 03/19/2024 5:52:18 p.m.
Signed with one-time SMS email password: 904863

3

| C+F |
|---|
| Public limited liability company under the arrangement of an investment company with variable capital under Belgian law |
| Jan Van Rijswijcklaan 184, B-2020 Antwerp N.N. 0 463.755.911 |

**LIST OF ATTENDEES AT THE ANNUAL MEETING ON MARCH 19, 2024 AT 4:00 PM**

| Shareholder Identity | Compartment | Number of Shares | Number of Votes | Representation | Signature |
|---|---|---|---|---|---|
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerp | BALANCED DYNAMIC | 1.0000 | 1 | Eric Lechien and Katrin Eyckmans | Digitally signed by Lechien Eric Guy M Date: 03/19/2024 6:23:31 PM

Digitally signed by Eyckmans Katrin Bertha A Date: 03/21/2024 5:22:46 PM |
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerp | EUROPEAN LARGE CAPS | 1.0000 | 1 | | |
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerp | WORLD EQUITIES | 1.0000 | 1 | | |
| Delen Private Bank N.V. Jan Van Rijswijcklaan 184 B-2020 Antwerp | IMMO RENTE | 1.0000 | 1 | | |
| | GLOBAL LINE | 1.0000 | 0 | | |
| | GLOBAL ROUTE | 1.0000 | 0 | | |
| | VERY LOW | 0.0000 | 0 | | |

| Identity of director | Signature | Identity of director | Signature |
|---|---|---|---|
| Paul De Winter | | Jens Van Nieuwenborgh | Digitally signed by Jens Van Nieuwenborgh (+32470234798) Date: 03/19/2024 9:36:52 PM Signed with one-time SMS email password: 175246 |
| Bernard Woronoff | Digitally signed by Woronoff Bernard Marie M Date: 03/19/2024 4:30:50 PM | Michel Buysschaert | |
| Anne Duchateau | | | |

4



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**C+F Minutes of the Meeting Held on Tuesday, March 19, 2024.**" is, to the best of my knowledge and belief, a true and accurate translation from Dutch into English.

_____
Jacqueline Yorke

Sworn to before me this
March 10, 2025

_____
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 2 7

_____
Stamp, Notary Public

# Exhibit G

## CERTIFICATION

C+F (C+F World Equities and C+F Very Low) ("C+F" or "Plaintiff") declares as to the claims asserted under the federal securities laws that:

1.  Plaintiff did not purchase the securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

2.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and will actively monitor and vigorously pursue this action for the benefit of the class.

3.  Plaintiff's Class Period purchase and sale transactions in the AstraZeneca PLC securities that are the subject of this action are attached in Schedule A.

4.  The signatories below are authorized to execute this Certification on behalf of C+F.

5.  Plaintiff has fully reviewed the facts and allegations of a complaint filed in this action and has authorized the filing of the motion for appointment as Lead Plaintiff on its behalf in this action.

6.  Plaintiff has not sought to serve or served as a representative party for a class action filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

*In re Nike Inc. Sec. Litig.*, No. 3:24-cv-00974 (D. Or. Aug. 19, 2024)

7.   Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

We declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

C+F

Signed: _____Digitaal ondertekend_____
                          door Buysschaert
Print Name: _____Michel Eric C_____
                          Datum: 19/02/2025
                          08:23:16

Title: _____

Date: _____

C+F

Signed: _____Digitaal ondertekend_____
                          door De Winter Paul
Print Name: _____Maurice E_____
                          Datum: 20/02/2025
                          14:50:04

Title: _____

Date: _____

**Schedule A**
**C+F**
**(C+F World Equities)**
**Transactions in AstraZeneca PLC Spons ADR**

**Spons ADR Purchases**

| Date | Shares | Price |
|---|---|---|
| 03/01/22 | 15,273 | $61.61 |
| 03/16/22 | 17,872 | $61.60 |
| 04/12/22 | 7,320 | $68.91 |
| 06/13/22 | 8,206 | $60.10 |
| 07/08/22 | 8,042 | $66.90 |
| 07/13/22 | 3,202 | $66.21 |
| 07/15/22 | 3,047 | $66.47 |
| 07/28/22 | 8,770 | $66.12 |
| 08/03/22 | 10,206 | $65.02 |
| 09/20/22 | 8,047 | $57.56 |
| 10/03/22 | 10,149 | $55.19 |
| 10/20/22 | 7,250 | $54.37 |
| 11/09/22 | 11,538 | $61.71 |
| 11/23/22 | 14,133 | $66.23 |
| 12/23/22 | 9,304 | $67.86 |
| 01/30/23 | 14,912 | $66.10 |
| 04/19/23 | 9,285 | $74.60 |
| 05/02/23 | 11,636 | $73.74 |
| 05/24/23 | 3,943 | $72.78 |
| 05/30/23 | 8,179 | $72.10 |
| 06/22/23 | 9,937 | $73.68 |
| 07/19/23 | 12,510 | $67.73 |
| 08/11/23 | 7,314 | $70.53 |
| 09/01/23 | 11,957 | $68.18 |
| 10/02/23 | 7,773 | $66.58 |
| 10/16/23 | 11,081 | $67.52 |
| 11/30/23 | 8,118 | $64.12 |
| 12/06/23 | 6,151 | $64.21 |
| 12/14/23 | 12,533 | $66.56 |
| 12/20/23 | 10,463 | $66.40 |
| 12/27/23 | 8,641 | $67.30 |
| 01/02/24 | 12,331 | $68.43 |
| 01/16/24 | 25,693 | $67.60 |
| 02/09/24 | 10,254 | $62.40 |

| 02/22/24 | 13,136 | $63.82 |
| 03/06/24 | 14,774 | $65.16 |
| 05/03/24 | 16,398 | $75.62 |
| 05/23/24 | 21,224 | $79.13 |
| 05/24/24 | 20,892 | $78.44 |
| 05/28/24 | 15,240 | $76.86 |
| 05/30/24 | 21,764 | $75.92 |
| 05/30/24 | 21,816 | $76.80 |
| 06/03/24 | 21,393 | $79.27 |
| 06/04/24 | 21,075 | $79.62 |
| 06/05/24 | 20,902 | $80.49 |
| 06/06/24 | 6,064 | $80.63 |
| 06/07/24 | 20,926 | $80.25 |
| 06/17/24 | 12,985 | $79.07 |
| 06/27/24 | 7,715 | $78.72 |
| 07/09/24 | 15,612 | $76.62 |
| 07/17/24 | 8,355 | $79.56 |
| 07/19/24 | 22,088 | $78.28 |
| 07/22/24 | 13,869 | $79.24 |
| 07/30/24 | 21,740 | $78.76 |
| 07/31/24 | 32,795 | $79.24 |
| 08/01/24 | 39,031 | $79.86 |
| 08/19/24 | 41,904 | $85.10 |
| 08/26/24 | 25,005 | $86.62 |
| 09/09/24 | 13,156 | $83.06 |
| 09/27/24 | 10,000 | $78.03 |
| 10/24/24 | 11,566 | $76.14 |
| 10/28/24 | 11,011 | $75.51 |
| 11/04/24 | 8,728 | $71.72 |
| 11/07/24 | 10,330 | $63.76 |
| 12/02/24 | 22,825 | $66.98 |

| Spons ADR Sales | | |
| --- | --- | --- |
| Date | Shares | Price |
| 06/26/24 | 123,193 | $79.31 |

**Schedule A**
**C+F**
**(C+F Very Low)**
**Transactions in AstraZeneca PLC Spons ADR**

**Spons ADR Purchases**

| Date | Shares | Price |
|---|---|---|
| 11/17/23 | 163 | $64.10 |
| 05/03/24 | 546 | $75.62 |
| 05/23/24 | 285 | $79.13 |
| 05/24/24 | 275 | $78.44 |
| 05/30/24 | 292 | $75.92 |
| 05/30/24 | 294 | $76.80 |
| 06/03/24 | 288 | $79.27 |
| 06/04/24 | 285 | $79.62 |
| 06/05/24 | 283 | $80.49 |
| 06/07/24 | 280 | $80.25 |
| 06/20/24 | 580 | $78.34 |
| 07/17/24 | 314 | $79.56 |
| 07/19/24 | 313 | $78.28 |
| 07/22/24 | 143 | $79.24 |
| 07/30/24 | 311 | $78.76 |
| 07/31/24 | 477 | $79.24 |
| 09/11/24 | 832 | $79.79 |
| 11/13/24 | 333 | $64.76 |

**Spons ADR Sales**

| Date | Shares | Price |
|---|---|---|
| 03/23/22 | 762 | $63.34 |
| 05/23/22 | 156 | $66.51 |
| 05/23/22 | 546 | $66.52 |
| 05/23/22 | 200 | $66.54 |
| 05/23/22 | 50 | $66.55 |
| 03/28/24 | 579 | $68.06 |
| 05/15/24 | 163 | $77.38 |