UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JERIES SALEH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASTRAZENECA PLC,<br><br>Defendants. | Case No. 2:24-cv-11021-JFW-AS<br><br>CLASS ACTION<br><br>[PROPOSED] STATEMENT OF DECISION GRANTING THE PENSION FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

4898-3389-9047.v2

On February 21, 2025, the Court received three motions by Michiana Area Electrical Workers' Pension Fund, Teamsters Local 710 Pension Fund and St. Clair County Employees' Retirement System (collectively, the "Pension Funds"), and C+F (C+F World Equities and C+F Very Low) and Universal Invest (Universal Invest Dynamic, Universal Invest High, Universal Invest Medium and Universal Invest Low) (collectively, the "Institutional Investor Funds") for appointment as lead plaintiff and approval of lead plaintiff's selection of counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B). ECF 13, 18, 22. On February 27, 2025, Michiana Area Electrical Workers' Pension Fund withdrew its motion. ECF 27. On March 3, 2025, the Pension Funds and Institutional Investor Funds opposed each other's motions, and on March 10, 2025, each group filed replies in further support of their motions. ECF 28, 29, 33, 34. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2024, plaintiff Jeries Saleh filed a putative class action complaint against defendants AstraZeneca PLC, Pascal Soriot, and Aradhana Sarin (collectively, "defendants") on behalf of all persons or entities who purchased or otherwise acquired publicly traded AstraZeneca securities between February 23, 2022 and December 17, 2024 (the "Class Period"), alleging claims for relief for: (1) violation of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5 (17 C.F.R. §240.10b-5); and (2) violation of §20(a) of the Exchange Act, 15 U.S.C. §78t(a). In the complaint, plaintiff alleges that AstraZeneca, along with Soriot (AstraZeneca's CEO during the Class Period) and Sarin (AstraZeneca's CFO during the Class Period) made false and misleading statements and failed to disclose information that harmed AstraZeneca's investors.

## II. APPOINTMENT OF LEAD PLAINTIFF

The PSLRA sets forth the lead plaintiff selection procedures for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); 15 U.S.C. §78u-4(a)(3)(B).  Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).  The PSLRA further directs the Court to consider any motions to serve as lead plaintiff no later than 90 days after the date of publication of notice.  15 U.S.C. §78u-4(a)(3)(B)(i).

The Court must appoint as lead plaintiff the class member who is "most capable of adequately representing the interests of class members."  *Id.*  And the Court must presume that the "most adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to [the aforementioned] notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

- 2 -

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by proof from a class member that the "most adequate plaintiff:" (i) "will not fairly and adequately protect the interests of the class"; or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit has divided this inquiry into a "three-step process." *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* at 729. Next, the district court compares the financial losses of the lead-plaintiff contenders to "determine which one has the most to gain from the lawsuit," and then ascertains whether that plaintiff also satisfies the requirements of Rule 23. *Id.* at 730. If the plaintiff with the greatest stake does not satisfy Rule 23, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.* At the final step, other plaintiffs have an opportunity to "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.*

### III. DISCUSSION

#### A. The Motions Are Timely

All motions for appointment as lead plaintiff were timely filed. On December 23, 2024, plaintiff Saleh published a notice of pendency of the action pursuant to the PSLRA. *See* Declaration of Michael Albert in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel, Ex. A (ECF 20-1). The notice advised putative class members about this action, the legal claims asserted in the complaint, the proposed class period, and the 60-day deadline by which class members must move to be appointed as lead plaintiff. *Id.*; *see* 15 U.S.C. §78u-4(a)(3)(A)(i). All motions for appointment as lead plaintiff were filed

on February 21, 2025, which was within 60 days from the publication of the notice. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

### B. The Pension Funds Are the Presumptive Lead Plaintiff

In their opening motions, the Institutional Investor Funds claimed a loss of "more than $10,260,000 million [sic]," while the Pension Funds claimed a loss of "more than $259,561." ECF 23 at 5; ECF 19 at 4. Based on these claimed losses, the Institutional Investor Funds proclaim they have the largest financial interest, otherwise satisfy Rule 23's typicality and adequacy requirements, and thus are "[e]ntitled to the PSLRA Lead [sic] Presumption." ECF 28 at 2-5.

In opposition, the Pension Funds argue that each of the Institutional Investor Funds failed to include millions of dollars' worth of transactions in AstraZeneca securities, rendering their Certifications (required by the PSLRA and sworn to under penalty of perjury) inaccurate. ECF 29 at 4-5. The Institutional Investor Funds reply that "for each SICAV, 'each compartment or sub-fund is treated as a separate entity having its own name, funding, capital gains, losses, and expenses, ***although compartments or sub-funds do not have a legal personality distinct from the UCITS SICAV***'" and thus they are only required to disclose the trades of the sub-funds hand-picked by counsel. ECF 33 at 5 (quoting ECF 24-4 at ¶9; ECF 24-5 at ¶7) (emphasis added).[1] In support of their argument, the Institutional Investor Funds cite to declarations from purported experts of Belgian and Luxembourgian corporate law who cite to various provisions of Belgium and Luxembourg corporate law.[2]

---

[1] According to the Institutional Investor Funds' purported expert declarations, under both Belgian and Luxembourgian law, a SICAV is "an investment company with variable capital." ECF 24-4 at ¶6; ECF 24-5 at ¶4. They also opine that a UCITS is "an undertaking for collective investment in transferable securities." *Id*.

[2] The Court notes that it is under no obligation to credit the expert declarations because the Institutional Investor Funds failed to comply with Federal Rule of Civil Procedure 44.1 which required the Institutional Investor Funds to provide notice and "to provide the district court with the information needed to determine the meaning of the foreign law." *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018).

- 4 -

The Court agrees with the Pension Funds. Allowing the same legal personality to strategically include or exclude transactions would be akin to allowing an individual with two brokerage accounts (each of which is "treated as a separate entity having its own name, funding, capital gains, losses and expenses") (ECF 33 at 5) to claim losses incurred by the first brokerage account without offsetting those losses with the gains incurred by the second. *See Mullen v. Wells Fargo & Co.*, 2021 WL 965344, at *3 (N.D. Cal. Mar. 15, 2021) ("The Court directed that each investment account be first assessed on its own losses and gains, that is netting out gains and losses within the class period, and arrive at a single net number for each investment account, and then combine these net numbers for an overall net figure. So, for example, a net gain in one account would reduce a net loss in another account."). This would effectively permit someone to claim poverty from an empty pocket on a pair of pants while hiding the fact that his other pocket was busting at the seams. Such a rule would allow lead plaintiff movants to manufacture illusory losses for litigation purposes and would thwart the Court's ability to determine which movant "has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

This is no idle concern here as the Institutional Investor Funds concede certain of their sub-funds did indeed transact in additional undisclosed AstraZeneca securities beyond the American Depositary Shares disclosed on their Certification. ECF 33 at 7. The Institutional Investor Funds posit that they are not required to disclose those transactions in other securities because those securities are not "'the subject of the complaint'" and "related to 'the relief sought by the class.'" *Id.* (quoting 15 U.S.C. §78u-4(a)(2)(A)(iv); 15 U.S.C. §78u-4(a)(3)(B)(iii)(bb)).

This argument is unavailing. Courts routinely find that in determining a potential lead plaintiff's financial interest, losses must be offset by gains earned from other securities as doing so "accounts for any benefit [] accrued as a result of Defendants' allegedly misleading statements that inflated the value of [company]

- 5 -

stock during the Class Period." *Baxter v. MongoDB, Inc.*, 2024 WL 4753605, at *4 (S.D.N.Y. Nov. 12, 2024) (requiring a lead plaintiff movant to offset her stock losses with gains she earned from sales of put options in a class defined as those who purchased defendant's securities).[3] This is because "offsetting the . . . profit . . . against [the movant's] class period losses accounts for any gain accruing to [the movant] from the alleged inflation." *Ellenburg v. JA Solar Holdings, Co. Ltd.*, 262 F.R.D. 262, 266 (S.D.N.Y. 2009); *see also City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) ("[I]f [p]laintiff were to prevail, then at the damages stage of the case it is possible that at least some of the gains on bonds and options that PSP incurred as a result of the fraud would need to be offset by the losses on Citigroup stocks that PSP incurred as a result of the fraud.").

Thus, the Institutional Investor Funds were required to disclose all Class Period transactions in all AstraZeneca securities for all of its compartments and subdivisions that did not have separate legal personalities. Because they did not, their Certifications are false and incomplete, which not only precludes a determination of their true financial interest, it precludes a conclusion that they satisfy the Rule 23 requirements. *See Salem v. Methode Elecs., Inc.*, 2025 WL 368955, at *3 (N.D. Ill. Feb. 3, 2025) ("Although courts are not uniform in their approach to these circumstances, the majority of courts refuse to consider modifications to certifications or claimed losses made after the PSLRA lead plaintiff motion deadline."); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant who submitted a certification that "'omitted certain Class Period transactions'") (citation omitted); *Tomaszewski v.*

---

[3] While American stocks are usually listed and trade on one of two national exchanges (the NYSE or NASDAQ), options on American stocks trade on the CBOE. Thus, the Institutional Investor Funds' equivocation that ADRs and bonds traded on different exchanges is a distinction without a difference for the purpose of the PSLRA's financial interest and Rule 23 analyses.

- 6 -

*Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (denying lead plaintiff motion where movant's certification had errors).

Even if the Institutional Investor Funds did not fail to submit their full trading data and they were entitled to the most adequate plaintiff presumption, they have failed to evidence that either of the signatories on each of their signed Certifications has authorization to bring suit on the Institutional Investor Funds' behalf, rendering them inadequate. First, the Institutional Investor Funds failed to comply with Federal Rule of Civil Procedure 44.1 in submitting their purported expert declarations. This rule requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. Second, "even if this Court credited that opinion, [the Institutional Investor Funds'] status raises complex and novel issues of law which would require extensive factual and foreign legal analysis. Such a diversion would be a needless litigation sideshow." *Baydale v. Am. Express Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009). Because the Institutional Investor Funds' argument relies on foreign law and purported experts claiming to opine on foreign law, the Pension Funds have certainly raised the specter that this issue may become the focus of litigation, to the detriment of the putative class. *See Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc.* 2021 WL 4298191, at *5 (S.D.N.Y. Sept. 21, 2021) ("These issues and their attendant risks can be avoided at this early stage by appointing another lead plaintiff that is capable of adequately representing the Class."). Consequently, the Institutional Investor Funds are not entitled to the most adequate presumption.

By contrast, the Pension Funds' motion for appointment as lead plaintiff is substantively unopposed by the Institutional Investor Funds, but for the Pension Funds' smaller financial interest. That fact is inconsequential here. *See Cavanaugh*, 306 F.3d at 730 ("If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both

willing to serve and satisfies the requirements of Rule 23."). As described in the Pension Funds' briefing, they are experienced, typical, and adequate domestic institutions. Thus, the Pension Funds are entitled to the most adequate plaintiff presumption.

### C. The Presumption in Favor of the Pension Funds Has Not Been Rebutted

At the third and final step of the PSLRA inquiry, other movants have an opportunity to "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. The Institutional Investor Funds make no arguments that the Pension Funds will unfairly or inadequately represent the class' interests. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Institutional Investor Funds also do not argue that the Pension Funds' claims are atypical of the class. In addition, the Institutional Investor Funds do not argue that the Pension Funds are "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* Accordingly, the Court concludes that the Institutional Investor Funds failed to rebut the statutory presumption, and the Pension Funds have satisfied every requirement under the PSLRA to be appointed as lead plaintiff. *See Cavanaugh*, 306 F.3d at 729-30.

### D. The Pension Funds' Selection of Counsel Is Approved

Once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." 15 U.S.C. §78u-(a)(3)(B)(iii)(II)(aa); *see also In re Cohen*, 586 F.3d 703, 711-12 (9th Cir. 2009); *Cavanaugh*, 306 F.3d at 732-35.

In this case, the Pension Funds have retained Robbins Geller Rudman & Dowd LLP as lead counsel. The Court is satisfied that the firm is capable of serving competently in the role of lead counsel. In fact, Robbins Geller has extensive

- 8 -

expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.  *See* ECF 19 at 6-7 (describing Robbins Geller's track record, including obtaining the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits).  Accordingly, the Court approves the appointment of Robbins Geller as lead counsel in this action.

**IV.   CONCLUSION**

For the reasons stated above, the Court **GRANTS** the Pension Funds' motion for appointment as lead plaintiff and approves their selection of Robbins Geller as lead counsel.  The Court **DENIES** the Institutional Investor Funds' motion.

IT IS SO ORDERED.

DATED: _____     _____
THE HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

4898-3389-9047.v2