# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JERIES SALEH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASTRAZENECA PLC, PASCAL SORIOT, and ARADHANA SARIN,<br><br>Defendants. | Case No. 2:24-cv-11021<br><br>**CLASS ACTION**<br><br>[PROPOSED] STATEMENT OF DECISION GRANTING THE INSTITUTIONAL INVESTOR FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

On February 21, 2025, the Court received three motions by Michiana Area Electrical Workers' Pension Fund, Teamsters Local 710 Pension Fund and St. Clair County Employees' Retirement System (collectively, the "Pension Fund Group"), and C+F (C+F World Equities and C+F Very Low) and Universal Invest (Universal Invest Dynamic, Universal Invest High, Universal Invest Medium, and Universal Invest Low) (collectively, the "Institutional Investor Funds") for appointment as lead plaintiff and approval of lead plaintiff's selection of counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B). ECF Nos. 13, 18, 22.

On February 27, 2025, Michiana Area Electrical Workers' Pension Fund withdrew its motion. ECF No. 27.

On March 3, 2025, the Institutional Investor Funds and the Pension Fund Group each filed memoranda opposing the other's motions. ECF Nos. 28, 29. And on March 10, 2025, each filed reply memoranda in further support of their respective motions and in response to the earlier filed oppositions. ECF Nos. 33, 34.

Having considered the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

## I.  INTRODUCTION

The PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id*. (citation omitted). The second step requires, "the district court [to] consider the losses allegedly suffered by the various plaintiffs," and select as the "'presumptively most adequate plaintiff' . . . the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id*. at 729-30 (citation omitted). The third and final step, requires the

1

court to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id*. at 730.

Pursuant to the [PSLRA]:

> th[is] presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

The *Cavanaugh* court cautioned that "a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case . . . . So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732; *see also id*. at 739 (holding that the PSLRA was not meant to "authorize the district court to select as lead plaintiff 'the most sophisticated investor available'").

The PSLRA "provides in categorical terms that the ***only*** basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *See id.* at 732 (emphasis in original).

## II. THE INSTITUTIONAL INVESTOR FONDS ARE THE PRESUMPTIVE MOST ADEQUATE PLAINTIFF

A review of the declarations and briefs submitted by the competing movants demonstrate that the Institutional Investor Funds are the presumptive lead plaintiff because they have suffered an estimated loss of $10,260,000, as compared to the Pension Fund Group's $259,561, and have the largest financial stake in this litigation. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *compare* ECF No. 23 at 5 *with* ECF

No. 19 at 4. Accordingly, the Court must consider whether the Institutional Investor Funds satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and in particular, the requirements of "typicality" and "adequacy." *See Cavanaugh*, 306 F.3d at 730 (stating that the "district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy'") (footnote omitted) (citation omitted).

With respect to typicality and adequacy, "'[a] wide ranging analysis . . . is not appropriate'" to determine whether the Institutional Investor Funds have made a *prima facie* showing that they satisfy the requirements of Rule 23, and such a wide-ranging analysis "'should be left for consideration on a motion for class certification.'" *Puente v. Chinacast Educ. Corp.*, No. CV 12-4621-JFW (PLAx), 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012) (citation omitted). Moreover, "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).

Here, the Institutional Investor Funds' claims meet the typicality requirement because their claims are identical or nearly identical to those of all putative class members and rely on the same legal arguments. *See* ECF No. 23 at 6-8; ECF No. 28 at 5-6. Like all members of the Class, the Institutional Investor Funds purchased AstraZeneca PLC ("AstraZeneca" or the "Company") "securities publicly traded on NASDAQ during the Class Period" (ECF No. 1, ¶42) and were damaged by the alleged materially false and misleading statements. *Id*.

The Institutional Investor Funds also meet Rule 23's adequacy requirement, which requires that the movant be able to "fairly and adequately protect the interests" of all class members. Fed. R. Civ. P. 23(a)(4). The Institutional Investor Funds are

sophisticated institutional investors, providing the ability to effectively supervise and monitor counsel. And no evidence suggests that the Institutional Investor Funds' chosen counsel, DiCello Levitt LLP, is incapable or unqualified.

Here, the Institutional Investor Funds are the presumptive "most adequate plaintiff." The Institutional Investor Funds are therefore the presumptive Lead Plaintiff. The "burden" now shifts to any movant opposing the Institutional Investor Funds' appointment to "show inadequacy," *In re Mersho*, 6 F.4th 891, 901 (9th Cir. 2021), which requires "proof." *Id.* at 899; *see also Cavanaugh*, 306 F.3d at 732 (The PSLRA "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.").

### III. THE PENSION FUND GROUP HAS FAILED TO REBUT THE INSTITUTIONAL INVESTOR FUNDS' "MOST ADEQUATE PLAINTIFF" PRESUMPTION

To rebut the "most adequate plaintiff" presumption, the PSLRA requires that competing movants submit "proof" that the Funds "will not fairly and adequately protect the interests of the class," or are "subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Once the presumption has been triggered, "the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate []' job." *Cendant*, 264 F.3d at 268 (alterations in original).

First, the Pension Fund Group argues that the Institutional Investor Funds have not identified all of the transactions in the security that is the subject of the complaint. ECF No. 29 at 3. The Pension Fund Group argues both that the Institutional Investor Funds did not disclose transactions for other funds and that they did not disclose transactions in foreign ordinary shares and foreign debt securities.

The Institutional Investor Funds point out that for each SICAV, "each compartment or sub-fund is treated as a separate entity having its own name,

4

funding, capital gains, losses, and expenses, although compartments or sub-funds do not have a legal personality distinct from the UCITS SICAV." ECF No. 24-4, ¶9; ECF No. 24-5, ¶7. "Each compartment's financial position remains independent of the results of other compartments – meaning that gains or losses in one compartment do not, and, in fact, cannot offset gains or losses in another. This also means that the gains and/or losses of the compartments are not and cannot be consolidated at the SICAV level." ECF No. 35-1, ¶¶13-16; ECF No. 35-2, ¶¶9-12.

As such, the Institutional Investor Funds are not required to submit transactions entered into by other SICAV compartments that did not seek appointment as lead plaintiff. Indeed, just as Teamsters Local 710 Pension Fund is a separate and distinct legal entity from the Teamsters Local 710 Health and Welfare Fund, so too is each compartment a separate and distinct entity. *See* ECF No. 35-1, ¶¶13-16; ECF No. 35-2, ¶¶9-12; *see also Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, No. 21-cv-08812, 2022 WL 3571995, at *2 (N.D. Cal. July 26, 2022) ("the Court is persuaded that PFA Pension has disclosed all of its transactions," where movant submitted a sworn declaration stating that these other "'entities are legally separate from PFA Pension'") (citation omitted).

In addition, the PSLRA's certification requirement mandates that the plaintiff certification "set[] forth all of the transactions of the plaintiff in the security that is the ***subject of the complaint*** during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv). Although perhaps inartful, the complaint is clear that the securities that are "the subject of the complaint" are "AstraZeneca's American Depository Shares ('ADS' or 'ADSs')" that "***trade on the NASDAQ exchange under the ticker symbol 'AZN.'***" ECF No. 1, ¶¶9, 42. The complaint defines the putative class as follows:

> Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired ***the Company's securities publicly traded on NASDAQ during the Class Period***, and who were damaged thereby (the "Class").

5

*See* ECF No. 1, ¶42; *see id.*, ¶¶35, 38, 40 (alleging that as a result of the disclosure of previously undisclosed adverse information "AstraZeneca ADSs fell").

Here, none of the securities the Pension Fund Group references is a "securit[y] that is the subject of the complaint" (15 U.S.C. §78u-4(a)(2)(A)(iv)), nor are the securities related to "the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(bb). Indeed, AstraZeneca's ordinary shares are foreign securities that trade on the London exchange. ECF No. 35, Ex. 3. And the two debt securities the Pension Fund Group cite (0.375% bond due 3/26/2029 and 3.75% bond due 3/3/2032) are foreign securities, are denominated in euros, and both trade on the London exchange. ECF No. 35, Exs. 4-5; *see Stoyas v. Toshiba Corp.*, 734 F. Supp. 3d 1000, 1005 (C.D. Cal. 2024) ("Section 10(b) only applies to deceptive conduct in connection with domestic transactions"); *In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 202 (D. Conn. 2023) ("In short, [plaintiffs] cannot state a federal securities claim based on transactions in" securities traded on a foreign exchange, including "preferred shares, ordinary shares, or Notes."); *In re Infineon Techs. AG Sec. Litig.*, No. C 04-04156, 2011 WL 7121006, at *3 (N.D. Cal. Mar. 17, 2011) ("Section 10(b) of the Exchange Act does not apply extraterritorially . . . a securities transaction must occur on a domestic exchange to trigger application of §10(b) of the Exchange Act."); *cf. In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124-25 (S.D.N.Y. 2001) (rejecting argument at class certification that proposed class representatives "violated the requirements of the PSLRA" by failing to include options in lead plaintiff certification, finding that they "did comply with the certification requirements of the statute and disclosed those transactions in the security which was the subject of the complaint at the time the certification was submitted").

Second, the Pension Fund Group argues that the Institutional Investor Funds' signatories lack the authority to act on their behalf. Here, however, the Institutional Investor Funds have fully complied with the PSLRA's lead plaintiff requirements

and confirmed that they "authorized the filing of the motion for appointment as Lead Plaintiff on its behalf in this action." ECF No. 24-2 at 2, ¶5; *id.* at 7, ¶5. Nothing more is required. *See, e.g.*, *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004) (finding that movants who "executed and submitted the precise certifications required under the PSLRA" to be wholly sufficient). The Institutional Investor Funds have further submitted supplemental declarations, confirming that under Belgian law, and Luxembourg law, the signatories of C+F and Universal Invest, respectively, are fully and duly authorized and empowered to execute the certifications and thus, to bring this litigation on the Institutional Investor Funds' behalf. ECF No. 35-1, ¶¶10-12, 17; *id.*, ECF No. 35-2, ¶¶7-8, 13. The Institutional Investor Funds submissions evidence that the Institutional Investor Funds' PSLRA certifications, submitted on behalf of C+F and Universal Invest, were properly authorized and fully comply with the PSLRA's certification requirements. *Cf. Twitchell v. Enovix Corp.*, No. 23-cv-00071, 2023 WL 3170044, at *8 (N.D. Cal. Apr. 28, 2023) (rejecting argument that investment manager could not bind investment funds, finding competing movant had "no proof" to support argument that manager could not bind funds where supplemental submission "confirmed" "the investment manager of the funds . . . ha[d] legal authority to bind the" investment funds). This is sufficient to satisfy the PSLRA's requirements.

Based on the foregoing, the Institutional Investor Funds have the largest financial in the relief sought by the class and have made the necessary *prima facie* showing that they satisfy both the typicality and adequacy requirements of Rule 23. The Pension Fund Group has not rebutted the presumption that the Institutional Investor Funds are the most adequate plaintiff. Accordingly, the Court appoints the Institutional Investor Funds as lead plaintiff in this consolidated action.

### IV.  APPOINTMENT OF LEAD COUNSEL

Once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C.

§ 78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." 15 U.S.C. §78u-(a)(3)(B)(iii)(II)(aa).

In this case, the Institutional Investor Funds have retained DiCello Levitt LLP as lead counsel. The Court has reviewed DiCello Levitt's firm resume and is satisfied that it is capable of serving competently in the role of lead counsel. Accordingly, the Court approves the appointment of DiCello Levitt as lead counsel in this action.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS the Institutional Investor Funds' motion, appoints the Institutional Investor Funds as lead plaintiff, and approves the Institutional Investor Funds' selection of DiCello Levitt LLP as lead counsel. The Court DENIES the Pension Fund Group's motion.

DATED: _____

THE HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT JUDGE