**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 24-11021-JFW(ASx)** | Date: March 21, 2025 |
| Title: | Jeries Saleh -v- AstraZeneca PLC, et al. | |

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputys | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    ORDER DENYING TEAMSTERS LOCAL 710 PENSION FUND AND ST. CLAIR COUNTY EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL [filed 2/21/25; Docket No. 18]; and

   ORDER GRANTING THE INSTITUTIONAL INVESTOR FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL [filed 2/21/25; Docket No. 22]

     On February 21, 2025, Teamsters Local 710 Pension Fund and St. Clair County Employees' Retirement System (collectively, the "Pension Funds") filed a Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. On March 3, 2025, C+F (C+F World Equities and C+F Very Low) and Universal Invest (Universal Invest Dynamic, Universal Invest High, Universal Invest Medium, and Universal Invest Low) (collectively, the "Institutional Investor Funds") filed their Opposition. On March 10, 2025, the Pension Funds filed a Reply. On February 21, 2025, the Institutional Investor Funds filed a Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. On March 3, 2025, the Pension Funds filed their Opposition. On March 10, 2025, the Institutional Investor Funds filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's March 24, 2025 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**

On December 23, 2024, Plaintiff Jeries Saleh ("Saleh") filed a putative Class Action Complaint for Violation of the Federal Securities Law ("Complaint") against Defendants AstraZeneca PLC ("AstraZeneca"), Pascal Soriot ("Soriot"), and Aradhana Sarin ("Sarin") (collectively, "Defendants") on behalf of all persons or entities who purchased or otherwise acquired publicly traded AstraZeneca securities between February 23, 2022, and December 17, 2024 (the "Class Period"), alleging claims for: (1) violation of Section 10(b) of the Exchange Act and Rule 10-b; and (2) violation of Section 20(a) of the Exchange Act.  In the Complaint, Saleh alleges that AstaZeneca, along with Soriet (AstraZeneca's CEO throughout the Class Period) and Sarin (AstraZeneca's CFO throughout the Class Period), made false and misleading statements and failed to disclose information that harmed AstraZeneca's investors.  Specifically, the Complaint alleges that Defendants made false and/or misleading statements and/or failed to disclose that: (1) AstraZeneca allegedly engaged in insurance fraud in China; (2) AstraZeneca faced heightened legal exposure in China due to its purported insurance fraud, which eventually resulted in the detention of AstraZeneca China's President by Chinese law enforcement authorities; and (3) AstraZeneca understated its legal risk and possible material harm to its business related to the purported insurance fraud in China.

**II.    Appointment of Lead Plaintiff**

In this case, both the Institutional Investor Funds[1] and the Pension Funds seek to be appointed as Lead Plaintiff.[2]  It is undisputed that the Institutional Investor Funds suffered the largest losses.  However, the Pension Funds argue that the Institutional Investor Funds are not the presumptive Lead Plaintiff because the Institutional Investor Funds failed to disclose all of their transactions in AstraZeneca securities as required by the PSLRA.  The Pension Funds also argue that the signatories of the PSLRA Certifications lack the authority to act on behalf of the Institutional Investor Funds.  In response, the Institutional Investor Funds argue that they are the presumptive Lead Plaintiff because they have suffered the largest losses, and the Pension Funds have failed to submit any evidence to support their arguments to the contrary and those arguments

---

[1] The Institutional Investor Funds consists of C+F and Universal Invest.  C+F is a Belgian public limited company, qualifying as an investment company with variable capital ("SICAV").  Universal Invest is a Luxembourg limited liability company, qualifying as a SICAV.  A SICAV, or A Société d'investissement à Capital Variable, is a publicly traded open-end investment fund structure offered in Europe.  SICAV funds are similar to open-end mutual funds in the United States.  Both C+F and Universal Invest are organized as an UCITS, or undertaking for collective investment in transferrable securities.  A UCITS must invest its funds in transferable securities and other liquid assets.

[2] Although the Michiana Area Electrical Workers' Pension Fund filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel on February 21, 2025 (Docket No. 13), the Michiana Area Electrical Workers' Pension Fund withdrew that motion on February 27, 2025 (Docket No. 27) because "[h]aving reviewed the competing motions filed in this action, MAEW does not appear to have the largest financial interest."  As a result, the Institutional Investor Funds' motion and the Pension Funds' motions are the only remaining motions.

are factually and legally incorrect.

### A. The Private Securities Litigation Reform Act of 1995

The Private Securities Litigation Reform Act of 1995 (the "Reform Act") "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* The second step requires, "the district court [to] consider the losses allegedly suffered by the various plaintiffs," and select as the "'presumptively most adequate plaintiff' . . . the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'." *Id.* at 729-30. The third and final step, requires the court to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730.

Pursuant to the Reform Act:

> th[is] presumption . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The *Cavanaugh* court cautioned that "a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case . . . So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *In re Cavanaugh*, 306 F.3d at 732. *See also id.* at 739 (holding that the Reform Act was not meant to "authorize the district court to select as lead plaintiff 'the most sophisticated investor available'"); *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004) ("Although the court may compare putative lead plaintiffs when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison").

### B. The Court Concludes That the Institutional Investor Funds Are the Presumptive Most Adequate Plaintiff

In this case, the Court concludes that the Institutional Investor Funds are the "most adequate plaintiff" under the PSLRA, 15 U.S.C. § 78u-4(a)(3). The Reform Act "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *See Cavanaugh*, 306 F.3d at 732 (emphasis in original). It is undisputed that the Institutional Investor Funds suffered the largest financial loss and, as a result, are the presumptive Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Specifically, the Institutional Investor Funds purchased 218,621 AstraZeneca

American Depository Shares (traded on NASDAQ under the ticker symbol AZN), and suffered losses of approximately $10,260,000 while the Pension Funds purchased 55,733 AstraZeneca American Depository Shares, and suffered losses of $259,561.  As a result, the Court must consider whether the Institutional Investor Funds satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and in particular, the requirements of "typicality" and "adequacy."  *See Cavanaugh*, 306 F.3d at 730 (emphasis in original) (stating that the "district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy'").

With respect to typicality and adequacy, "[a] wide ranging analysis . . . is not appropriate" to determine whether CJD has made a prima facie showing that it satisfies the requirements of Rule 23, and such a wide ranging analysis "should be left for consideration on a motion for class certification."  *Fischler v. AmSouth Bancorp.*, 1997 WL 118429, * 2 (M.D. Fla. 1997); see also *In re Cendant Corp. Litigation*, 264 F.3d 201, 263 (3d Cir. 2001) (emphasis in original) (stating that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy"), *cert. denied*, 535 U.S. 929 (2002); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 546 (N.D. Tex. 1997) ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing.  There is no need to require anything more than a preliminary showing at this stage"); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal.1999) (noting that, at this stage of the litigation,"nothing more than a preliminary showing is required").  Moreover, "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements."  *Cendant*, 264 F.3d at 264.

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [Lead Plaintiffs] have incentives that align with those of absent class members so . . .  that the absentees' interests will be fairly represented."  *Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1136 (C.D. Cal. 1999) (citation omitted).  "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "Typicality [thus] entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . .  the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *Takeda*, 67 F.Supp.2d at 1136-37 (citations omitted).

The Institutional Investor Funds' claims are typical because, similar to the other Class members, it: (1) purchased AstraZeneca securities during the Class Period, (2) suffered the same injuries as a result of the same course of conduct by Defendants, and (3) have claims that are based on the same legal theories.  Accordingly, the Institutional Investor Funds' claims are substantially similar, if not identical, to those of other class members who invested in AstraZeneca securities during the Class Period and sustained losses resulting from the alleged false and misleading statements and non-disclosures.  Because a "preliminary showing" is all that is necessary, the Court concludes that the Institutional Investor Funds have met their burden of establishing typicality.  *See Cendant*, 264 F.3d at 265 (citations and internal quotation marks

omitted) ("in inquiring whether the movant has preliminarily satisfied the typicality requirement, [the court] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based"); *Erikson v. Cornerstone Propane Partners LP*, 2003 WL 22232387, *3 (N.D. Cal. 2003) (noting that "[a]t this stage of litigation, all that is required is a 'preliminary showing' that the lead plaintiff group will satisfy the 'typicality' and 'adequacy' requirements . . . Lamphere purchased significant numbers of shares of CornerStone stock during the class period and incurred substantial losses allegedly attributable to CornerStone's actions during that period . . . Lamphere thus satisfies the 'typicality' requirement").

Rule 23(a) requires that the person representing a class must be able to fairly and adequately to protect the interests of all class members. Fed. R. Civ. P. 23(a)(4). Whether the class representative will adequately represent the class depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). In evaluating whether a class representative is adequate, courts assess whether the representative has interests antagonistic to the class, and whether the representative's counsel have the necessary capabilities and qualifications. *In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Legal representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 855 (9th Cir. 1982). In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 416 (D.N.J. 1998).

The Court concludes that the Institutional Investor Funds are an "adequate" plaintiff because they have suffered the largest financial loss, ensuring vigorous advocacy, and the Institutional Investor Funds have represented that they are willing and able to undertake the responsibilities of Lead Plaintiff. In addition, the Institutional Investor Funds' interests are not antagonistic to those of any other Class members. To the contrary, the Institutional Investor Funds' interests are aligned with those of other Class members because each member of the Class purchased AstraZeneca securities in reliance on its allegedly false and misleading statements and non-disclosures.

Based on the foregoing, the Institutional Investor Funds have made the necessary prima facie showing that it satisfies both the typicality and adequacy requirements of Rule 23.

C.  **The Pension Funds Have Failed to Rebut the Presumption That the Institutional Investor Funds Are the Most Adequate Plaintiff**

To rebut the "most adequate plaintiff" presumption, the PSLRA requires that competing movants submit "proof" that the Funds "will not fairly and adequately protect the interests of the class," or are "subject to unique defenses." 5 U.S.C. §78u-4(a)(3)(B)(iii)(II). Once the presumption has been triggered, "the question is not whether another movant might do a better job of protecting

the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." *Cendant*, 264 F.3d at 268 (alterations in original).

> 1. **The Pension Funds' Argument That the Institutional Investor Funds Failed to Identify All of Their Transactions in AstraZeneca Securities is Unpersuasive**

The Court finds the Pension Funds' argument that the Institutional Investor Funds failed to identify all of their transactions in AstraZeneca securities that are the subject of the Complaint unpersuasive. The PSLRA's certification requirement mandates that the plaintiff certification set "forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv). In this case, the securities that are "the subject of the complaint" are "AstraZeneca's American Depository Shares ('ADS' or 'ADSs')" that "trade on the NASDAQ exchange under the ticker symbol 'AZN.'" Complaint, ¶¶9 and 42. Specifically, the Complaint defines the putative class as:

> Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class").

Complaint, ¶42; *see also* Complaint ¶¶35, 38, and 40 (alleging that as a result of the disclosure of previously undisclosed adverse information "AstraZeneca ADSs fell"). None of the securities the Pension Funds argue that the Investment Funds failed to disclose qualify as a "securit[y] that is the subject of the complaint" (15 U.S.C. §78u-4(a)(2)(A)(iv)), or securities related to "the relief sought by the class" (15 U.S.C. §78u-4(a)(3)(B)(iii)(bb)). For example, the Pension Funds argue that the Institutional Investment Funds' Semi-Annual and Annual Investment Reports demonstrate that they invested in AstraZeneca ordinary shares, AstraZeneca 0.375% bond due 3/26/2029, and AstraZeneca 3.75% bond due 3/3/2032, during the Class Period, but failed to disclose those investments in their PSLRA Certification. However, AstraZeneca ordinary shares are foreign securities that trade on the London exchange. The two debt securities (the 0.375% bond due 3/26/2029 and the 3.75% bond due 3/3/2032) are also foreign securities, are denominated in euros, and both trade on the London exchange. As a result, these securities are not "the subject of the Complaint." *See Stoyas v. Toshiba Corp.*, 734 F. Supp. 3d 1000, 1005 (C.D. Cal. 2024) ("Section 10(b) only applies to deceptive conduct in connection with domestic transactions"); *In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 202 (D. Conn. 2023) ("In short, [plaintiffs] cannot state a federal securities claim based on transactions in" securities traded on a foreign exchange, including "preferred shares, ordinary shares, or Notes"); *In re Infineon Techs. AG Sec. Litig.*, 2011 WL 7121006, at *3 (N.D. Cal. Mar. 17, 2011) ("Section 10(b) of the Exchange Act does not apply extraterritorially . . . a securities transaction must occur on a domestic exchange to trigger application of §10(b) of the Exchange Act."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124-25 (S.D.N.Y. 2001) (rejecting argument at class certification stage that the proposed class representatives "violated the requirements of the PSLRA" by failing to include options in the lead plaintiff certification, and finding that they "did comply with the certification requirements of the statute and disclosed those transactions in the security which was the subject of the complaint at the time the certification was submitted").

The Court also finds unpersuasive the Pension Funds' argument that the Institutional Investor Funds failed to identify transactions in AstraZeneca securities by other compartments or sub-funds of C+F and Universal Invest. The main feature of a UCITS SICAV is the segregation of assets between the various compartments or sub-funds. Specifically, the assets of each compartment or sub-fund are segregated by law so that the rights of investors and creditors concerning a compartment or sub-fund, or in connection with the creation, the operation, or the liquidation of that compartment or sub-fund, are limited to the assets of that compartment or sub-fund pursuant to the protected cell concept. As the Institutional Investor Funds point out, within a UCITS SICAV, "each compartment or sub-fund is treated as a separate entity having its own name, funding, capital gains, losses, and expenses, although compartments or sub-funds do not have a legal personality distinct from the UCITS SICAV." *See* Declaration of Johan Verbist (Docket No. 24-4), ¶ 9; *see also* Declaration of Cathy Arendt (Docket No. 24-5), ¶ 7. Indeed, "[e]ach compartment's financial position remains independent of the results of other compartments – meaning that gains or losses in one compartment do not, and, in fact, cannot offset gains or losses in another. This also means that the gains and/or losses of the compartments are not and cannot be consolidated at the SICAV level." *See* Supplemental Declaration of Cathy Arendt (Docket No. 35-1), ¶¶ 13-16; *see also* Supplemental Declaration of Johan Verbist (Docket No. 35-2)*,* ¶¶ 9-12. As a result, the Court concludes that the Institutional Investor Funds were not required to identify transactions in AstraZeneca securities entered into with other SICAV compartments or sub-funds that did not seek appointment as Lead Plaintiff. *See, e.g., Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2022 WL 3571995, at *2 (N.D. Cal. July 26, 2022) (concluding that "the Court is persuaded that PFA Pension has disclosed all of its transactions," where the movant submitted a sworn declaration stating that these other "'entities are legally separate from PFA Pension'") (citation omitted).

## 2. The Pension Funds' Argument That the Institutional Invest Funds' Signatories Lack Authority to Act on Their Behalf Is Also Unpersuasive

Although the Pension Funds argue that the Institutional Investor Funds' signatories lack the authority to act on their behalf, the Court concludes that the Institutional Investor Funds have fully complied with the PSLRA's Lead Plaintiff requirements and confirmed in their PSLRA Certifications that they "authorized the filing of the motion for appointment as Lead Plaintiff on its behalf in this action." *See* C+F PSLRA Certification (Docket No. 24-2), ¶5; *see also* Universal Invest PSLRA Certification (Docket No. 24-2), ¶5. In addition, the Institutional Investor Funds have submitted supplemental declarations, confirming that they are fully and duly authorized and empowered to execute the PSLRA Certifications and to bring this litigation on the Institutional Investors behalf under Belgian law (for C+F) and under Luxembourg law (for Universal Invest). *See* Supplemental Declaration of Cathy Arendt (Docket No. 35-1), ¶¶ 10-12; *see also* Supplemental Declaration of Johan Verbist (Docket No. 35-2)*,* ¶¶ 7-8, and 13. As a result, the Court concludes that the Institutional Investor Funds have submitted sufficient evidence demonstrating that the PSLRA Certifications submitted on behalf of C+F and Universal Invest were properly authorized, fully comply with the PSLRA's certification requirements, and legally bind the Institutional Investment Funds, and the Pensions Funds have failed to submit any persuasive evidence that demonstrates otherwise. *See, e.g., Twitchell v. Enovix Corp.*, 2023 WL 3170044, at *8 (N.D. Cal. Apr. 28, 2023) (rejecting argument that investment manager could not bind investment funds, finding competing movant had "no proof" to support argument that manager could not bind funds where supplemental submission "confirmed" "the investment manager of the funds . . . ha[d] legal authority to bind the"

investment funds); *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2022 WL 3571995, at *2 (N.D. Cal. July 26, 2022) ("PFA Pension has submitted sworn declarations stating that it holds title to the stock, and CalPERS has introduced no persuasive evidence suggesting that it does not. '[A] sworn declaration of ownership trumps speculation as to a party's property interest in relevant shares'") (*quoting In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 447 (S.D.N.Y. 2013)); *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004) (finding that movants who "executed and submitted the precise certifications required under the PSLRA" to be wholly sufficient).

Accordingly, the Court appoints the Institutional Investor Funds as Lead Plaintiff in this action.

### III.   Appointment of Lead Counsel

Once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class."  15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) (quoting *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958)) ("The benefits achieved by consolidation and the appointment of general counsel, i.e. elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation.").

In this case, the Institutional Investor Funds want to retain DiCello Levitt LLP ("DiCello") as Lead Counsel.  The Court has reviewed DiCello's firm resume, and is satisfied that DiCello is capable of serving competently in the role of Lead Counsel.  In fact, DiCello has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.  Accordingly, the Court approves the appointment of DiCello as Lead Counsel in this action.

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** the Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel, and **DENIES** the Pension Funds' Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel.  The Court appoints the Institutional Investor Funds Lead Plaintiff.  In addition, the Court appoints DiCello as Lead Counsel.

IT IS SO ORDERED.